IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BLOCK DRUG COMPANY, INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) C.A. No. _____ |
| SEDONA LABORATORIES, INC., | ) ) ) |
| Defendant. | ) ) |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, Block Drug Company, Inc. ("Block Drug"), for its Complaint against Defendant, Sedona Laboratories, Inc. ("Sedona"), alleges as follows:

**Nature of the Action**

1. This is an action for patent infringement pursuant to 35 U.S.C. § 271, based on Sedona's infringement of Block Drug's patent rights.

**Jurisdiction and Venue**

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a) and 2201 et seq.

3. Venue is proper in this judicial district under 28 U.S.C. §§ 1391(c) and 1400(b).

**Parties**

4. Plaintiff Block Drug is a corporation organized and existing under the laws of New Jersey, having a principal office and place of business at 1000 GSK Drive, Moon Township, Pennsylvania, 15108.

5. On information and belief, defendant Sedona is a corporation organized and existing under the laws of Arizona, with its principal place of business at 211 Jennifer Lane and/or 218 Justin Drive, Cottonwood, Arizona 86326.

6. On information and belief, Sedona manufactures and distributes over-the-counter digestive products and nutritional supplements for consumer use. Sedona markets its products to and through regional grocery and drug chains, such as Eckerd drug stores ("Eckerd"). Eckerd stores are primarily located in the eastern United States, including the State of Delaware, where there are more than twenty Eckerd stores.

7. On information and belief, Sedona manufactures and distributes a food-enzyme dietary-supplement product in tablet and/or capsule form containing the enzyme alpha-galactosidase ("Sedona's Product"), which is said by Sedona to help prevent uncomfortable gas. Sedona manufactures for and distributes to Eckerd a private-label-branded version of Sedona's Product called "food enzyme," which Eckerd sells to its retail customers at its stores, including those located in Delaware. Sedona has approval over the private label used on Sedona's Product.

8. On information and belief, Sedona also sells a version of Sedona's Product called "GasAway+" to purchasers throughout the United States, including by means of an interactive Web site located at http://www.sedonalabs.com/purchase/ and http://www.affordable-natural-supplements.com/sedona_labs.html. Attached as Exhibit A is a true and correct copy of a Sedona product flyer for GasAway+ obtained from Sedona's Web site.

9. On information and belief, Sedona has knowingly and purposely caused Sedona's Product to be sold to purchasers in Delaware, including those products sold to and by Eckerd, as well as those sold on the Web via the Internet.

**Claim for Patent Infringement**

10. Block Drug is the owner of U.S. Patent No. 6,344,196 ("the '196 patent"), titled "Compositions and Method for Reducing Gastro-intestinal Distress Due to Alpha-D-Galactosidase-Linked/Containing Sugars," which issued on February 5, 2002 (Exhibit B hereto).

11. Block Drug is wholly owned by GlaxoSmithKline ("GSK"), which manufactures and distributes a commercial product covered by the foregoing patent under the brand-name Beano®. Since its introduction into the marketplace, Beano® has enjoyed great commercial success.

12. On information and belief, Sedona has manufactured and sold, continues to manufacture and sell, and, unless enjoined, will in the future manufacture and sell, throughout the United States, Sedona's Product containing alpha-galactosidase. Sedona's Product is promoted as being effective for the prevention of uncomfortable gas and other related symptoms. Sedona's product, and the use thereof, are covered by one or more claims of the '196 patent, and thus infringe.

13. On information and belief, Sedona's infringing products are sold under its own brand name (e.g, "GasAway+"), as well as under various retail store-brand names, including at many retail stores located in Delaware (e.g., "food enzyme" at Eckerd). Sedona has intentionally caused, and continues to cause, such infringing products to be sold and used in Delaware.

14. Sedona has infringed and is continuing to infringe the '196 patent.

15. Unless enjoined, Sedona will infringe, intentionally induce others to infringe, and contribute to the infringement by others of, the '196 patent.

16. Sedona's continued infringement of the '196 patent will be willful.

17. Sedona's conduct has caused, and unless enjoined will continue to cause, irreparable harm to Block Drug and GSK.

WHEREFORE, Plaintiff Block Drug respectfully requests the following relief:

    a. the entry of judgment in favor of Block Drug, and against Sedona, finding infringement of the '196 patent by Sedona;

    b. a permanent injunction, enjoining Sedona, its officers, agents, servants, employees and attorneys, and those in active concert or participation with Sedona, from infringing the '196 patent;

    c. an award to Block Drug of damages adequate to compensate it for Sedona's infringement of the '196 patent, together with interest, and enhanced damages pursuant to 35 U.S.C. § 284; and

    d. an award to Block Drug of its attorneys' fees and costs in this action pursuant to 35 U.S.C. § 285; and

    e. such other and further relief as this Court deems just and proper.

### Jury Demand

Plaintiff Block Drug respectfully requests a trial by jury on all issues so triable.

ASHBY & GEDDES

/s/ Steven J. Balick

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888

*Attorneys for Plaintiff*

*Of Counsel:*

Steven D. Glazer
David Greenbaum
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
212-310-8000

Dated: May 25, 2006
169842.1

# EXHIBIT A



# GasAway+™
## CONTROL FORMULA





60 Kosher Capsules

## Welcome Healthy Foods Back Into Your Diet!

*Stop gas, before it starts, with GasAway+™*

## How GasAway+™ Works

**α-Galactosidase**
Helps digest oligo-sugars found in beans and other legumes, and in cruciferous vegetables, such as cabbage, cauliflower, and broccoli.

**Invertase**
Helps break sucrose down to single sugars - fructose and glucose.

**Hemicellulase**
Helps digest the starch carbohydrates in foods such as potato, pasta, and bread.

**β-Glucanase**
Helps digest high molecular weight β-glucan (glucose polymer) in grain and cereal.

**Phytase**
Helps plant-based food release minerals, including phosphorus, an essential component of food.

## The All-Natural Enzymes in GasAway+™ Break Down the Carbohydrates that Cause Gas

Before any carbohydrate can be absorbed by the body, it must be broken down into a single sugar. Otherwise, it will remain in the intestinal tract, ferment, and cause gas.

Foods such as beans, cabbage, and broccoli contain complex carbohydrates that the body has difficulties breaking down, because our bodies do not make the necessary enzymes, or don't make them in sufficient quantities. The result is gas.

This excess gas can make us feel bloated and uncomfortable. GasAway+™ provides the enzymes necessary to break down these foods in a way that prevents uncomfotable gas and aids digestion.


**SEDONA LABS™**
**SINCE 1987**

Call toll-free
**888-816-8804**

www.sedonalabs.com

These statements have not been evaluated by the FDA. This product is not intended to diagnose, treat, cure or prevent any disease. Be sure to consult your physician before beginning any supplementation program. This product is non-prescription and is not intended to replace physician's care or prescribed medication.

21012Sv200408

# EXHIBIT B

Case 1:06-cv-00350-SLR-MPT     Document 1-3     Filed 05/25/2006     Page 1 of 9

US006344196B1

(12) **United States Patent**
Kligerman

(10) Patent No.: **US 6,344,196 B1**
(45) Date of Patent: ***Feb. 5, 2002**

(54) **COMPOSITIONS AND METHOD FOR REDUCING GASTRO-INTESTINAL DISTRESS DUE TO ALPHA-D-GALACTOSIDE-LINKED/CONTAINING SUGARS**

(75) Inventor: **Alan E. Kligerman**, Egg Harbor Township, Atlantic County, NJ (US)

(73) Assignee: **Block Drug Company, Inc.**, Jersey City, NJ (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

This patent is subject to a terminal disclaimer.

(21) Appl. No.: **09/634,088**

(22) Filed: **Aug. 8, 2000**

### Related U.S. Application Data

(63) Continuation of application No. 09/444,855, filed on Nov. 22, 1999, which is a continuation of application No. 08/497,871, filed on Jun. 7, 1995, now Pat. No. 5,989,544, which is a continuation of application No. 08/183,639, filed on Jan. 18, 1994, now abandoned, which is a continuation of application No. 07/780,563, filed on Oct. 21, 1991, now abandoned, which is a continuation of application No. 07/352,441, filed on May 16, 1989, now abandoned.

(51) Int. Cl.[7] .............................................. **A61K 38/47**
(52) U.S. Cl. .................... **424/94.61**; 435/208; 435/267; 426/61
(58) Field of Search ........................ 424/94.61; 426/61; 435/208, 267

(56) **References Cited**

#### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 3,493,652 A | 2/1970 | Hartman ...................... | 424/94 |
| 3,632,346 A | 1/1972 | Sherba ........................... | 99/98 |
| 3,647,625 A | 3/1972 | Suzuki et al. ................. | 195/11 |
| 3,795,585 A | 3/1974 | Suzuki et al. ................. | 195/65 |
| 3,846,239 A | 11/1974 | Delente et al. ............... | 195/66 |
| 3,966,555 A | 6/1976 | Arnaud et al. ................ | 195/66 |
| 3,972,777 A | 8/1976 | Yamada et al. ............... | 195/66 |
| 4,241,185 A | 12/1980 | Stein et al. .................. | 435/188 |
| 4,259,358 A | 3/1981 | Duthis .......................... | 426/46 |
| 4,376,127 A | 3/1983 | Lunde .......................... | 426/46 |
| 4,431,737 A | 2/1984 | Olivieri ...................... | 435/208 |
| 4,450,238 A | 5/1984 | Vitobello .................... | 435/256 |
| 5,179,023 A | 1/1993 | Calhoun et al. ......... | 435/320.1 |
| 5,436,003 A | 7/1995 | Rohde et al. ................. | 424/94 |
| 5,445,957 A | 8/1995 | Rohde et al. ............... | 435/200 |
| 5,651,967 A | 7/1997 | Rohde et al. ............ | 424/94.61 |

#### FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| EP | 081261 | 6/1983 |
| EP | 0 176 971 | 4/1986 |
| EP | 0 280 226 | 8/1988 |
| EP | 0 285 098 | 10/1988 |
| GB | 1008583 | 10/1965 |
| JP | 48026978 | 4/1973 |
| JP | 58-43075 | 9/1983 |
| WO | WO 90/14773 | 12/1990 |

### OTHER PUBLICATIONS

"Food Industry and Enzyme," Published by K.K. Asakura Shoten, pp. 145–150, Oct. 1983.
"Biochemical Data Book," Published by Tokyo Chemical Coterie, vol. 1, p. 735, Nov. 1979.
"Am. J. Clin. Nutr." Solomons et al., 41:Feb. 1985, pp. 209–221, 222–227.
"Pharmaceutical Enzyme, Properties and Assay Methods," edited by Ruyssen and Lauwebs, 1978, pp. 200–215.
"Pancreatic Replacement Therapy in Fibrocystic Disease," Haines et al., J.A.M.A,, Jun. 1962, pp. 78–84.
"The American Journal of Clinical Nutrition," Solomons et al., Official Journal of The American Society for Clinical Nutrition, Inc., vol. 53, No. 3 (Mar.), 1991, p. 28.
"Clinical Research," vol. 39, p. 428A, Solomons et al., 1991.
"Enzyme & Microbial Technology," vol. 7, No. 5, pp. 193–256, Schaler et al, May 1985.
"Does Beano Prevent Gas? A double–blind Crossover Study of oral alpha–galactosidase to treat dietary Oligosaccharide Intolerance," Ganiiats et al.., The Journal of Family Practice, vol. 39, No. 5 (Nov.), 1994.
"Flatulence caused by Soya and its control through Processing," Backis, JAOCS Mar. 1981, pp. 503–509.
"Pattern of 24 hour intragastric acidity in active duodenal ulcer disease and in healty controlss," Merki et al., Gastroenterology 1988, 29, 1583–1587.
"Commercial canning increases the digestibility of beans in vitro and postprandial metabolic responses to them in vivo," Traianedes et al., The American Journal of Clinical Nutrition, 44: Sep. 1986, pp. 390–397.
"Advances in Enzymology and related areas of Molecular Biology," edit ed by Meister, vol. 36, 1972, Published by Interscience Publishers, a Division of Wiley & Son.
"Strategies and Procedures for Processing Dry Beans," Uebersax et al., Food Technology, Sep. 1991, pp. 104–111.
"Handbook of Food Additives," Second Edition, edited by Furia, 1975, Published by CRC Press, pp. 4–23.

(List continued on next page.)

*Primary Examiner*—Jean C. Witz
(74) *Attorney, Agent, or Firm*—Dara L. Dinner; Stephen Venetianer; Charles M. Kinzig

(57) **ABSTRACT**

A composition is provided for ingestion by mammals for in vivo conversion of alpha-D-galactoside comprising an amount of alpha-galactosidase effective to hydrolyze alpha-D-galactoside to D-galactose, and non-toxic, ingestible excipient(s) for said alpha-galactosidase. Gastric distress in mammals due to ingestion of foods containing alpha-D-galactoside may be reduced by ingesting the foregoing composition of alpha-galactosidase and non-toxic, ingestible excipient contemporaneously with the ingestion of said food in an amount effective to hydrolyze the alpha-D-galactoside to D-galactose.

**26 Claims, 1 Drawing Sheet**

OTHER PUBLICATIONS

"Effective in vivo hydrolysis of milk lactose by beta–galactosidase in the presence of solid foods," Solomons et al., The American Journal of Clinical Nutrition, 41:Feb. 1985, pp. 222–227.

"Studies on the Decomposition of Raffinose by alpha–galactosidase of mold," by Suzuki et al., Agri. Biol. Chem., vol. 33, No. 4, pp. 501–513, 1969.

"Sugar Technology Reviews," edited by Hanson, Published by Elsevier Scientific Publishing Company, vol. 4, pp. 209–258, 1976/1977.

"Dietary Manupulation of postprandial colonic lactose fermentation: II. Addition of exogenous microbial beta–galactosidases at mealtime," Solomons et al., The American Journal of Clinical Nutrition, 41:Feb. 1985, pp. 209–211.

**U.S. Patent**     Feb. 5, 2002     US 6,344,196 B1



US 6,344,196 B1

# COMPOSITIONS AND METHOD FOR REDUCING GASTRO-INTESTINAL DISTRESS DUE TO ALPHA-D-GALACTOSIDE-LINKED/CONTAINING SUGARS

This application is a divisional of U.S. application Ser. No. 09/444,855, filed Nov. 22, 1999, which is a continuation of U.S. application Ser. No. 08/497,871, filed Jun. 7, 1995, now U.S. Pat. No. 5,989,544, which is a continuation of U.S. application No. 08/183,639 filed Jan. 18, 1994, now abandoned, which is a continuation of U.S. application Ser. No. 07/780,563 filed Oct. 21, 1991, now abandoned, which is a continuation of U.S. application No. 07/352,441 filed May 16, 1989, now abandoned.

## FIELD OF THE INVENTION

The present invention relates to the improved digestion of certain foods and prevention of gastrointestinal distress and other symptoms associated with these foods. More particularly, the invention relates to a composition and method for reducing gastrointestinal symptoms in mammals due to ingestion of foods containing alpha-D-galactoside-linked sugars.

## BACKGROUND OF THE INVENTION

The ingestion of certain foods by mammals results in flatulence and/or other gastrointestinal symptoms. Certain foods that are extremely flatugenic include milk and milk products, legumes (e.g., peanuts, beans), some cruciferous vegetables (e.g., cabbage, brussels sprouts) and certain fruits (e.g., raisins, bananas, apricots). See Rackis, J. J., "Flatulence Caused by Soya and Its Control through Processing," JAOCS, page 503 (1981). The primary cause of flatulence from the previously mentioned foods is the body's inability to digest certain carbohydrates contained within these foods. The mammalian inability to digest these carbohydrates allows putrefactive bacteria in the large intestine to break down these carbohydrates by fermentation. This results in the formation of excessive levels of rectal gas, primarily carbon dioxide, methane and hydrogen.

The mammalian ability or inability to digest certain carbohydrates depends upon the presence or absence of certain enzymes in the digestive system and the type of carbohydrate to be digested. For example, the human being's ability to secrete the specific enzyme enabling him or her to digest the carbohydrate, lactose (commonly called "milk sugar"), depends upon a number of factors, e.g., age, race and health. Beta-D-galactoside-galactohydrolase (commonly called "beta-galactosidase" or "lactase") is secreted within a human being's digestive system in order to hydrolyze lactose (a molecule which contains the beta-galactoside linkage) into its digestible monosugars, glucose and galactose. When beta-galactosidase activity is not present in sufficient quantities in order to hydrolyze lactose, in vitro treatment of milk or oral administration of microbial beta-galactosidase(s) for in vivo use duplicates the function of the naturally occurring neutral intestinal beta-galactosidase found on the gut wall (known as intestinal lactase).

Lactaid Inc. of Pleasantville, N.J., has been providing a beta-galactosidase in various forms, since approximately 1974, for the in vitro and in vivo treatment of milk. In vitro treatment of milk with beta-galactosidase was first performed by the consumer at home. Approximately ten years ago, in vitro treatment of milk was done on a commercial scale by the dairy industry. Since approximately 1984, a beta-galactosidase preparation has been available on a substantial scale by a number of companies, including Lactaid Inc., for in vivo use.

The success of an ingestible form of beta-galactosidase for in viva use was not entirely surprising, since the ingested enzyme structurally and functionally duplicates beta-galactosidase present within the human digestive system. There was initial concern as to whether an ingested form of beta-galactosidase subject to varying pH levels would operate effectively in the human stomach and/or intestine. The fact that certain dosages of oral beta-galactosidase preparations did indeed substantially digest dietary lactose in the stomach and small intestine of persons lacking the natural form of this enzyme showed that at least some enzymes from microbial sources were not inactivated by the conditions of acidity, protein digestion, temperature or motility found in the gastrointestinal tract.

The lactose of milk and milk products is digestible by essentially all mammals during at least part of their lives. But this is not the case with certain sugars contained in legumes and certain fruits. The above-mentioned flatugenic legumes, vegetables, and fruits contain one or more of the carbohydrates: raffinose, stachyose and verbascose. What these three oligosaccharide molecules all have in common is a D-galactose sugar linked to another sugar unit via an alpha-galactoside linkage. Enzymes of the class alpha-D-galactoside-galactohydrolase (commonly called "alpha-galactosidase") have the capacity to hydrolyze this alpha-galactoside sugar linkage. D-galactose is a monosaccharide which can be absorbed by the intestinal cell into the body and thereafter converted to glucose. Humans and other mammals cannot digest the three oligosaccharides to liberate D-galactose, since their digestive systems do not produce alpha-galactosidase.

In vitro use of alpha-galactosidase to render the previously-mentioned oligosaccharides digestible is well known. U.S. Pat. Nos. 3,966,555; 4,241,185; and 4,431,737 disclose methods of producing and/or stabilizing alpha-galactosidase by culturing of various microorganisms All that these patents disclose or imply is that alpha-D-galactosidase can be used in vitro in food processing and/or by addition to foodstuffs for a period of up to 12 hours. This demonstrates the ability to hydrolyze, in vitro, alpha-D-galactoside-linked sugars.

Further, it is well known to use industrial food processing methods for in vitro hydrolysis of alpha-D-galactoside-linked sugars with the addition of alpha-galactosidase. See Cruz, R. et al. "Microbial alpha-Galactosidase for Soy Milk Processing", 46 *Journal of Food Science* 1196–1200 (1981). Soaking, fermentation, enzymatic hydrolysis, and germination can also be used to eliminate or digest oligosaccharides. Tests with humans and rats indicate that a combination of such in vitro processes can be used to reduce flatus production. See Rackis, J. J., supra. Also well known in the art is that a technique frequently used in commercial processing, namely canning, increases the in vitro rate of hydrolysis of starch and legumes. See Traianedes, et al., "Commercial Canning Increases the Digestibility of Beans in Vitro and Postprandial Metabolic Response to Them in Vivo", *The American Journal of Clinical Nutrition* 44: Sept. 1986, pp. 390–397.

There are many problems associated with the in vitro processing of foods containing alpha-D-galactoside-linked sugars with the enzyme alpha-galactosidase in order to hydrolyze said alpha-D-galactoside-linked sugars and thus

3

reduce symptoms in mammals ingesting them. The treatment of intact (unmacerated or unchewed) beans or other vegetables and fruits by an enzymatic means is inefficient and costly. The solid nature of these foods precludes efficient, uniform and effective enzyme activity. Solid foods can be turned into a slurry first for more effective enzyme treatment, but this is time-consuming and sometimes non-appetizing, as it prevents serving the food in its original form.

To applicant's knowledge, no one has ever proposed or attempted the feat of delivering an effective alpha-galactosidase orally for in vivo digestion of raffinose, stachyose or verbascose.

## SUMMARY OF INVENTION

According to the present invention, a composition is provided comprising an effective amount of alpha-galactosidase and non-toxic, ingestible excipient(s) in order to hydrolyze alpha-D-galactoside-linked sugars in vivo. The composition may also contain potentiating agent(s) for the alpha-galactosidase. The flatulence and/or other subjective gastrointestinal symptoms in mammals due to the fermentation of the oligosaccharides contained in foods may be reduced or eliminated by ingesting (orally) alpha-galactosidase enzymes along with said foods. Also markedly reduced or eliminated is objectively measured gastric hydrogen production, a post-meal upsurge of which is prima-facie objective evidence of maldigestion. The alpha-galactosidase-containing composition may be orally ingested alone in various forms immediately before, during or immediately after ingestion of the food, or mixed with the food. For in vivo activity of alpha-galactosidase to be most effective, the composition should be ingested during a time period from about one-quarter hour before to about one-quarter hour after ingestion of the alpha-D-galactoside-containing food, although ideally, composition ingestion should be instantly before and/or during the meal.

## BRIEF DESCRIPTION OF THE DRAWING

FIG. 1 is a set of graphs which demonstrates the change in $H_2$ concentration of subjects' breath for 3 sets of tests, each set comprising three tests, as a function of the testing time period. A more detailed explanation is contained in the Experimental Examples section below.

## DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENTS

The composition comprising alpha-galactosidase and non-toxic excipient(s) (ingestible composition) can be ingested in a wide variety of forms such as a powder for combining with food via sprinkling on or mixing in, or as a liquid, tablet, capsule or soft-gel capsule. Food grades of alpha-galactosidase can be obtained in the form of a liquid or powder from, among others, Novo Industri A/S, Novo Alle, 2880 Bogvaerd, Denmark, with U.S. offices in Danbury, Conn.

Alpha-galactosidase is generally provided in powdered form and may be combined with one or more excipients, which are also in powdered form, to produce solid forms of the ingestible composition, i.e., tablet, capsule, powder. Concentrated (highly pure) liquid alpha-galactosidase may be formed into an ingestible powdered composition thus: a liquid form of alpha-galactosidase is absorbed and/or adsorbed by dry powder excipient(s), diluted and evenly dispersed throughout the tablet or capsule preblend. Liquid forms of alpha-galactosidase can also be utilized for taking orally in soft-gel capsule form, or for administration by drops or by spoon from a bottle; or for application directly to food just prior to eating by drops onto the food or mixed with the food. In such cases, the liquid is diluted with other appropriate diluent liquids or excipients. The degree of dilution will depend on the use intended; very little dilution for liquid gel capsule use and substantial dilution for preprandial addition directly to foods.

Representative examples of dry ingredients that can be combined with a food grade alpha-galactosidase to form the ingestible composition include but are by no means limited to: dextrose, dicalcium phosphate, microcrystalline cellulose, modified cellulose and modified starch. Representative examples of liquid excipients include but are by no means limited to: water, glycerol and sorbitol. These excipients are available from normal trade sources. Important criteria for selecting these excipients, besides their function as ingestible non-toxic carriers of the enzyme alpha-galactosidase, are their palatability, ease of flow into capsules and/or good qualities of tablet compressibility for dry uses, and miscibility, stabilization qualities and taste, for liquid uses.

Generally, commercially available alpha-galactosidase in liquid form contains about 225 alpha-galactosidase units (GalU) per milliliter. Since there is at present no "weight" standard for this enzyme, GalU will be the sole unit or standard of alpha-galactosidase strength used throughout this disclosure. A "pure" enzyme is impractical because of commercial production purification limitations. 1 GalU=the amount of alpha-galactosidase required to form 1 micromole of p-nitro phenol+galactose from p-nitrophenyl alpha-D-galactopyranoside in one minute under standard test conditions of pH 4.5 at 37° C.

The ingestible composition may contain other excipients than those previously mentioned, if they have a similar function. For example, where the ingestible composition is in tablet form, hydrogenated vegetable oil is generally required as an incidental additive, functioning as a lubricant in the tablet-stamping process. A preferred composition for any of the above-mentioned forms contains several excipients.

Dosages per average meal of flatus producing food wherein the alpha-galactosidase is present in an amount below 675 GalU have been found to be somewhat effective for most people, although this may be enough for "marginal" flatus/symptom producers. Amounts above 31,000 GalU per meal are generally wasteful levels, but may still be required by the truly high gas producer. These high levels are otherwise physiologically harmless, except for the possible rare allergy.

Ingestion of a composition comprising an effective amount of alpha-galactosidase in a non-toxic ingestible excipient, substantially simultaneous or contemporaneous with the ingestion of foods containing alpha-D-galactoside-linked sugars, results in the complete or partial hydrolysis of these oligosaccharides into their simplest absorbable constituents, in vivo. The time period for ingesting the alpha-galactosidase containing composition is preferably from about ¼ hour before to about ¼ hour after ingestion of foods containing the alpha-D-galactoside-linked sugars. Effectiveness can be expected to decrease appreciably with increasing time displacement of the alpha-galactosidase ingestion from the time of the meal because, to be effective, the enzyme must mix in the stomach with the foods ingested, so must arrive there more or less simultaneously with the food. The most preferred time to ingest the alpha-

| 5 | 6 |

galactosidase-containing composition is simultaneous with the alpha-D-galactoside-linked sugars-containing foods.

The enzyme can be delivered in the form of a tablet, soft-gel capsule or similarly shaped pill in ingestible form, although plain liquid can be used as mentioned earlier. Also, a powdered form of the ingestible composition which is packeted or kept on the table in a "salt-shaker" can be sprinkled on the food, or a liquid form, such as that administered from a bottle, can easily be orally taken as the food is eaten, or mixed with the food immediately prior to eating. Such immediate prior mixing is not an in vitro use, but a version of in vivo use, with "immediate" meaning any time from "in the plate on the table" to several hours prior mixing, since the enzyme activity will be in vivo, not in vitro, in any solid food.

Oral administration is just one way of supplying the enzyme to the digestive system. The ingestible composition could be administered through a tube or similar device which is connected to the stomach or small intestine. Furthermore, this invention is suited for various types of mammals and is not just limited to use in human beings. For example, one may find this invention particularly suited for pets, such as dogs or cats, who often experience symptoms and emit noxious odors associated with flatulence after they have ingested alpha-D-galactoside-linked sugar-containing foods.

The invention will now be illustrated in more detail by reference to the following specific, non-limiting examples:

Experimental Examples

To permit quantitative evaluation of the effectiveness of the method of using alpha-galactosidase compositions to reduce gastrointestinal symptoms in mammals due to fermentation of gas-producing foods, a series of tests on humans was performed.

Each test involved a standard meal of 230 grams of refried, mashed, black beans served with unsweetened coffee at the beginning of the experiment. This quantity of cooked beans is estimated to contain about 5 grams of alpha-D-galactoside-linked oligosaccharides. Samples of expired air were collected at zero-time (at the beginning of the experiment), and at 30 min. intervals, for a total of 16 intervals over an 8-hour period from 3 subjects who ingested the standard meal. After the fourth hour, the subjects received a meal of a rice pudding made with lactose-hydrolyzed milk, since both rice starch and lactose-hydrolyzed milk produce a negligible hydrogen gas ($H_2$) signal. The subjects were interviewed regarding symptoms they experienced during the 8-hour period and symptoms were reported and tabulated. The subjects were aware of ingesting the enzyme preparation and its purpose. Table 1 shows the symptoms that were reported.

The tabulated subjects (designated "A", "B" and "C") individually underwent a total of nine tests; three identical tests at these volumes of enzyme preparation per meal: 0, 3 ml and 10 ml. The first set of three tests involved just the ingestion of the standard meal. The second set of three tests involved the standard meal ingested contemporaneously with 3 ml (675 GalU) of the liquid enzyme preparation. The third set of three tests involved the standard meal ingested contemporaneously with 10 ml (2250 GalU) of the liquid alpha-galactosidase preparation. Enzyme was mashed into the beans and was eaten with them. In all cases the enzyme was mixed in with the meal immediately prior to consumption.

FIG. 1 shows graphs where three individual curves represent the data collected for each subject and indicate the changes in concentration of $H_2$ in the breath of these subjects during the eight hour testing period. The data points represent the average breath hydrogen concentration at each of the 30 minute time intervals following the ingestion of the bean meal relative to the zero-time $H_2$ reading (i.e. averaged actual $H_2$ reading minus zero-time $H_2$ reading) and are represented on the horizontal axis. Each curve represents the average change in the concentration of $H_2$ over the eight hour test periods for the three tests for each individual's set.

The curves indicating changes in the $H_2$ concentration when the subjects ingested one of the enzyme preparations are generally lower than the curves representing changes in $H_2$ concentration when the subject did not ingest the enzyme. The lack of significant changes in all subjects, all tests, over approximately the first 5 hours is expected as this is the period during which the meal travels from the mouth to the lower intestine which is where the $H_2$ is generated. The rise in hydrogen output during the final hours of observation is in response to gas formation due to fermentation of carbohydrates in the lower intestine.

Table 1 shows the cumulative sum of the changes (relative to zero-time reading) of $H_2$ concentration of subjects' air as a function of the amounts of enzyme preparation ingested by the subjects with the standard meal (approximating the integral or area under curve). Column ABC presents the data compiled for all the subjects. Columns A, B and C, respectively, present the data compiled for subjects "A", "B" and "C", individually. Median values for cumulative change calculated for all the subjects are presented in column ABC; they are respectively: 127 parts per million (hereinafter "ppm") of $H_2$ resulting from the ingestion of beans alone; 77 ppm of $H_2$ resulting from the ingestion of beans with 3 ml (675 GalU) of the enzyme preparation; and 39 ppm of $H_2$ resulting from the ingestion of beans with 10 ml (2250 GalU) of the enzyme preparation.

Columns A, B and C show the sets of the tests for each of the individual subjects. The results indicate that including the enzyme preparation with the standard meal lowers the amount of gas produced by the formation of non-hydrolyzed alpha-D-galactoside-linked sugars. In 14 of the 18 instances in which the enzyme preparation was ingested with the standard meal, the $H_2$ concentration was below the range resulting from the meals without the enzyme preparation. These data suggest that effective amounts of the enzyme preparation can reduce $H_{2\ gas}$ production that is associated with non-hydrolyzed alpha-D-galactoside-linked sugars within the digestive tract.

Also impressive was the effect of enzyme-ingestion on the subjective symptom response (Table 2). As a result of ingestion of the standard meal alone, subjective symptoms were experienced on 6 of 9 occasions. On ingestion of the standard meal with 10 ml (2250 GalU) of the enzyme preparation no symptoms were experienced.

It was noted that at the 3 ml dosage, the taste of the enzyme preparation was imperceptible. At the 10 ml (2250 GalU) dosage, a salty taste was experienced. Therefore, the practical use of the enzyme would not be precluded even though it might be less palatable. Also, as more purified forms of enzyme are obtained, the off-tastes can be expected to be reduced or eliminated. In tablet, capsule, liquid or mixed-with-food forms, the unpalatability would be minimized in any case.

7

### TABLE 1

THE CUMULATIVE SUM OF CHANGES IN $H_2$
CONCENTRATION OF SUBJECTS BREATH PPM
CLINICALLY MEASURED SYMPTOMS

| Average For Three Tests | Enzyme Preparation (ml) | ABC (Combined) (Median Value) | A | B | C |
|---|---|---|---|---|---|
| 1 Set | 0 | | | | |
| 1st | " | | 142 | 96 | 209 |
| 2nd | " | | 123 | 90 | 144 |
| 3rd | " | 127 | 120 | 77 | 78 |
| 2 Set | 3 ml | | | | |
| 1st | " | | 104 | 147 | 127 |
| 2nd | " | | 101 | 53 | 74 |
| 3rd | " | 77 | 78 | 5 | −47 |
| 3 Set | 10 ml | | | | |
| 1st | " | | 27 | 128 | 147 |
| 2nd | " | | 22 | 67 | 39 |
| 3rd | " | | 6 | 57 | −22 |

### TABLE 2

SUBJECTIVE SYMPTOMS

| Subject A | | | Subject B | | | Subject C | | | Amount of |
|---|---|---|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 1 | 2 | 3 | 1 | 2 | 3 | Enzyme |
| Abd. pain | flatulence | flatulence | No Symptoms | flatulence | Abd. pain | No Symptoms | No Symptoms | flatulence | Alone |
| Flatulence | Belching Gas | No Symptoms | belching | belching gas flatulence | No Symptoms | No Symptoms | flatulence | No Symptoms | 3 ml Enzyme |
| No Symptoms | No Symptoms | No Symptoms | No Symptoms | No Symptoms | No Symptoms | No Symptoms | No Symptoms | No Symptoms | 10 ml Enzyme |

### Formulation Example

This example concerns the invention in the form of a tablet. A typical tablet will weigh approximately 450 mg (but this size is only exemplary and not restrictive; the tablet or capsule can easily be appreciably larger or smaller) and contain approximately 675 GalU of-alpha-galactosidase depending on the standardized strength of that particular batch of enzyme. In this case, a food grade alpha-galactosidase was obtained in the form of a liquid from Novo Industri A/S. Assuming a 675 GalU presence of enzyme, the following excipients will typically be included, however, the following proportions are simply examples and are not rigid:

### TABLE 3

EXCIPIENT FORMULATION FOR TABLETS

| Excipient | Amounts (mg) | Form | Obtained From |
|---|---|---|---|
| Dextrose | 177 | Powder | Edw. Mendell Co. |
| Dicalcium Phosphate | 129 | Powder | E. M. Sargent Co. |
| Microcrystalline cellulose | 39 | Powder | FMC Corp. |
| Modified cellulose | 21 | Powder | FMC Corp. |
| Modified starch | 19 | Powder | Colorcon, Inc. |
| Hydrogenated vegetable oil | 19 | Powder | Edw. Mendell Co. |

A larger presence of enzyme will not necessarily require a larger tablet or capsule; the excipients can be adjusted downward (or upwardly) as necessary by changing the

8

amount of dextrose (bulking agent), for example. The hydrogenated vegetable oil does not aid in the ingestion of the enzyme alpha-galactosidase, but functions solely as a lubricant in the tablet-stamping process.

Also, certain potentiating agents are available, by use of which the requirement for enzyme may be reduced, lowering the bulk of active ingredient required as well as the cost of the finished product. An example of one such agent is a blend of carbohydrases including arabanase, cellulase, and xylanase. It is sold under the trade name "Viscozyme 120 L" by Novo Laboratories of Danbury, Conn. In our experiments to remove raffinose and stachyose, we noted that both alpha-galactosidase and the Viscozyme 120 L work optimally at pH 4.5. The ideal ratio of alpha-galactosidase to Viscozyme 120 L varies over the range:

0.19% alpha-galactosidase/1.5% Viscozyme 120 L

1.0% alpha-galactosidase/1.5% Viscozyme 120 L

when added on a w/w percent basis to as is soybean meal (90% dry solids).

The present invention may be embodied in other specific forms without departing from the spirit or essential attributes thereof and, accordingly, reference should be made to the appended claims, rather than to the foregoing specification as indicating the scope of the invention.

What is claimed is:

1. A method of reducing gastric distress in mammals due to ingestion of solid food containing alpha-D-galactoside-linked sugars, comprising ingesting a composition of alpha-galactosidase and a non-toxic ingestible excipient for said alpha-galactosidase, said composition being in a capsule or similarly shaped pill in ingestible form and containing an amount of alpha-galactosidase effective to hydrolyze said sugars in vivo to their simplest absorbable constituents, the ingesting of the composition being contemporaneous with the ingestion of the solid food containing said sugars, wherein the alpha-galactosidase hydrolyzes the food in vivo after mixing in the stomach of the mammal ingesting the food.

2. The method according to claim 1, wherein the alpha-galactosidase is ingested during a time period from about ¼ hour before to about ¼ hour after ingestion of the alpha-D-galactoside-containing food.

3. The method according to claim 1, wherein said composition is ingested in a capsule.

4. The method according to claim 3, wherein at least one capsule is ingested prior to the ingestion of the food.

5. The method according to claim 3, wherein at least one capsule is ingested during ingestion of the food.

6. The method according to claim 1, wherein said alpha-galactosidase is optimally effective at a pH of about 4.5.

7. The method according to claim 1, wherein said solid food is intact prior to ingestion.

8. The method according to claim 1, wherein said solid food is selected from the group consisting of fruits, vegetables and legumes.

9. The method according to claim 1, wherein said composition further comprises an agent for potentiating said alpha-galactosidase.

10. The method according to claim 9, wherein said potentiating agent comprises a blend of carbohydrases comprising arabanase, cellulase and xylanase.

11. The method according to claim 1, wherein the mammal is a human being.

12. A method of reducing gastric distress in mammals due to ingestion of solid food containing alpha-D-galactoside-linked sugars, comprising ingesting a composition of alpha-galactosidase and a non-toxic ingestible excipient for said alpha-galactosidase, said composition being in a capsule or similarly shaped pill in ingestible form and containing an amount of alpha-galactosidase effective to reduce such gastric distress, the ingesting of the composition being contemporaneous with the ingestion of the solid food containing said sugars.

13. A composition for reducing gastric distress in mammals due to ingestion of solid food containing alpha-D-galactoside-linked sugars, said composition containing alpha-galactosidase and a non-toxic ingestible excipient for said alpha-galactosidase, said composition being in a capsule or similarly shaped pill in ingestible form and containing an amount of alpha-galactosidase effective to hydrolyze said sugars in vivo to their simplest absorbable constituents after mixing in the stomach of the mammal ingesting the food.

14. The composition according to claim 13, wherein said composition further contains an agent for potentiating said alpha-galactosidase.

15. The composition according to claim 14, wherein said potentiating agent contains a blend of carbohydrases including arabanase, cellulase and xylanase.

16. A kit for reducing gastric distress in mammals due to ingestion of solid food containing alpha-D-galactoside-linked sugars, comprising a composition containing alpha-galactosidase and a non-toxic ingestible excipient for said alpha-galactosidase, said composition being in a capsule or similarly shaped pill in ingestible form and containing an amount of alpha galactosidase effective to hydrolyze said sugars in vivo to their simplest absorbable constituents after mixing in the stomach of the mammal ingesting the food, and instructions for ingesting the composition contemporaneously with the ingestion of the solid food containing said sugars.

17. The method according to claim 12, wherein the alpha-galactosidase is ingested during a time period from about ¼ hour before to about ¼ hour after ingestion of the alpha-D-galactoside-containing food.

18. The method according to claim 12, wherein said composition is ingested in a capsule.

19. The method according to claim 18, wherein at least one capsule is ingested prior to the ingestion of the food.

20. The method according to claim 18, wherein at least one capsule is ingested during ingestion of the food.

21. The method according to claim 12, wherein said alpha-galactosidase is optimally effective at a pH of about 4.5.

22. The method according to claim 12, wherein said solid food is intact prior to ingestion.

23. The method according to claim 12, wherein said solid food is selected from the group consisting of fruits, vegetables and legumes.

24. The method according to claim 12, wherein said composition further comprises an agent for potentiating said alpha-galactosidase.

25. The method according to claim 24, wherein said potentiating agent comprises a blend of carbohydrases comprising arabanase, cellulase and xylanase.

26. The method according to claim 12, wherein the mammal is a human being.

\* \* \* \* \*

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Block Drug Company, Inc.

**DEFENDANTS**
Sedona Laboratories, Inc.

(b) County of Residence of First Listed Plaintiff ____*____
(EXCEPT IN U.S. PLAINTIFF CASES)

*Plaintiff is a New Jersey corporation.

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
Steven J. Balick, Ashby & Geddes, 222 Delaware Avenue, Wilmington, DE 19899 (302) 654-1888

Attorneys (If Known)
Unknown

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
☒ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / ☐ 365 Personal Injury - Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine / **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☒ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability / ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment / **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations / ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare / ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment / ☐ 540 Mandamus & Other | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other / ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights / ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
35 U.S.C. § 271
Brief description of cause:
This is an action arising under the patent laws of the United States.

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ Monetary and injunctive relief
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE _____
DOCKET NUMBER _____

DATE: May 25, 2006
SIGNATURE OF ATTORNEY OF RECORD: /s/ Steven J. Balick

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

JS 44 Reverse (Rev. 11/04)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.  (a) **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

 (b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

 (c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II. Jurisdiction. The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

III. Residence (citizenship) of Principal Parties. This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV. Nature of Suit. Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

V. Origin. Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

VI. Cause of Action. Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.**   Example:   U.S. Civil Statute: 47 USC 553
  Brief Description: Unauthorized reception of cable service

VII. Requested in Complaint. Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII. Related Cases. This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

AO FORM 85 RECEIPT (REV. 9/04)

United States District Court for the District of Delaware

Civil Action No. 0 6 - 3 5 0

# ACKNOWLEDGMENT OF RECEIPT FOR AO FORM 85

## *NOTICE OF AVAILABILITY OF A UNITED STATES MAGISTRATE JUDGE TO EXERCISE JURISDICTION*

I HEREBY ACKNOWLEDGE RECEIPT OF ____1____ COPIES OF AO FORM 85.

_5/25/06_  
(Date forms issued)

_____  
(Signature of Party or their Representative)

Frank Joyce / Parcels, Inc.  
(Printed name of Party or their Representative)

Note: Completed receipt will be filed in the Civil Action