# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| Block Drug Company, Inc., | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | NO. 06-350-KAJ |
| | : | |
| Sedona Laboratories, Inc. and | : | |
| Nutri-Health Supplements, LLC | : | |
| d/b/a Sedona Laboratories, | : | |
| | : | |
| Defendants. | : | |

## OPENING BRIEF OF DEFENDANT NUTRI-HEALTH SUPPLEMENTS, LLC IN SUPPORT OF ITS MOTION TO DISMISS OR, ALTERNATIVELY, TO TRANSFER VENUE

KLEHR, HARRISON, HARVEY,
BRANZBURG & ELLERS LLP

Of Counsel:

Roger L. Cohen
Michelle C. Lombino
Thomas A. Connelly
JABURG & WILK, P.C.
14500 N. Northsight Blvd., Ste. 116
Scottsdale, Arizona 85260
(480) 609-0011 (office)
(480) 609-0016 (fax)

September 15, 2006

David S. Eagle (Bar No. 3387)
Patrick A. Costello (Bar No. 4535)
919 Market Street, Suite 1000
Wilmington, DE 19801
(302) 426-1189 (phone)
(302) 426-9193 (fax)
deagle@klehr.com
pcostello@klehr.com
*Attorneys for Defendant Nutri-Health*
*Supplements, LLC, d/b/a Sedona*
*Laboratories*

# Table of Contents

I.    STATEMENT OF FACTS ...................................................................................2
    A.    Introduction..........................................................................................2
    B.    NHS's Business Operations...............................................................3
    C.    Plaintiff's Venue Allegations..............................................................5

II.   ARGUMENT ....................................................................................................6
    A.    Venue In Delaware Is Improper Since NHS Is A Resident Of Arizona, Does Not Maintain A Regular And Established Place Of Business In Delaware And Has Not Committed An Act Of Infringement In Delaware. ...................................................................6

        1.    NHS is not a resident of Delaware since it is incorporated in Arizona. .........7

        2.    NHS does not maintain a regular and established place of business in Delaware. ...................................................................................... 8

        3.    NHS has not engaged in any acts of infringement in Delaware since NHS does not manufacture, use or sell the Product in Delaware. ......................... 12
    B.    This Court Lacks Personal Jurisdiction Over NHS ...............................15
    C.    Service Of Process On NHS In Delaware Is Insufficient Since Delaware Is Not A Proper Venue And Does Not Have Jurisdiction over NHS ......................................17

III.  CONCLUSION...............................................................................................19

i

**Table of Authorities**

## Cases

*Aetna Cas. & Surety Co. v. Singer-General Precision, Inc.*,
   323 F.Supp. 1141 (D.Del. 1971) ................................................................. 8

*Akzona Inc. v. E.I. DuPont De Nemours & Co.*,
   607 F.Supp. 227 (D.Del. 1984) ................................................................. 18

*Clearasite Headwear, Inc. v. Paramount Cap Mfg. Co.*,
   204 F.Supp. 4 (S.D.N.Y. 1962) .................................................. 6, 8, 11, 12

*Coleco Indus., Inc. v. Kransco Manuf., Inc.*,
   247 F.Supp. 571 (S.D.N.Y. 1965) ........................................ 6, 8, 10, 11, 15

*Cordis Corp. v. Cardiac Pacemakers*,
   599 F.2d 1085 (1st Cir. 1979) ....................................... 6, 7, 8, 9, 11, 12, 13

*Fourco Glass Co. v. Transmirra Prod. Corp.*,
   353 U.S. 222, 77 S.Ct. 787, 1 L.Ed.2d 786 (1957) ............................... 6, 7, 10

*Gibbs v. Emerson Elec. Mfg. Co.*,
   29 F.Supp. 810 (W.D.Mo. 1939) ............................................................... 18

*Gibbs v. Emerson Elec. Mfg. Co.*,
   31 F.Supp. 983 (W.D.Mo. 1940) ............................................................... 18

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
   466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984) ............................... 16

*IPCO Hosp. Supply Corp. v. Les Fils D'Auguste Maillefer S.A.*,
   446 F.Supp. 206 (S.D.N.Y. 1978) ........................................................... 9, 10

*Kamkap, Inc. v. Worldsbest Ind., Inc.*,
   140 F.Supp. 854 (S.D.N.Y. 1956) ...................................................... 6, 8, 11

*Knapp-Monarch Co. v. Casco Prod. Corp.*,
   342 F.2d 622 (7th Cir. 1965) ............................................................... 10, 11

*Merchantile Bank v. Langdeau*,
   371 U.S. 555, 83 S.Ct. 520, 9 L.Ed.2d 523 (1963) ...................................... 7

*Merck & Co. v. Barr Laboratories, Inc.*,
   179 F.Supp.2d 368 (D.Del. 2002) ..................................... 6, 10, 16, 17

*Minn. Mining & Mfg., Co. v. Int'l Plastic Corp.*,
   159 F.2d 554 (7th Cir. 1947) ............................................................... 11, 13

*Olberding v. Ill. Central R. Co.*,
   346 U.S. 338, 74 S.Ct. 83 L.Ed. 39 (1953) ............................................... 13

*Picker Int'l, Inc. v. Varian Assoc., Inc.*,
   661 F.Supp. 347 (N.D. Ohio 1987) ...................................................... 13, 15

ii

*R.D. Werner Co., Inc. v. Sears, Roebuck & Co.,*
    349 F.Supp. 660 (N.D. Ohio 1972)..................................................... 13, 14, 15

*Schnell v. Peter Eckrich & Sons, Inc.,*
    365 U.S. 260, 81 S.Ct. 557, 5 L.Ed.2d 546 (1961)..................................... 6, 13

*Stonite Products Co. v. Melvin Lloyd Co.,*
    315 U.S. 561, 62 S.Ct. 780, 86 L.Ed. 1026 (1942) ......................................... 7

*TPO Inc. v. Fed. Deposit Ins. Corp.,*
    325 F.Supp 663, 666 n.5 (S.D.N.Y. 1971)...................................................... 7

*Up-Right, Inc. v. Aluminum Safety Prod., Inc.,*
    165 F.Supp. 742 (D.Minn. 1958) ................................................................. 7

*Vibber v. U.S. Rubber Co.,*
    255 F.Supp. 47 (S.D.N.Y. 1966)................................................................. 7

*W.S. Tyler Co. v. Ludlow-Saylor Wire Co.,*
    236 U.S. 723, 35 S.Ct. 458, 59 L.Ed. 808 (1915) ..................................... 11, 13

**Statutes**
10 Del. C. § 3104(c).......................................................................................... 17
28 U.S.C. § 1391(c) .................................................................................... 1, 6, 7
28 U.S.C. § 1400(b) ..................................................... 1, 6, 7, 8, 10, 12, 18, 19
28 U.S.C. § 1406(a) ............................................................................... 1, 12, 19
35 U.S.C. § 271(a) ........................................................................................... 13

**Rules**
Fed.R. Civ.P., 4(k)(1)................................................................................. 17, 18
Fed.R.Civ.P., 12(b)(2)................................................................................ 1, 16
Fed.R.Civ.P., 12(b)(3).......................................................................................... 1
Fed.R.Civ.P., 12(b)(5)........................................................................ 1, 17, 18
Fed.R.Civ.P., ADVISORY COMMITTEE NOTES, 1937 Adoption, Rule 4 ...................... 18
Fed.R.Civ.P., Rule 82 ....................................................................................... 18

iii

Pursuant to Rules 12(b)(3), (b)(2) and (b)(5), Fed.R.Civ.P., 28 U.S.C. § 1400(b) and 28 U.S.C. § 1406(a), Defendant Nutri-Health Supplements, LLC d/b/a Sedona Laboratories ("NHS"), hereby moves to dismiss this action for improper venue, lack of personal jurisdiction and insufficiency of service of process; or, alternatively, pursuant to 28 U.S.C. § 1406(a), to transfer this action to the United States District Court for the District of Arizona. Plaintiff seeks relief for alleged patent infringement regarding a food-enzyme dietary supplement product in tablet and/or capsule form containing the enzyme alpha-galactosidase ("NHS's Product" or the "Product") manufactured and distributed by NHS. Plaintiff alleges that venue is proper in this district pursuant to 28 U.S.C. §§ 1391(c) and 1400(b). As set forth more fully herein, the District of Delaware is not a proper venue in which to litigate this dispute because:

- This is a patent infringement action to which the specific patent infringement venue statute, Section 1400(b) of Title 28, applies rather than the general venue statue, Section 1391(c).

- NHS, as an entity incorporated in Arizona, is a resident of Arizona, not Delaware.

- The complaint does not sufficiently allege any acts of infringement committed by NHS in Delaware, and NHS has not committed any acts of infringement in Delaware.

- The complaint does not satisfy Plaintiff's burden of establishing that NHS has a regular and established place of business in Delaware, and NHS does not have a regular and established place of business in Delaware.

Furthermore, this Court lacks personal jurisdiction over NHS because NHS does not regularly conduct or solicit business in Delaware, this action did not arise out of NHS's activities within the State, and maintenance of this action would offend traditional notions of fair play and substantial justices since NHS does not have sufficient minimum contacts with Delaware for this Court to exercise personal jurisdiction. Moreover, since venue and jurisdiction are both lacking here, service of process on NHS through the Delaware Secretary of State is insufficient.

Accordingly, this action ought to be dismissed on the basis of improper venue, lack of personal jurisdiction and insufficiency of process. Alternatively, transfer to the District of Arizona is appropriate since venue is proper there where NHS does, in fact, reside and have a regular and established place of business. Furthermore, a declaratory action is pending in that Court to determine whether Plaintiff's patent is valid and enforceable against NHS.

## I.    STATEMENT OF FACTS

### A.    Introduction.

This action was initially filed by Plaintiff against only Defendant Sedona Laboratories, Inc. ("SLI") on or about May 25, 2006. Defendant NHS was not a named defendant in Plaintiff's original complaint. On June 30, 2006, before Plaintiff amended its complaint to add NHS as a party, NHS filed a declaratory action in the United States District Court for the District of Arizona, seeking a declaration that its Product does not infringe Plaintiff's patent (the "Arizona Declaratory Action"). *See* **Exhibit "A"** attached hereto.[1] Following the filing and service of the Arizona Declaratory Action, Plaintiff filed its First Amended Complaint, which was amended to name NHS as a defendant. The First Amended Complaint ("FAC") was purportedly served on NHS on or about July 12, 2006 by personal service on the Delaware Secretary of State, Division of Corporations in Dover, Delaware. (D.I. at 2.)

The FAC is an action for patent infringement wherein Plaintiff, the maker of Beano®, is alleging that Defendants' product, GasAway+™, (the "Product") infringes on Plaintiff's patent no. 6,344,196 ("the '196 patent"). The Product, like Plaintiff's product Beano®, contains the enzyme alpaha-galactosidase, which is the basis for Plaintiff's infringement claim, but the NHS Product contains only 150 GalU of that enzyme, whereas the '196 patent's effective range for

---

[1] On July 24, 2006, NHS filed an amended complaint in the Arizona Declaratory Action. *See* **Exhibit "B"** attached hereto.

2

that enzyme is 675 GalU to 2,250 GalU. NHS's Product also contains other enzymes that are not found in Beano®, or the '196 patent, such as invertase, hemicellulase, beta-glucanase, phytase.

**B.    NHS's Business Operations.**

Defendant SLI is an Arizona corporation with its principal place of business in Cottonwood, Arizona. (D.I. 9 at 2; FAC ¶ 5.) Upon information and belief, SLI is neither registered as a foreign corporation, nor otherwise authorized to do business in Delaware. (Declaration of Fred Auzenne ("Auzenne Decl.") ¶ 3, attached hereto as **Exhibit "C"**.) In or about January 2006, NHS purchased the assets of SLI, including all rights pertaining to the Product. (*Id.*) NHS is an Arizona limited liability company with its principal place of business in Cottonwood, Arizona. (*Id.* ¶ 2; FAC ¶ 5.) NHS is neither registered as a foreign corporation, nor otherwise authorized to do business in Delaware. (Auzenne Decl. ¶ 2.)

NHS manufactures over-the-counter digestive products and nutritional supplements for consumer use, including the Product, which NHS commonly refers to as GasAway+™. (*Id.* ¶ 4.) NHS's only manufacturing plant is located in Cottonwood, Arizona. (*Id.*) NHS distributes its products, including GasAway+™, through a network of wholesalers, retailers, natural health stores, pharmacies, distributors and brokers, none of whom, to the best of NHS's knowledge, are residents of or located in Delaware. (*Id.* ¶ 7.) NHS sometimes engages independent contractors, on a commission basis, to market its products—but has never engaged an independent contractor located in Delaware. (*Id.*) All sales of NHS's Product are subject to review, approval and acceptance by NHS in Arizona (*Id.* ¶ 8.) NHS also staffs a call center in Arizona where it receives orders for its Product from retailers, natural health stores, wholesalers and distributors authorized by NHS to sell its Product. (*Id.* ¶ 7.) Defendant has no salaried or commissioned employees or contractors in Delaware, stocks no products there, and does not maintain a bank account or local telephone number in Delaware. (*Id.* ¶ 6.)

3

NHS maintains an informational website with the URL http://www.sedonalabs.com. NHS products, including GasAway+, cannot be purchased through that website. (*Id.* ¶ 9.) NHS does not own or operate the website with the URL http://affordable-natural-supplements.com. (*Id.* ¶10.) Upon information and belief, that website is owned by Affordable Natural Supplements, with its principal place of business in Brick, New Jersey. (*Id.*) That company also sells Beano®, a product of Plaintiff's, from that website. (*Id.*)

Defendants have produced a private-labeled version of GasAway+™ for Eckerd Corporation. An independent contractor of NHS, Jim Angus, an Arizona resident at the time, first presented the NHS line of Sedona Labs-branded products to Eckerd in or around the fall of 2003, at Eckerd's corporate headquarters in Largo, Florida. (Declaration of Jim Angus ("Angus Decl.") ¶¶ 2 – 5, attached hereto as **Exhibit "D".**) Shortly thereafter, Eckerd contacted Mr. Angus to inquire about getting an Eckerd private-labeled version of the Product. (*Id.* ¶ 6.) NHS and Eckerd then entered into a private labeling and product supplier agreement regarding the Product. (Auzenne Decl. ¶ 12; Angus Decl. ¶ 7.) All orders placed by Eckerd pursuant to that agreement were subject to review and acceptance by NHS in Arizona. (Auzenne Decl. ¶ 8.) Orders were shipped from Arizona to Eckerd warehouses in Florida, Georgia, New York, North Carolina, Pennsylvania or Texas. (*Id.* ¶ 12.) NHS did not ship any orders to any Eckerd stores in Delaware. (*Id.*)

As referenced below, Plaintiff bases venue in this District upon Defendant's sales of its Product as a private-labeled product for Eckerd drug stores, which then sells its private-labeled product in its stores, including stores in Delaware. (FAC ¶¶ 6-7.) It is believed that Eckerd has its principal place of business in Florida. (*See* Angus Decl. ¶ 5.)

4

Plaintiff Block Drug Company, Inc. is a New Jersey corporation, with its principal place of business in Pennsylvania. (FAC ¶ 4.) Plaintiff and NHS are competitors in the manufacture and sale of dietary supplements containing the enzyme alpha-galactosidase.

### C.    Plaintiff's Venue Allegations.

The allegations upon which Plaintiff relies to establish jurisdiction and venue in the District of Delaware state as follows:

> 6.    On information and belief, Defendants have manufactured and distributed over-the-counter digestive products and nutritional supplements for consumer use. Defendants have marketed products to and through regional grocery and drug chains, such as Eckerd drug stores ("Eckerd"). Eckerd stores are primarily located in the eastern United States, including the State of Delaware, where there are more than twenty Eckerd stores.

> 7.    On information and belief, Defendants have manufactured and distributed a food-enzyme dietary-supplement product in tablet and/or capsule form containing the enzyme alpha-galactosidase ('Defendants' Product'), which is said by Defendants to help prevent uncomfortable gas. Defendants manufactured for and distributed to Eckerd a private-label-branded version of Defendants' Product called 'food enzyme,' which Eckerd sells to its retail customers at its stores, including those located in Delaware. Defendants have had approval over the private label used on Defendants' Product.

> 8.    On information and belief, Defendants have also sold a version of Defendants' Product called 'GasAway+' to purchasers throughout the United States, including by means of an interactive Web site located at http://www.sedonalabs.com/purchase/ and http://www.affordable-natural-supplements.com/sedona_labs.html. . . .

> 9.    On information and belief, Defendants knowingly and purposely caused Defendants' Product to be sold to purchasers in Delaware, including those products sold to and by Eckerd, as well as those sold on the Web via the Internet.

> * * *

> 13.    On information and belief, Defendants' infringing products have been sold under their own brand name (e.g., "GasAway+"), as well as under various retail store-brand names, including at many retail stores located in Delaware (e.g., "food enzyme" at Eckerd). Defendants have

5

intentionally caused, and continue to cause, such infringing products to be
sold and used in Delaware.

(FAC ¶¶ 6-9 and 13.)

## II.    ARGUMENT

### A.    Venue In Delaware Is Improper Since NHS Is A Resident Of Arizona, Does Not Maintain A Regular And Established Place Of Business In Delaware And Has Not Committed An Act Of Infringement In Delaware.

Plaintiff alleges that pursuant to 28 U.S.C. §§ 1391(c) and 1400(b) venue is proper in this

district because (i) Defendants have distributed the Product to Eckerd drug stores, which Eckerd

then sells as a private-labeled product to its customers, including some located in Delaware

(FAC ¶¶ 6-7, 9); and (ii) Defendants have sold the Product from interactive websites via the

Internet. (FAC ¶¶ 8-9.) These allegations are too tenuous and wholly inadequate to satisfy

Plaintiff's burden to show that venue is proper here. *Cordis Corp. v. Cardiac Pacemakers*, 599

F.2d 1085, 1086 (1st Cir. 1979); *Coleco Indus., Inc. v. Kransco Manuf., Inc.*, 247 F.Supp. 571,

572 (S.D.N.Y. 1965); *see also Clearasite Headwear, Inc. v. Paramount Cap Mfg. Co.*, 204

F.Supp. 4, 6 (S.D.N.Y. 1962) and cases cited therein, and cases cited *infra* at § II.A.2; *accord*

*Merck & Co. v. Barr Laboratories, Inc.*, 179 F.Supp.2d 368, 373 (D.Del. 2002) (dismissing

patent infringement action for lack of personal jurisdiction and calling the nexus between

defendant's sales of its products to national distributors with distribution in Delaware and

defendant's sales figures "too attenuated").

It is well-established that "[v]enue in patent infringement actions is governed exclusively

by Section 1400(b) of Title 28." *E.g., Schnell v. Peter Eckrich & Sons, Inc.*, 365 U.S. 260, 81

S.Ct. 557, 5 L.Ed.2d 546 (1961); *Coleco Indus., Inc.*, 247 F.Supp. at 572 (citing *Fourco Glass*

*Co. v. Transmirra Prod. Corp.*, 353 U.S. 222, 229, 77 S.Ct. 787, 1 L.Ed.2d 786 (1957); *Kamkap,*

*Inc. v. Worldsbest Ind., Inc.*, 140 F.Supp. 854, 856 (S.D.N.Y. 1956) (citing *Stonite Products Co.*

6

*v. Melvin Lloyd Co.*, 315 U.S. 561, 62 S.Ct. 780, 86 L.Ed. 1026 (1942), and others). Therefore, the general venue statute at Section 1391(c) is an improper basis for venue of this patent infringement action. *Id.*, *see also Merchantile Bank v. Langdeau*, 371 U.S. 555, 567, 83 S.Ct. 520, 9 L.Ed.2d 523 (1963); *TPO Inc. v. Fed. Deposit Ins. Corp.*, 325 F.Supp 663, 666 n.5 (S.D.N.Y. 1971). Consequently, Plaintiff must show that venue is proper under Section 1400(b).

Title 28 U.S.C. § 1400(b) states:

> Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement *and* has a regular and established place of business.

28 U.S.C. § 1400(b) (emphasis added). Thus, it is Plaintiff's burden to demonstrate that venue in this district is proper either because (1) NHS is a resident of Delaware, or (2) that NHS has committed acts of infringement in Delaware *and* has a regular and established place of business here. Plaintiff's burden is a considerable one in light of the Congressional intention "that the forum of a patent infringement suit should be one reasonably convenient to the defendant." *Up-Right, Inc. v. Aluminum Safety Prod., Inc.*, 165 F.Supp. 742, 744 (D.Minn. 1958); *see also Vibber v. U.S. Rubber Co.*, 255 F.Supp. 47, 50 (S.D.N.Y. 1966) (noting Congress's intention, as expressed in the language of § 1400(b), to hold venue in patent infringement actions where it would be convenient for the defendant). Plaintiff cannot meet its significant burden. *See Cordis Corp.*, 599 F.2d at 1086 (the acts of infringement and place of business requirements both must be met to confer venue; if either is lacking, venue is improper).

### 1.    NHS is not a resident of Delaware since it is incorporated in Arizona.

Since NHS is incorporated in Arizona, and therefore resides in Arizona, the District of Delaware is not a proper venue for this action under the "residence" prong of Section 1400(b). *E.g., Fourco Glass Co.*, 353 U.S. at 226 (for purposes of venue statutes, a corporate defendant

7

resides in the state of its incorporation); *Aetna Cas. & Surety Co. v. Singer-General Precision, Inc.*, 323 F.Supp. 1141, 1143 (D.Del. 1971); *see also* (Auzenne Decl. ¶ 2 (stating that NHS is an Arizona corporation with its principal place of business in Cottonwood, Arizona) and FAC ¶ 5 (same)). Therefore, Plaintiff must show that venue is proper here because NHS "has committed acts of infringement *and* has a regular and established place of business" in Delaware. *E.g., Kamkap, Inc.*, 140 F.Supp. at 856. The use of the conjunctive "and" requires Plaintiff to prove both elements of this second prong of Section 1400(b). *Cordis Corp.*, 599 F.2d at 1086; *Clearasite Headwear, Inc. v. Paramount Cap Mfg. Co., Inc.*, 204 F. Supp. 4, 5 (S.D.N.Y. 1962). Failure to establish either element is, therefore, fatal to the exercise of venue in this District. *See Cordis Corp.*, 599 F.2d at 1086 (held that district court properly dismissed case because place of business in district not shown); *Coleco Ind., Inc.*, 247 F.Supp. at 572-77 (assumes acts of infringement have occurred in district, but finds venue is improper because regular and established place of business not shown). Here, Plaintiff has not alleged, and cannot allege, facts sufficient to establish *either* element. Consequently, venue is improper in this District.

2.    NHS does not maintain a regular and established place of business in Delaware.

NHS will address first the second requirement—that of "a regular and established place of business" in Delaware. To sustain its burden on this requirement, Plaintiff must show that NHS is "regularly engaged in carrying on a substantial part of its ordinary business on a permanent basis in a physical location within [this] district over which it exercises some measure of control." *Coleco Indus., Inc.*, 247 F.Supp. at 574 (internal quotations and citations omitted). Such a place of business can be a branch office, a sales-showroom, or a warehouse or distribution center, *id.* (citations omitted), none of which Plaintiff alleges NHS maintains in Delaware. Furthermore, it is not enough that a defendant transacts or solicits business in the

8

district. *IPCO Hosp. Supply Corp. v. Les Fils D'Auguste Maillefer S.A.*, 446 F.Supp. 206, 208 (S.D.N.Y. 1978). Rather, it must be shown that the defendant conducts its business in this district through a permanent and continuous presence here. *In re Cordis Corp.*, 769 F.2d 733, 737 (Fed. Cir. 1985). Simply stated, Plaintiff has not put forth such allegations, and it cannot do so because the facts would not support those allegations.

Here, the facts show that NHS does not have a permanent and continuous presence in Delaware through which it conducts its business. NHS has no offices, sales-showrooms, warehouses, distribution centers or any other real property in Delaware. (Auzenne Decl. ¶ 5.) It has no employees in Delaware, no sales team here, and no sales representatives that are assigned the Delaware market. (*Id.* ¶ 6.) The company does not manufacture or store its Product in Delaware, it does not accept any orders in Delaware (all orders are reviewed and accepted, or rejected, in Arizona), and all payments for the company's Product are made to the company in Arizona. (*Id.* ¶¶ 4, 6, 8.) NHS does not have a bank account in Delaware, or a local telephone number. (*Id.* ¶ 6.) Its passive website is hosted and maintained in Arizona, and does not accept any orders for the Product, including from Delaware residents. (*Id.* ¶ 9.) In short, there are none of the indicia of a "regular and established place of business" in Delaware. NHS does not conduct business in Delaware through a permanent and continuous presence here. Consequently, venue here is not proper.

The only allegations by Plaintiff that can remotely be construed as alleging that NHS has a "regular and established place of business" in Delaware are the allegations that the Product is sold in Delaware at Eckerd drug stores, and other retail stores located in Delaware. (*See* FAC ¶¶ 6-7, 9 and 13.[2]) However, as Plaintiff so rightly alleges, it is "Eckerd [that] sells {NHS's

---

[2] These allegations are also inadequate to sustain Plaintiff's burden to show that NHS committed acts of infringement in Delaware. *See* discussion *infra* § II.A.3.

9

Product] to its retail customers at its stores," not NHS. Moreover, the Eckerd store locations in Delaware, or those of any other retailer in this State, are not physical locations over which NHS exercises any level of control. NHS could no more require Eckerd to sell its Product in its Delaware stores, or prevent it from doing so, than it could require those stores to paint all their walls black with pink polka dots. Eckerd could pull its entire stock of the Product off the shelves in its Delaware stores tomorrow and NHS would be powerless to do anything about it. The mere suggestion of venue on the basis that Eckerd sells the Product from its stores in Delaware is incredulous, *see Merck & Co.*, 179 F.Supp.2d at 373 (national corporation's sales of defendant's product in Delaware "too attenuated" to charge against defendant for jurisdiction purposes), if not borderline frivolous and subject to sanction.

While not stated in those terms, Plaintiff may be attempting to set up an argument that Eckerd's stream-of-commerce sales constitute NHS "doing business" in Delaware sufficient to confer venue in this District under Section 1391(c). It is widely and firmly established, however, that the "doing business" standard under the general venue statute is not a substitute for, and does not meet the standard of, the "regular and established place of business" test in Section 1400(b). *Fourco Glass Co.*, 353 U.S. at 229; *Knapp-Monarch Co. v. Casco Prod. Corp.*, 342 F.2d 622, 624 (7th Cir. 1965); *Coleco Indus., Inc.*, 247 F.Supp. at 572. The terms are not synonymous. *Id.* Moreover, as the courts have held, the mere transaction or solicitation of business in the district is not enough to confer venue in this Court under the patent venue statute. *E.g., IPCO Hosp. Supply Corp.*, 446 F.Supp. at 208.

The cases are legion in which the defendant had far greater connections with the contested district than exist here, and in which venue was held to be improper because plaintiff failed to show that the defendant had a regular and established place of business in the district.

10

*E.g., W.S. Tyler Co. v. Ludlow-Saylor Wire Co.*, 236 U.S. 723, 725, 35 S.Ct. 458, 59 L.Ed. 808 (1915) (salaried and commissioned sales representative with office in district, office expenses paid by defendant, sales solicited in district); *Cordis Corp.*, 599 F.2d at 1086 (defendant had an exclusive, independent sales representative in the district and employee who lived there); *Knapp-Monarch Co.*, 342 F.2d at 623-26 (defendant had sales representative in district, solicited sales there, had bank account and telephone directory listing there, and attended semi-annual trade shows there, *inter alia*); *Minn. Mining & Mfg., Co. v. Int'l Plastic Corp.*, 159 F.2d 554, 560-61 (7th Cir. 1947) (defendant caused distributor to organize as business in district, dictated the distributor's name, required that it sell no other products, dictated sales prices, and issued indemnity agreements when required by distributor's customers); *In re Cordis Corp.*, 769 F.2d at 735 (defendant employed two full-time sales representatives, each based in the district, where they stored company literature, documents and products; sales reps paid salaries, had company cars and employed exclusively by defendant; telephone number and answering service in district; telephone directory listing); *Coleco Indus., Inc.*, 247 F.Supp. at 572-74 (commissioned sales representative with office in district where defendant's product is displayed, defendant's name is listed in lobby directory and telephone directory; sales solicited in district; defendant's sales manager visits district several time each year and calls on buyers of various chain stores; attendance at trade show in district);    *Clearasite Headwear, Inc.*, 204 F.Supp. at 5 (commissioned sales representative with office in district where defendant's name is on the door and in the local telephone directory); *Kamkap, Inc.*, 140 F.Supp. at 857 (defendant listed in telephone directory, and building directory of sales representative's office, product samples and literature on display).

11

In contrast to many of those cases, here there are no allegations that NHS has a sales representative resident in this district, or that NHS has a physical place of business in Delaware. There are no allegations that NHS and Eckerd met in Delaware and inked a deal for the supply of the Product to Eckerd. There are no allegations that NHS maintains a sales force in Delaware, or that it has offices here or a sales representative with offices here, or a Delaware bank account or telephone number or directory listing. Plaintiff does not allege that NHS pays the expenses for any of its contractors to maintain an office and telephones in Delaware. These allegations do not exist because such facts do not exist. (*See, generally*, Auzenne Decl.) The facts are that NHS is not "regularly engaged in carrying on a substantial part of its ordinary business on a permanent basis in a physical location within [this] district over which it exercises some measure of control." Consequently, NHS does not have a regular and established place of business upon which to support this Court's exercise of venue under Section 1400(a). Accordingly, this Court should dismiss Plaintiff's First Amended Complaint for improper venue. Alternatively, this Court should, pursuant to 28 U.S.C. § 1406(a), transfer this action to a court with venue—the District of Arizona.

3.  <u>NHS has not engaged in any acts of infringement in Delaware since NHS does not manufacture, use or sell the Product in Delaware.</u>

Given that Plaintiff cannot sustain its burden on the "regular and established place of business" requirement of the patent venue statute, there is no need to consider whether acts of infringement have occurred in Delaware. *See* 28 U.S.C. § 1400(b) (venue is proper "where the defendant has committed acts of infringement *and* has a regular and established place of business"); *see also, e.g., Cordis Corp.*, 599 F.2d at 1086 (both requirements must be met for venue to exist); *Clearasite Headwear, Inc.*, 204 F.Supp. at 5 (same). However, Plaintiff has also failed to carry its burden on the act of infringement requirement.

12

A patent may be infringed by manufacture, use or sale. 35 U.S.C. § 271(a). Thus, to establish an "act of infringement," Plaintiff must establish that NHS manufactured, used or sold the allegedly infringing Product in Delaware. *Cordis Corp. v. Cardiac Pacemakers*, 599 F.2d 1085, 1087 (1st Cir. 1979). In this case, the analysis must focus on whether NHS sold its Product in Delaware, since it is manifest that neither manufacture nor use occurred in Delaware.[3] In undertaking this analysis, it is important to heed the Supreme Court's admonition regarding application of the patent venue statute: "the requirement of venue is specific and unambiguous; it is not one of those vague principles which, in the interest of some overriding policy, is to be given a 'liberal' construction." *Schnell*, 365 U.S. at 264, quoting *Olberding v. Ill. Central R. Co.*, 346 U.S. 338, 340, 74 S.Ct. 83, 85, 98 L.Ed. 39 (1953).

The Supreme Court has held that where a manufacturer's representative solicits an order in one state and transmits it to the manufacturer at its home office in another state, who in turn ships the goods directly to the consumer, the sale is consummated in the latter state and does not constitute an infringement of a patent in the former state. *W.S. Tyler Co.*, 236 U.S. at 725; *see also Minn. Mining & Mfg., Co.*, 159 F.2d at 560; *Picker Int'l, Inc. v. Varian Assoc., Inc.*, 661 F.Supp. 347, 348-50 (N.D. Ohio 1987) (discussing and applying the "consummated sale doctrine" and dismissing for improper venue in first district where orders were accepted in and shipped from a second district where product was manufactured); *R.D. Werner Co., Inc. v. Sears, Roebuck & Co.*, 349 F.Supp. 660, 661 (N.D. Ohio 1972) (venue is improper where only connection with the district are sales of the allegedly infringing product made by a retailer of the alleged infringer's product). Even more so, where only the retailer of the manufacturer's

---

[3] *See* discussion *supra* § II.A.2, showing that NHS manufactures the Product in Arizona and has no presence in Delaware by which it could be shown that NHS has "used" the Product in Delaware. Moreover, Plaintiff's allegations as to Delaware are only that NHS has sold its Product here; Plaintiff does not allege manufacture or use in Delaware. *See* FAC ¶¶ 7-9 and 13.

13

allegedly infringing product has made sales in the contested district, and the manufacturer is not a resident of that district, does not have a regular and established place of business in that district, and does not manufacture the product in that district, no acts of infringement occur there and venue is improperly laid there. *R.D. Werner Co., Inc.*, 349 F.Supp. at 661.

Here, the facts are closely analogous to those of *R.D. Werner*. In that case, the manufacturer was incorporated and had its principal place of business in Iowa. *Id.* It manufactured ladders in Iowa, sold and shipped them from Iowa to a retailer, Sears, who then sold the ladders in the contested district and elsewhere. *Id.* The sales made by Sears were the only sales allegedly made in the contested district. *Id.* There were no allegations or evidence that the manufacturer made any sales there. *Id.* On those facts, there was not enough to sustain venue in the Northern District of Ohio for failure of the acts of infringement requirement. *Id.*

Likewise, here, there are no facts, or allegations, sufficient to sustain venue in Delaware. NHS manufactures its Product in Arizona, and Arizona only. All orders for the Product are accepted, or "consummated", in Arizona, and Arizona only. NHS then ships to its distributors, wholesalers and retailers from Arizona only. NHS does not ship the Product to any consumers in Delaware (but even if it did, that would not constitute an act of infringement since the shipping originates in Arizona). Nor does NHS ship the Product to any Eckerd stores in Delaware, but rather ships it to Eckerd warehouses in other states. The only sales of NHS's Product that allegedly occur in Delaware, are those made by Eckerd. Thus, NHS does not sell the Product in Delaware as contemplated by the statute. Consequently, no act of infringement has occurred in Delaware, and venue is not proper here for this additional reason. The Complaint ought to, therefore, be dismissed for improper venue.

14

Plaintiff does allege that "Defendants manufactured for and distributed to Eckerd a private-label-branded version of Defendants' Product called 'food enzyme,' *which Eckerd sells to its retail customers at its stores, including those located in Delaware*." (FAC ¶ 7, emphasis added.) The allegation is not that *NHS sold* the Product to Delaware residents, or even made sales to Eckerd in Delaware—but simply that *Eckerd sold* the Product in Delaware. Such attenuated sales to Delaware residents cannot be the basis for haling NHS into court in Delaware. *Picker Int'l, Inc.*, 661 F.Supp. at 350; *R.D. Werner Co., Inc.*, 349 F.Supp. at 661; *Coleco Ind., Inc.*, 247 F.Supp. at 574-76. If all it took to subject a manufacturer to jurisdiction and venue in a district were the sales of its products in the district by a retailer, then the venue statutes would lose all relevancy, vitality and efficacy. Manufacturers would be subject to jurisdiction and venue at the whim of retailers. Nationwide venue would result if a manufacturer happened to sell its products to a chain store with a presence in all 50 states—an absurd and non-sustainable result, particularly in reference to the Supreme Court's admonition that the patent venue statute is to be strictly, not liberally, construed.

Because NHS has not made any sales of its Product in Delaware—and has not manufactured or used the Product here—it has not committed any acts of infringement in Delaware upon which to base venue in this district. Consequently, Plaintiff's First Amended Complaint should be dismissed for improper venue. Alternatively, this matter should be transferred to the proper district—the District of Arizona.

**B.    This Court Lacks Personal Jurisdiction Over NHS**

While Plaintiff alleges that this Court has subject matter jurisdiction over this action, (FAC ¶ 2), the complaint is silent as to the basis of personal jurisdiction. An astute observer might interpret Plaintiff's silence on that score to be a tacit admission that this Court lacks personal jurisdiction over NHS. Such an observation would be correct. For that reason, this

15

Court ought to dismiss this First Amended Complaint pursuant to Rule 12(b)(2) of the rules of Civil Procedure.

Upon the assertion of lack of personal jurisdiction, it is Plaintiff's burden to establish with reasonably particularity that sufficient minimum contacts exist between NHS and Delaware to support jurisdiction here. *Merck & Co. v. Barr Laboratories, Inc.*, 179 F.Supp.2d 368, 371 (D.Del. 2002). Plaintiff must establish either specific jurisdiction—that the cause of action arose from NHS's activities in Delaware—or general jurisdiction—that NHS has continuous and systematic contacts with the State. *Id.*, citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-16, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). In *Merck*, a case very similar to this one, the court found personal jurisdiction lacking. *Id.* at 376. For many of the same reasons as in *Merck*, personal jurisdiction is lacking here, too.

The defendant in *Merck*, Barr Laboratories, was a pharmaceutical company that developed, manufactured and marketed pharmaceuticals nationwide. *Id.* at 370. Barr had its principal place of business in New York, with operations in New York, New Jersey, Ohio, Pennsylvania and Virginia. *Id.* It did not have offices, facilities, local telephone listings, or bank accounts in Delaware, and it did not own or lease any property in Delaware or employ any persons there. *Id.* Barr had licenses to sell drugs in Delaware, and made direct sales to four customers in Delaware. *Id.* Additionally, Barr sold its products to national mail order pharmacies, retail drugstores, and pharmaceutical companies, with customers in Delaware, as well as to Happy Harry's, a Delaware retail pharmacy chain. *Id.* Barr had a National Account Manager who was in charge of the Delaware accounts and who visited the State as often as three times each year. *Id.* at 370-71. The company made yearly payments to Delaware Medicaid, had a contract with a Delaware corporation to store a certain product there, and had a wholly-owned

16

subsidiary in Delaware, which performed research and development of pharmaceuticals. *Id.* at 371.

Based on those facts, it was first conceded by the plaintiff that specific jurisdiction did not exist. *Id.* The Court then conducted a careful analysis of general jurisdiction under Delaware's long-arm statute, 10 Del. C. § 3104(c), and principles of federal due process. *Id.* at 371-75. Among other things, the Court found that Barr did not regularly do business in Delaware, that placing a product into the stream of commerce did not give rise to jurisdiction under the State's long-arm statute, and that Barr's contacts with Delaware were minimal and insufficient for personal jurisdiction under that statute. *Id.* at 373-74. As for due process, the Court held that the requirements of due process—minimum contacts with the forum such that traditional notions of fair play and substantial justice were not offended—were not satisfied because Barr's contacts with Delaware and its residents were not continuous and systematic. *Id.* at 374-75.

Likewise here, based on the facts and a similar analysis as discussed in Sections II.A.2 and 3 above (which will not be reiterated here), personal jurisdiction is lacking over NHS in Delaware since, among other things, it does not have a regular and established place of business here, and it has not had continuous and systematic contacts with Delaware or its residents. Consequently, Plaintiff's First Amended Complaint should be dismissed against NHS for lack of personal jurisdiction.

### C. Service Of Process On NHS In Delaware Is Insufficient Since Delaware Is Not A Proper Venue And Does Not Have Jurisdiction over NHS

Pursuant to Rules 4(k)(1) and 12(b)(5), Fed.R.Civ.P., this action should also be dismissed for insufficiency of service of process. Service of summons "is effective to establish jurisdiction over the person of a defendant (A) who could be subjected to the jurisdiction of a court of

17

general jurisdiction in the state in which the district court is located[.]" Rule 4(k)(1)(A), Fed.R.Civ.P. The federal rules Advisory Committee, when initially adopting these rules, specifically noted that subdivision (f), the predecessor to subdivision (k)(1)(A), "does not . . . enlarge the jurisdiction of the district courts." ADVISORY COMMITTEE NOTES, 1937 Adoption, Rule 4, Fed.R.Civ.P. That admonition is consistent with Rule 82, which specifically provides that the rules of Civil Procedure, including the rules on service of process, "shall not be construed to extend or limit the jurisdiction of the United States district courts or the venue of actions therein." Rule 82, Fed.R.Civ.P. As noted above, jurisdiction and venue in patent cases is proper *only* where the defendant resides, or where the defendant has committed an act of infringement and has a regular and established place of business. 28 U.S.C. § 1400(b). Consequently, service of process can only be effective in those same districts. *Gibbs v. Emerson Elec. Mfg. Co.*, 29 F.Supp. 810, 812-13 (W.D.Mo. 1939); *Gibbs v. Emerson Elec. Mfg. Co.*, 31 F.Supp. 983, 984 (W.D.Mo. 1940).

Here, jurisdiction and venue are not proper in Delaware since NHS is not a resident of Delaware, did not commit an act of infringement in Delaware and does not have a regular and established place of business here. Therefore, service of process cannot be effectively made on NHS in Delaware. *See id.* (service quashed where made in district that did not have venue under patent venue statue). The Return of Service clearly states that service was purportedly made on NHS by serving the Summons and FAC on the Delaware Secretary of State, Division of Corporations in Dover, Delaware. (*See* D.I. at 2.) Consequently, service of process is insufficient here, and this action ought to be dismissed for that reason pursuant to Rule 12(b)(5); *see also Akzona Inc. v. E.I. DuPont De Nemours & Co.*, 607 F.Supp. 227, 240-41 (D.Del. 1984)

18

(service of process on Secretary of State of Delaware was invalid as to foreign corporation which had no direct connection to Delaware). Alternatively, service of process ought to be quashed.

## III.    CONCLUSION

The allegations of the First Amended Complaint completely fail to sustain Plaintiff's burden of demonstrating that venue is proper here. Rather, this Court lacks venue over this action since (i) NHS is not a resident of Delaware; (ii) NHS does not have a regular and established place of business in Delaware; and (ii) NHS has not committed an act of infringement in Delaware. Consequently, this action should be dismissed for improper venue pursuant to 28 U.S.C. § 1400(b) and 28 U.S.C. § 1406(a). Furthermore, this matter ought to be dismissed as to NHS for lack of personal jurisdiction and for insufficient service of process.

Alternatively, service of process should be quashed, and this matter should be transferred to the District of Arizona, pursuant to 28 U.S.C. § 1406(a), where venue would be proper.

KLEHR, HARRISON, HARVEY,
BRANZBURG & ELLERS LLP

_Patrick A. Costello_

David S. Eagle (Bar No. 3387)
Patrick A. Costello (Bar No. 4535)
919 Market Street, Suite 1000
Wilmington, DE  19801
(302) 426-1189 (phone)
(302) 426-9193 (fax)
deagle@klehr.com
pcostello@klehr.com
*Attorneys for Defendant Nutri-Health
Supplements, LLC, d/b/a Sedona
Laboratories*

Of Counsel:

Roger L. Cohen
Michelle C. Lombino
Thomas A. Connelly
JABURG & WILK, P.C.
14500 N. Northsight Blvd., Ste. 116
Scottsdale, Arizona 85260
(480) 609-0011 (office)
(480) 609-0016 (fax)

September 15, 2006

DEL1 64602-1

# EXHIBIT "A"
# TO MOTION TO DISMISS

Roger L. Cohen, #004409
Email: rlc@jaburgwilk.com
Michelle C. Lombino, #016252
Email: mcl@jaburgwilk.com
**JABURG & WILK, P.C.**
3200 North Central Avenue, Suite 2000
Phoenix, Arizona 85012
(602) 248-1000

Attorneys for Plaintiff

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| NUTRI-HEALTH SUPPLEMENTS, LLC D/B/A SEDONA LABORATORIES, | Case No: |
| Plaintiff, | **COMPLAINT** |
| v. | |
| BLOCK DRUG COMPANY, INC., | |
| Defendant. | |

For its Complaint, Plaintiff Nutri-Health Supplements, LLC, d/b/a Sedona Laboratories, alleges as follows:

## NATURE OF THE ACTION

1.    This is an action seeking declaratory judgment that U.S. Patent No. 6,344,196 (the "Patent"), entitled "Compositions and Method for Reducing Gastrointestinal Distress Due to Alpha-D-Galactosidase-Linked/Containing Sugars," which, upon information and belief, was issued on February 5, 2002, is invalid, unenforceable, and void for failure to comply with the provisions of 35 U.S.C. §§ 101, *et. seq.*

## JURISDICTION AND VENUE

2.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§1331, 1338(a), and 2201 *et. seq.*

1    3.    Venue is proper in this District pursuant to 28 U.S.C. §§1391 (b)(2), and (c).

2                                              **PARTIES**

3    4.    Plaintiff Nutri-Health Supplements, LLC, d/b/a Sedona Laboratories

4    ("NHS"), is an Arizona limited liability company, with its principal place of business in

5    Cottonwood, Arizona.

6    5.    Upon information and belief, Defendant Block Drug Company, Inc.

7    ("Block") is a corporation organized under the laws of the State of New Jersey, and

8    wholly owned by GlaxoSmithKline plc, U.K. ("Glaxo").

9    6.    Upon information and belief, Block is and was at all relevant times the

10   owner of the Patent, and either itself or through Glaxo, engaged in the manufacture, sale

11   and distribution of over-the- counter drug products, including a dietary supplement

12   containing the enzyme alpha-galactosidase.  Block sells products throughout the United

13   States, including Arizona, and regularly ships such products within the United States in

14   interstate commerce.

15   7.    NHS is a manufacturer and seller of various nutritional supplements,

16   including a dietary supplement containing the enzyme alpha-galactosidase.

17   8.    NHS and Block Drug are competitors in the manufacture and sale of dietary

18   supplements containing the enzyme alpha-galactosidase.

19                            **CLAIM FOR DECLARATORY JUDGMENT**

20   9.    Upon information and belief, Block Drug is the owner of the Patent.

21   10.    Upon information and belief, the individuals (collectively, the "Applicant")

22   associated with the filing or prosecution of the application (the "Application") to the U.S.

23   Patent and Trademark Office ("PTO") for the Patent, including each inventor named in

24   the Application, each attorney or agent who prepared or prosecuted the Application, every

25   person involved in the preparation or prosecution of the Application and who was

26   associated with the inventor, with the assignee, or with anyone to whom there is an

27   obligation to assign the Application, breached their duty of good faith and candor to the

28   PTO, in violation of 37 C.F.R. §157, by among other things, affirmatively misrepresenting

2

JABURG & WILK, P.C.
ATTORNEYS AT LAW
3200 NORTH CENTRAL AVENUE
SUITE 2000
PHOENIX, ARIZONA 85012

1    material facts to the PTO, failing to disclose material information to the PTO, and

2    submitting to the PTO false material information.

3        11.    The alleged invention that is the subject of the Patent is not new, novel or

4    original.

5        12.    The prior art makes clear that the use of galactosidases by humans to

6    alleviate gas was known prior to the filing date of the Application.

7        13.    The alleged invention was derived at least indirectly from information that

8    was known or obvious in the trade, and was patented, in public use, on-sale and disclosed

9    by publication more than a year before the filing of the Application.    The Patent,

10    therefore, is invalid for obviousness.

11        14.    At the time it made the Application, the Applicant knew that: (a) the alleged

12    invention which is the subject of the Patent was not new, novel or original, (b) prior art

13    made clear that the use of galactosidases by humans to alleviate gas was known, and (c)

14    the alleged invention was derived at least indirectly from information that was known or

15    obvious in the trade, and was patented, in public use, on-sale and disclosed by publication

16    more than a year before the filing of the Application, all of which were material to the

17    PTO's examination of the Application (collectively, the "Material Facts").

18        15.    Despite its knowledge of the Material Facts, and knowing that it could not

19    rely on the merits of the claimed invention to procure a patent, Applicant nonetheless

20    failed in a timely, proper and honest manner to disclose to the PTO the Material Facts.

21        16.    Upon information and belief, Applicant, among other things, (a) relied on

22    arguments to the PTO that were inconsistent from one response to another, (b) relied on

23    skewed interpretation of selected phrases or terminology to distinguish its claims from

24    prior art, (c) repeatedly submitted to the PTO self-serving affidavits, unreliable scientific

25    information, and other misrepresentations.

26        17.    The PTO relied upon Applicant's misrepresentations, and concealment, and

27    non-disclosure of Material Facts and was thereby induced to approve the Patent.

28

JABURG & WILK, P.C.
ATTORNEYS AT LAW
3200 NORTH CENTRAL AVENUE
SUITE 2000
PHOENIX, ARIZONA 85012

3

1     18.    Applicant's acts and omissions were intentional, deliberate, wrongful, and

2    willful.

3     19.    As a result of the foregoing, the Patent is unenforceable due to obviousness,

4    and the inequitable conduct of Applicant before the PTO in violation of 37 C.F.R. § 1.56,

5    entitling NHS to entry of declaratory judgment that the Patent is invalid, void, and

6    unenforceable.

7     WHEREFORE, Plaintiff Nutri-Health Supplements, LLC respectfully seeks

8    judgment as follows:

9     1.    declaring the Patent invalid, void and unenforceable;

10    2.    awarding Plaintiff costs and reasonable attorney fees pursuant to 35 U.S.C.

11           § 285; and

12    3.    granting such other relief to Plaintiff as is proper and just.

13

14    DATED this 30th day of June, 2006.

15                        **JABURG & WILK, P.C.**

16

17                        /s/ Michelle C. Lombino , #016252
                          Roger L. Cohen

18                        Michelle C. Lombino
                          Attorneys for Plaintiff

19

20

21

22

23

24

25

26

27

28

JABURG & WILK, P.C.
ATTORNEYS AT LAW
3200 NORTH CENTRAL AVENUE
SUITE 2000
PHOENIX, ARIZONA 85012

4

## Complaints and Other Initiating Documents
2:06-at-10682 NUTRI-HEALTH SUPPLEMENTS

**U.S. District Court**

**DISTRICT OF ARIZONA**

Notice of Electronic Filing

The following transaction was received from Lombino, Michelle Catherine entered on 6/30/2006 at 12:15 PM MST and filed on 6/30/2006

**Case Name:**        NUTRI-HEALTH SUPPLEMENTS
**Case Number:**    2:06-at-10682
**Filer:**                NUTRI-HEALTH SUPPLEMENTS
**Document Number:** 1

**Docket Text:**
COMPLAINT, filed by NUTRI-HEALTH SUPPLEMENTS. (Attachments: # (1) Civil Cover Sheet) (Lombino, Michelle)

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1096393563 [Date=6/30/2006] [FileNumber=965426-0]
[7a2a6d051acada945a215dd299651903b247d874392cc290e12ef805da8674f0319c
de5d2c5ad2452d0d91277be24e09633ae966a271ed532804cc1928fb1eb8]]
**Document description:**Civil Cover Sheet
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1096393563 [Date=6/30/2006] [FileNumber=965426-1]
[6218d4beda469ed58f1773d0414fc6b3d7b398a2a331d8a58f6f10eaef82f16dd8e3
dce67af14024c7f820c8bfe9f309c86f30eb7783b32a021e61eecbb0c3e1]]

**2:06-at-10682 Notice will be electronically mailed to:**

Michelle Catherine Lombino    mcl@jaburgwilk.com, lso@jaburgwilk.com

**2:06-at-10682 Notice will be delivered by other means to:**

# EXHIBIT "B"
# TO MOTION TO DISMISS

## Complaints and Other Initiating Documents
3:06-cv-01673-DGC Nutri-Health Supplements LLC v. Block Drug Company, Inc

### U.S. District Court

### DISTRICT OF ARIZONA

Notice of Electronic Filing

The following transaction was received from Lombino, Michelle Catherine entered on 7/24/2006 at 11:05 AM MST and filed on 7/24/2006

**Case Name:**        Nutri-Health Supplements LLC v. Block Drug Company, Inc
**Case Number:**      3:06-cv-1673
**Filer:**            Nutri-Health Supplements, LLC
**Document Number:** 4

**Docket Text:**
AMENDED COMPLAINT *First* against Block Drug Company, Inc, filed by Nutri-Health Supplements, LLC.(Lombino, Michelle)

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1096393563 [Date=7/24/2006] [FileNumber=1018603-0
] [3f991391a138dc16b6297bee5219977605eae0aa5e2a9896a3ae32b63cb908a0e99
e292c95eef1ebf943f7011f4fd095eb81baa1d15e2cebc5341f6bb48d49c1]]

**3:06-cv-1673 Notice will be electronically mailed to:**

Roger L Cohen    rlc@jaburgwilk.com, kms@jaburgwilk.com, ajb@jaburgwilk.com, rml@jaburgwilk.com

Michelle Catherine Lombino    mcl@jaburgwilk.com, lso@jaburgwilk.com

**3:06-cv-1673 Notice will be delivered by other means to:**

1  Roger L. Cohen, #004409
   Email: rlc@jaburgwilk.com
2  Michelle C. Lombino, #016252
   Email: mcl@jaburgwilk.com
3  **JABURG & WILK, P.C.**
   3200 North Central Avenue, Suite 2000
4  Phoenix, Arizona 85012
   (602) 248-1000
5
   Attorneys for Plaintiff
6

7

8

9              **IN THE UNITED STATES DISTRICT COURT**

10                **FOR THE DISTRICT OF ARIZONA**

11 NUTRI-HEALTH SUPPLEMENTS, LLC
   D/B/A SEDONA LABORATORIES,
12                                          Case No: CV06-1673-PCT-DGC
              Plaintiff,
13                                          **FIRST AMENDED COMPLAINT**

14     v.

15 BLOCK DRUG COMPANY, INC.,

16              Defendant.

17

18     For its Complaint, Plaintiff Nutri-Health Supplements, LLC, d/b/a Sedona

19 Laboratories ("NHS"), alleges as follows:

20                    <u>**NATURE OF THE ACTION**</u>

21     1.    This is an action seeking declaratory judgment that: (a) a nutritional

22 supplement containing the enzyme alpha-galactosidase manufactured and sold by NHS

23 does not infringe U.S. Patent No. 6,344,196 ("the '196 Patent"), entitled "Compositions

24 and Method for Reducing Gastro-intestinal Distress Due to Alpha-D-Galactosidase-

25 Linked/Containing Sugars," which issued on February 5, 2002, and (b) the '196 Patent is

26 invalid, unenforceable, and void for failure to comply with the provisions of 35 U.S.C. §§

27 101, *et. seq.*

28

12751-1/MCL/RLC/538422_v3

**JURISDICTION AND VENUE**

2.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§1331, 1338(a), and 2201 *et. seq.*

3.    Venue is proper in this District pursuant to 28 U.S.C. §§1391 (b)(2), and (c).

**PARTIES**

4.    NHS is an Arizona limited liability company, with its principal place of business in Cottonwood, Arizona.

5.    Upon information and belief, Defendant Block Drug Company, Inc. ("Block") is a corporation organized under the laws of the State of New Jersey, and wholly owned by GlaxoSmithKline plc, U.K. ("Glaxo").

6.    Upon information and belief, Block is and was at all relevant times the owner of the '196 Patent, and either itself or through Glaxo, engaged in the manufacture, sale and distribution of over-the-counter drug products, including a dietary supplement containing the enzyme alpha-galactosidase.  Block sells products throughout the United States, including Arizona, and regularly ships such products within the United States in interstate commerce.

7.    NHS and Block Drug are competitors in the manufacture and sale of dietary supplements containing the enzyme alpha-galactosidase.

8.    In January 2006, NHS acquired all rights and interest of Sedona Laboratories in a product (the "Sedona/NHS Product") containing the alpha-galactosidase enzyme, and since has manufactured and offered for sale the Sedona/NHS Product.

9.    Block Drug has filed a civil action against Sedona Laboratories, Inc. ("Sedona Laboratories") in the United States District Court for the District of Delaware, alleging that the Sedona/NHS Product infringes the '196 Patent.

10.    Subsequent to the filing of the present action by NHS, Block Drug amended its complaint to name NHS as a party in the Delaware case.

11.    There is a substantial and continuing justiciable controversy as to Block Drug's right to maintain suit for infringement of the '196 Patent, as to the validity,

2

12751-1/MCL/RLC/538422_v3

1  enforceability and scope of the '196 Patent, and as to whether the Sedona/NHS Product
2  infringes any valid claim of the '196 Patent.

3                          **GENERAL ALLEGATIONS**

4        **A.    THE SEDONA/NHS PRODUCT.**

5        12.    The Sedona/NHS Product is a proprietary enzyme blend, containing alpha-
6  galactosidase, for the aiding of digestion.  The Sedona/NHS Product is sold in a two-piece
7  capsule form.  Each capsule contains 150 GAIU of alpha-galactosidase, 140 SU of
8  invertase, and trace amounts of hemicellulase, beta-glucanase, and phytase.  The two-
9  piece capsule is made from gelatin and rice starch.

10       13.    The instructions printed on the packaging for the Sedona/NHS Product
11  provide: "One capsule per serving of gassy food at the beginning of the meal.  A typical
12  meal consists of 2 to 3 servings of food.  For best results you may have to adjust the
13  number of capsules according to the number of servings of problem food that you eat."

14       **B.    PROSECUTION HISTORY OF THE '196 PATENT.**

15       14.    The '196 Patent claims priority to an application filed with the United States
16  Patent Office ("USPTO") on May 16, 1989, which is the parent application for a string of
17  six applications that ultimately resulted in the issuance of the '196 Patent over 12 years
18  later.  The six applications are as follows: (i)  U.S. Patent Application 07/352,441 filed
19  May, 16, 1989 (the "1989 Application"), (ii) U.S. Patent Application 07/780,563 filed on
20  October 21, 1991, (iii)  U.S. Patent Application 08/183,639, filed January 18, 1994, (iv)
21  U.S. Patent Application 08/487,871, filed June 7, 1995 (the "1995 Application"), (v)  U.S.
22  Patent Application 09/444,855, filed on November 22, 1999, and (vi)  U.S. Patent
23  Application 09/634,088, filed August 8, 2000 (the "2000 Application").

24       15.    On November 23, 1999, the USPTO issued U.S. Patent No. 5,989,544 (the
25  '544 Patent") based on the 1995 Application.

26       16.    The 1995 Application is the only other of the six applications to result in the
27  issuance of a patent.

28

JABURG & WILK, P.C.
ATTORNEYS AT LAW
3200 NORTH CENTRAL AVENUE
SUITE 2000
PHOENIX, ARIZONA 85012

                                  3

12751-1/MCL/RLC/538422_v3

17.    The 2000 Application adds four new independent claims, each of which focuses on a claimed new form of delivery of alpha-galactosidase "in tablet, capsule, similarly shaped pill, or solid ingestible form."

18.    On October 11, 2000, in connection with its 2000 Application, the applicant ("Applicant") filed with the USPTO a petition to make special (the "Petition to Make Special") under 37 C.F.R. § 1.102, requesting that the 2000 Application be advanced out of turn for examination because of alleged actual infringement of the claimed invention. The Petition to Make Special included a declaration that a careful and thorough search of the prior art had been made, and all references to the prior art were submitted with the 2000 Application on August 8, 2000. As evidenced by Applicant's subsequent actions, its statements concerning the prior art are false.

·19.    On April 2, 2001, Applicant filed a second preliminary amendment (the "Second Preliminary Amendment") with the USPTO.

20.    In the Second Preliminary Amendment, Applicant first discloses the existence of U.S. Patent No. 5,179,023 (the "'023 Patent"). The Second Preliminary Amendment also contains four additional references which were not included in the 2000 Application.

21.    The '023 Patent discloses the use of alpha-galactosidase A formulated into a conventional dosage form, including tablets and capsules, for oral administration for the purpose of replacement enzyme therapy in the treatment of Fabry disease.

22.    Applicant acknowledges in the Second Preliminary Amendment that the application for the '023 Patent was filed before the earliest effective filing date of the 1989 Application, and admits that the application for the '023 Patent was cited in a May 6, 1992, European search report related to Applicant's prosecution of the European application that corresponds to the 1989 Application. Applicant therefore was aware of the application for the '023 Patent for *ten years* before it filed the 2000 Application and yet failed to include it in the 2000 Application.

4

JABURG & WILK, P.C.
ATTORNEYS AT LAW
3200 NORTH CENTRAL AVENUE
SUITE 2000
PHOENIX, ARIZONA 85012

1       23.    The USPTO granted the Petition to Make Special on April 12, 2001, just ten

2    days after the Second Preliminary Amendment was filed.

3       24.    The USPTO did not consider Applicant's belated citation of the '023 Patent,

4    and the other four references in the Second Preliminary Amendment prior to granting the

5    Petition to Make Special, but instead first considered these citations on June 29, 2001, *ten*

6    *weeks after* the Petition to Make Special was granted.

7       25.    The Applicant associated with the filing or prosecution of the 2000

8    Application, including the inventor named in the Application, each attorney or agent who

9    prepared or prosecuted the Application, every person involved in the preparation or

10    prosecution of the Application and who was associated with the inventor, with the

11    assignee, or with anyone to whom there is an obligation to assign the Application,

12    breached their duty of good faith and candor to the USPTO, in violation of 37 C.F.R.

13    §1.56, by among other things, affirmatively misrepresenting, and failing to disclose

14    material facts to the USPTO, and submitting to the USPTO false material information

15    including, but not limited to, Applicant's failure to provide evidence of commercial

16    success with respect to a capsule or similarly shaped pill for containing the alpha-

17    galactosidase, and failing to timely disclose the '023 Patent to the USPTO at the time of

18    filing the Petition to Make Special while simultaneously representing in the Make Special

19    Petition that a careful and thorough search of the prior art was made and that the prior art

20    references were submitted to the USPTO simultaneously with the 2000 Application.

**COUNT ONE**

**(NON-INFRINGEMENT)**

23       26.    NHS repeats and realleges all of the prior allegations as if set forth at length.

24       27.    The '196 Patent is directed to reducing gastric distress in mammals due to

25    ingestion of solid food containing alpha-D-galactoside-linked sugars and includes 26

26    claims, four of which are independent, i.e., claims 1, 12, 13 and 16. The independent

27    claims either relate to a method, composition, or kit that includes a capsule or similarly

28

5

12751-1/MCL/RLC/538422_v3

1  shaped pill in ingestible form and containing an amount of alpha-galactosidase effective to

2  hydrolyze the sugars in vivo to their simplest absorbable constituents.

3      28.    The specifications for the '196 Patent indicate that an effective amount of

4  alpha-galactosidase to perform the function of hydrolyzing the alpha-D-galactoside-linked

5  sugars to their simplest form is between 675 and 2,250 GalU of alpha-galactosidase.

6      29.    Each of the independent claims clearly indicates that the effective amount of

7  alpha-galactosidase (i.e., between 675 GalU and 2,250 GalU) is contained in a *single*

8  capsule or similarly shaped pill.  The specification and prosecution history of the '196

9  Patent do not provide any contrary interpretation of this portion of the independent claims.

10  Hence, independent claims 1, 12, 13 and 16 are limited to a single capsule or similarly

11  shaped pill containing between 675 GalU and 2,250 GalU of alpha-galactosidase to

12  hydrolyze the sugars in vivo to their simplest absorbable constituents.

13      30.    The Sedona/NHS Product does not include a single capsule containing

14  between 675 GalU and 2,250 GalU of alpha-galactosidase.  Instead, a single capsule of

15  the Sedona/NHS Product includes only 150 GalU, which is outside the range of the

16  effective amount of 675 GalU to 2,250 GalU set forth in the independent claims of the

17  '196 Patent.

18      31.    The result of ingesting a single capsule of the Sedona/NHS Product

19  containing 150 GalU will not produce substantially the  same result as ingestion of a

20  single capsule of alpha-galactosidase containing 675 GalU, as is required in the claims of

21  the '196 Patent.

22      32.    Based on the foregoing, the '196 Patent is not infringed by the Sedona/NHS

23  Product, entitling NHS to entry of declaratory judgment that the Sedona/NHS Product

24  does not infringe the '196 Patent.

25                              **COUNT TWO**

26                    **(INVALIDITY AND UNENFORCEABILITY**

27                       **BASED ON OBVIOUSNESS)**

28      33.    NHS repeats and realleges all of the prior allegations as if set forth at length.

6

JABURG & WILK, P.C.
ATTORNEYS AT LAW
3200 NORTH CENTRAL AVENUE
SUITE 2000
PHOENIX, ARIZONA 85012

12751-1/MCL/RLC/538422_v3

34.    In establishing non-obviousness of its claimed invention based on commercial success, Applicant was required to provide evidence that commercial success is attributed specifically to the feature that is the subject of the patent claim.

35.    In allowing the claims of the '196 Patent, the examiner (the "Examiner") of the 2000 Application declared that the claims of the 2000 Application are the same as the claims in the '544 Patent, "with the exception of the change in the description of the ingestible form as being a 'capsule or similarly shaped pill.'" The Examiner also noted that the evidence presented for the '544 Patent was drawn to the commercial success and unexpected result of a solid, shaped formulation such as capsule or tablet, and was deemed by the examiner of the 1995 Application to be sufficient indicia of non-obviousness to overcome a prima facie finding of obviousness, and deemed the language of the claims of the 2000 Application to be commensurate with the showing in the 1995 Application, and therefore allowable over the prior art.

36.    In fact, Applicant failed to provide sufficient evidence of non-obviousness.

37.    Neither the 2000 Application nor any of its parent cases include any evidence whatsoever of commercial success directed to either a capsule (much less a two-piece capsule) or a similarly shaped pill containing alpha-galactosidase, which are the claimed features of the 2000 Application and '196 Patent.

38.    During the prosecution of the parent cases of the '196 Patent, the only evidence of commercial success was limited to that pertaining to liquid drops and capsules. Hence, all of the presented commercial success evidence was directed to features unclaimed by the 2000 Application, and the '196 Patent.

39.    Based on the foregoing, the alleged invention that is the subject of the '196 Patent is not new, novel or original, and the '196 Patent is invalid as a result of Applicant's failure to provide sufficient evidence of non-obviousness.

JABURG & WILK, P.C.
ATTORNEYS AT LAW
3200 NORTH CENTRAL AVENUE
SUITE 2000
PHOENIX, ARIZONA 85012

7

## COUNT THREE

### (INVALIDITY AND UNENFORCEABILITY BASED ON INEQUITABLE CONDUCT)

40.    NHS repeats and realleges all of the prior allegations as if set forth at length.

41.    Applicant, with intent to mislead or deceive the Examiner, failed to disclose material information, and submitted materially false information to the USPTO during prosecution of the '196 Patent.

42.    The Petition to Make Special succeeded in expediting the USPTO's examination of the 2000 Application, and so, all statements made by Applicant in the Petition to Make Special are material as a matter of law.

43.    In the Petition to Make Special, Applicant declared that a "careful and thorough search of the prior art has been made, and the references were submitted with the application on the filing date of August 8, 2000."

44.    The '023 Patent discloses an enzyme called alpha-galactosidase A, which can be administered in hard or soft shell gelatin capsules or tablets, or incorporated directly with food for treating Fabry disease.  The disclosure of hard and soft gelatin capsules or tablets as delivery methods of alpha-galactosidase is relevant to Applicant's claims of patentability of a capsule or similarly shaped pill as a delivery method of alpha-galactosidase.

45.    The '023 Patent is material to the patentability of the '196 Patent.

46.    Applicant failed to disclose the '023 Patent and four other references in its Petition to Make Special.

47.    As set forth in paragraph 22 above, Applicant acknowledges in the Second Preliminary Amendment that the application for the '023 Patent was filed before the earliest effective filing date of the 1989 Application, and admits that the application for the '023 Patent was of record in the prosecution of the European application that corresponds to the 1989 Application.  Applicant therefore was aware of the application for

JABURG & WILK, P.C.
ATTORNEYS AT LAW
3200 NORTH CENTRAL AVENUE
SUITE 2000
PHOENIX, ARIZONA 85012

8

1    the '023 Patent for *ten years* before it filed the 2000 Application, and yet failed to disclose

2    it in the 2000 Application.

3        48.    Based on the foregoing, Applicant intentionally failed to disclose to the

4    USPTO the '023 Patent and four additional references.

5        49.    Applicant engaged in inequitable conduct by intentionally misleading the

6    Examiner by failing to disclose material information (i.e., the '023 Patent and the four

7    additional references) upon filing of the Petition to Make Special.

8        50.    Applicant intentionally misled the USPTO by affirmatively misrepresenting

9    in the Petition to Make Special that all of the relevant references were submitted upon the

10   filing of the 2000 Application, when in fact the '023 Patent was withheld.

11       51.    The balance of the levels of materiality and intent weigh in favor of the '196

12   Patent being rendered unenforceable.

13       52.    The USPTO relied upon Applicant's misrepresentations, and concealment,

14   and non-disclosure of the foregoing material facts and was thereby induced to approve the

15   '196 Patent.

16       53.    Applicant's acts and omissions were intentional, deliberate, wrongful, and

17   willful.

18       54.    As a result of the foregoing, the '196 Patent is unenforceable due to

19   obviousness and the inequitable conduct of Applicant before the USPTO in violation of

20   37 C.F.R. § 1.56, entitling NHS to entry of declaratory judgment that the '196 Patent is

21   invalid, void, and unenforceable.

22       WHEREFORE, Plaintiff Nutri-Health Supplements, LLC respectfully seeks

23   judgment as follows:

24       1.    declaring that the Sedona/NHS Product does not infringe the '196 Patent;

25       2.    declaring the '196 Patent invalid, void and unenforceable;

26       3.    awarding Plaintiff costs and reasonable attorney fees pursuant to 35 U.S.C.

27           § 285; and

28       4.    granting such other relief to Plaintiff as is proper and just.

9

JABURG & WILK, P.C.
ATTORNEYS AT LAW
3200 NORTH CENTRAL AVENUE
SUITE 2000
PHOENIX, ARIZONA 85012

1     DATED this 24th day of July, 2006.

2                                              JABURG & WILK, P.C.

3
                                               /s/ Michelle C. Lombino, #016252
4                                              Roger L. Cohen
                                               Michelle C. Lombino
5                                              Attorneys for Plaintiff

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

12751-1/MCL/RLC/538422_v3

JABURG & WILK, P.C.
ATTORNEYS AT LAW
3200 NORTH CENTRAL AVENUE
SUITE 2000
PHOENIX, ARIZONA 85012

# EXHIBIT "C"
# TO MOTION TO DISMISS

## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| Block Drug Company, Inc., | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | NO. 06-350-KAJ |
| | : | |
| Sedona Laboratories, Inc. and | : | |
| Nutri-Health Supplements, LLC | : | |
| d/b/a Sedona Laboratories, | : | |
| | : | |
| Defendants. | : | |
| | : | |

## DECLARATION OF FRED AUZENNE

I, Fred Auzenne, declare as follows:

1.       I am an adult over the age of eighteen (18) years old, a resident of Arizona, and I make this declaration of my own personal knowledge of each of the matters stated herein and would so testify to the contents hereof.

2.       I am the CEO of Defendant Nutri-Health Supplements, LLC d/b/a Sedona Labs ("NHS"). NHS is organized as a limited liability company in the State of Arizona, with its principal place of business in Cottonwood, Arizona.   NHS is neither registered as a foreign corporation in Delaware, nor authorized to do business there.

3.       NHS purchased the assets of Defendant Sedona Labs, Inc., including all rights and interest in the product at issue in this case, in January 2006.  Sedona Labs, Inc. ("SLI") is an Arizona corporation, with its principal place of business in Cottonwood, Arizona.  To the best of my knowledge and belief, SLI is neither registered as a foreign corporation in Delaware, nor authorized to do business there.

4.       NHS develops, manufactures and distributes dietary and nutritional health supplements for the over-the-counter market, including the product at issue here, which NHS commonly refers to as GasAway+™.  GasAway+™ is manufactured at our only manufacturing

facility, which is located in Cottonwood, Arizona.  See Exhibit "1", attached hereto, which is a true and correct copy of pages 14 and 15 of our Wholesale Catalog, available on our website at http://www.sedonalabs.com/PDF/SedonaLabsWholesaleCatalog060414.pdf.

5.      NHS generally manufactures its products to meet forecasts for 3-6 months, and maintains that inventory in Arizona.  NHS does not own, lease, use or otherwise possess any warehousing facilities, offices, manufacturing plants, sales-showrooms, distribution centers or any other real property in Delaware.

6.      NHS does not have any employees or contractors, salaried or commission-based, which reside in or maintain an office in Delaware.  NHS does not have a sales team or sales representative resident in Delaware.  NHS does not have a sales strategy that specifically targets Delaware.  NHS does not stock any products in Delaware, and does not have a Delaware bank account or telephone number.

7.      NHS currently sells its GasAway+™ products to wholesalers, retailers, natural health stores and pharmacies directly, through a call center located in Arizona, and indirectly through a network of dealers, brokers and independent contractors, none of whom, to the best of my knowledge, are located in Delaware.  NHS pays its dealers, brokers and independent contractors commissions based on stated percentages of total sales.  NHS also attends trade shows to increase its sales, but has never attended a trade show in Delaware.

8.      All sales of NHS products are subject to review, approval and acceptance by NHS in Arizona.  Payment for all sales of NHS products are made to and accepted in Arizona. For fiscal year 2005, sales of GasAway+™ represented less than 1% of total company sales.

9.      NHS maintains an informational website at http://www.sedonalabs.com.  NHS products, including GasAway+™, cannot be purchased through that website.  The website is hosted and maintained on servers in Arizona.

10.     The  NHS  website  does  include  a  hyperlink  to  the  website http://www.affordable-natural-supplements.com/sedona_labs.html, where certain NHS products, including GasAway+™ may be purchased online.  NHS is not the owner of the Affordable

2

Natural Supplements website, and exercises no control over that website, or the operation of the business that actually owns and operates that website. It is my understanding and belief that that website is owned and operated by a company with its principal place of business at 383 Brick Blvd., Brick, N.J. 08723, telephone (732) 477-3088, as shown in the upper-right hand corner of **Exhibit "2"** attached hereto, which is a true and correct copy of pages at the above-referenced website. ANS is an authorized retailer of NHS products, including GasAway+™. It is also my understanding and belief that Affordable Natural Supplements sells dietary and natural health supplement products from many other manufacturers, including the Beano® product of Plaintiff, Block Drug, Co., Inc. at http://affordable-natural-supplements.com/beano.html. **Exhibit "3"** attached hereto is a true and correct copy of the pages of that website, offering Beano for sale.

11.    NHS has produced a private-labeled version of GasAway+™ for Eckerd Corporation ("Eckerd"), pursuant to a private-labeling agreement entered into by the parties in or around the late winter of 2003 or early spring of 2004.

12.    It is my understanding and belief that the private labeling product agreement with Eckerd was entered into by the parties in Arizona. All orders placed under that agreement are subject to review and acceptance by in Arizona. All product manufactured pursuant to that agreement is and was manufactured in Arizona. Finished product is and was shipped as directed by Eckerd to one of its numerous warehouses located in Florida, Georgia, New York, North Carolina, Pennsylvania or Texas, as shown on **Exhibit "4"** attached hereto, which is a true and correct copy of an excerpt from the billing instructions provided by Eckerd Corp. NHS never shipped the Sedona Labs branded version of GasAway+ or the Eckerd private-labeled version directly into Delaware.

I declare (or certify, verify or state) under penalty of perjury that the foregoing is true and correct.

3

DATED this <u>15th</u> day of September 2006.


                                        <u>/s/ Fred Auzenne</u>
                                        Fred Auzenne

# EXHIBIT "1"
# TO DECLARATION OF
# FRED AUZENNE

# Sedona Labs, Inc.

## PERSONAL CONTROL -- FROM START TO *SHIPPING*

We have major control issues here at Sedona Labs -- and we take them seriously. We are in complete personal control of our products from start to shipping - and that's the way we like it. Unlike other suppliers of supplements who depend on middlemen, distributors and contract manufacturers, all Sedona Labs products are researched, formulated, purchased, encapsulated, bottled, and shipped



directly to you from our own laboratory, manufacturing facility, and shipping department in the clean, dry desert mountains of northern Arizona. All of our products are kept under strict personal quality control from the purchase of raw materials to shipping the finished product. They will never sit neglected in a middleman's warehouse.

Sedona Labs has two biochemists and one microbiologist on staff full time that lead the team responsible for the purity, quality, and effectiveness of our products.



It starts with the raw materials. Our Purchasing Manager is a microbiologist and he researches the world to find the purest and most potent ingredients available. After we receive the raw materials, he checks for guaranteed Certificates of Analysis and independent laboratory testing. On some products we do additional independent testing.

Our Chief Scientist has an advanced degree in biochemistry. It is his personal responsibility to develop new product formulas, review independent laboratory tests,

14                www.sedonalabs.com                1-888-816-8804

# THE ARIZONA DRY CLIMATE IS PERFECT FOR US TO MANUFACTURE A BETTER PRODUCT FOR YOU!

maintain product quality control, and assist in the procurement of the highest quality ingredients. His assistant also has an advanced degree in biochemistry.

In addition, Sedona Labs has a full-time Quality Control Inspector with 25



years' experience in supplement manufacturing. It's his personal mandate to guarantee the quality of products produced in our on-site manufacturing facility.

We have a clean, modern plant, an ideal climate, personal quality control, and the finest raw materials from all over the world - these are the elements that allow you to have full confidence in the purity and potency of our products.



**TOM URGO**
Quality Control Manager

*We may pay Tom, but he works for you!*

Our modern plant is furnished with blenders, encapsulators, filling machines, and a fully automated bottling line. We control every stage of the production process. Our 6000-square-foot facility is climate controlled.  Moreover, manufacturing in the high desert of Arizona, with its low humidity, prevents any water reactions that may occur during production in other wetter climates. This is especially important for probiotics and enzymes. We live in the best place in the world for dietary supplement production!



# EXHIBIT "2"
# TO DECLARATION OF
# FRED AUZENNE

SEDONA LABS from Affordable Natural Supplements

**Welcome to
Affordable Natural
Supplements!**

Your one stop source for
all of your nutritional
supplement needs.

September 14, 2006





**Affordable Natural Supplements**

FULL product lines! Discounted everyday!
free shipping available!

383 Brick Blvd.
Brick, NJ 08723
(732) 477-3088
Email

**Shaklee Products Online**
Fast Delivery, Great Service. Online or call
800-364-5490 Aff.

**Natural Health Products**
Great Margins, Proven Results With
Condition Specific Supplements

Ads by Goooooogle

**Product Search:**

Product Search:

HUGE DISCOUNTS
EVERY ITEM!
EVERY DAY!

100% SATISFACTION GUARANTEED

FREE SHIPPING
ON ALL U.S. ORDERS
OVER $100!

FREE SHIPPING ON ALL U.S. ORDERS OVER $100!

ONLY $6.95 SHIPP
ON ALL OTHER
U.S. ORDERS!

THE LOWEST ALLOWABLE PRICE
FOR SEDONA LABS ON THE INTERNET!

**SEDONA LABS**
*Sedona Labs*
FOR YOUR HEALTH ™
SINCE 1987



Secure
Shopping Cart

"Special Online Promotions"

**NEW ITEM!**
NEXTZYME™ - Dual Action Digesive Enzymes
Buy Two Get One FREE!
Only $59.95 for THREE BOTTLES!

http://www.affordable-natural-supplements.com/sedona_labs.html

9/14/2006

SEDONA LABS from Affordable Natural Supplements

| | |
|---|---|
| Natural Factors | |
| Nature's Life | |
| Nature's Plus | |
| Nature's Way | |
| Now Foods | |
| Olympian Labs | |
| Sedona Labs | |
| Solaray | |
| Solgar | |
| Source Naturals | |
| Twinlab | |
| Ordering Information | |
| Printable Order Form | |
| Mailing List | |
| Links | |
| Supplement Information | |



**Click here to order!**

**Get a 3rd Bottle Free!**

Buy Two 60 Ct /Flora Acidophilus
Get a FREE GasAway+ 260 mg!!
Only $48.12 for THREE BOTTLES!

**Get a Gas Away+ FREE!**

**Click here to order!**

## Sedona Labs

| Product Number | Product Name | Count | Mfrs. Suggested Retail Price | Our Price | Select Quantity |
|---|---|---|---|---|---|
| sedlab21330 | 100% Lactoferrin | 30 VegCaps | $36.00 | $28.25 | ☐ 0 |

# SEDONA LABS from Affordable Natural Supplements

**Affordable Natural Supplements.com**

Select below for entire list of available brands:

ALL BRANDS  Select ▾

**Affordable Natural Supplements.com**

Secure Shopping Cart uses SSL (Secure Socket Layers) 128 encryption technology of Netscape® Comm. as verified by Thawte®

THAWTE AUTHENTIC SITE — CLICK TO VERIFY — Secured by S.S.L.

You can shop with confidence and security online at **Affordable Natural Supplements.com**

**Affordable Natural Supplements.com**

**Our Privacy Commitment**

| SKU | Product | Size | | | | |
|---|---|---|---|---|---|---|
| sedlab00007a | 100% Lactoferrin / Product Information | 30 x 4 VegCaps | $111.00 | $100.00 | ⌐ | 0 |
| sedlab21001+21012 | 2 iFlora Acidophilus & GasAway+ / Product Information | 2x60ct iFlora & 60Ct GasAway+ | $73.46 | $48.12 | ⌐ | 0 |
| sedlab21009 | Arthro Spectrum / Product Information | 90 Tabs | $39.95 | $29.96 | ⌐ | 0 |
| sedlab21400 | Colostrum 25% Ig / Product Information | 2.5 oz Powder | $29.95 | $22.46 | ⌐ | 0 |
| sedlab21300 | Colostrum 25% Ig 500 mg / Product Information | 120 VegCaps | $29.95 | $22.46 | ⌐ | 0 |
| sedlab21301 | Colostrum 25% Ig Cherry NEW! / Product Information | 120 Chews | $32.94 | $24.71 | ⌐ | 0 |
| sedlab21600 | Colostrum 40% Ig 500 mg / Product Information | 100 VegCaps | $34.95 | $26.21 | ⌐ | 0 |
| sedlab21015 | Colostrum Immune System Formula 500 mg / Product Information | 120 Ct. | $39.95 | $29.96 | ⌐ | 0 |
| sedlab21012 | GasAway+ 260 mg / Product Information | 60 Ct. | $8.99 | $6.74 | ⌐ | 0 |
| sedlab21010 | Glucosamine Chondroitin MSM 925 mg / Product Information | 120 Ct. | $29.95 | $22.46 | ⌐ | 0 |
| sedlab21202 | iFlora 4 Pets / Product Information | 1.25 oz Powder | $24.95 | $18.71 | ⌐ | 0 |
| sedlab21201 | iFlora 4-Kids Powder / Product Information | 1.25 Oz | $24.95 | $18.71 | ⌐ | 0 |
| sedlab21003 | iFlora 4-Women / Product Information | 60 VegCaps | $29.95 | $22.46 | ⌐ | 0 |
| sedlab21001 | iFlora Acidophilus / Product Information | 60 VegCaps | $29.95 | $22.46 | ⌐ | 0 |
| sedlab21004 | iFlora Acidophilus Powder / Product Information | 1.25 Oz | $29.95 | $22.46 | ⌐ | 0 |
| | IsoCal-D 600 mg / Product Information | 1.25 Oz | $29.95 | $22.46 | ⌐ | 0 |

SEDONA LABS from Affordable Natural Supplements

**Affordable Natural Supplements.com will never share, sell, or distribute any personal information from our customers!**

**Affordable Natural Supplements.com**





ships with
USPS Priority Mail

**UNITED STATES POSTAL SERVICE®**

"It's no bargain if you pay too much for shipping!"

100% Satisfaction Guaranteed!
☆☆☆☆☆

| | Product Information | | | | |
|---|---|---|---|---|---|
| sedlab21021 | **NextZyme**<br>Product Information | 60 Ct. | $29.95 | $29.95 | ☐ 0 |
| sedlab21602 | **NextZyme**<br>Product Information | 90 VegCaps | $29.95 | $22.46 | ☐ 0 |
| sedlab21602a | **NextZyme**<br>Product Information | 3 x 90<br>VegCaps | $89.95 | $59.95 | ☐ 0 |
| sedlab21007 | **SerraPhase 330 mg**<br>Product Information | 90 Tabs | $39.95 | $29.96 | ☐ 0 |

*10% shipping surcharge has been added to this item

Add to Cart    View Cart

Sedona Labs Categories
Sedona Labs



Secure
Shopping Cart

We ship all U.S.
Affordable Natural Supplements orders with
USPS Priority Mail

**UNITED STATES POSTAL SERVICE®**

"It's no bargain if you pay too much for shipping!"

To help make your **Affordable Natural Supplements .com** shopping more convenient we accept Visa, MasterCard, Discover, and American Express as well as money orders and certified checks.

**VISA** · MasterCard · DISCOVER NOVUS · AMERICAN EXPRESS Cards

**Shipping:**
Orders ship within 1 - 5 business days.
Items that are not in stock typically ship within 5 business days.
Click here for additional shipping information.
Free shipping via USPS Priority Mail on all U.S. orders over $100.00.
$6.95 shipping on all other U.S. orders.

**We are not processing APO/FPO or international orders at this time.**

**Affordable Natural Supplements**



SEDONA LABS from Affordable Natural Supplements

Home | Abkit | Action Labs | ActiPet | Aubrey | Barleans | Biochem | Boiron | Carlson | Country Life
Doctors Best | Enzymedica | Gaia | Hyland | Jarrow | Kal | Living Harvest | MegaFood | Mixtique
Montana Big Sky | Natrol | Natural Balance | Natural Factors | Natural Sport | NaturalMax | Nature's Answer
Nature's Life | Nature's Plus | Nature's Way | Now Foods | Olympian Labs | Planetary | Premier
Sedona Labs | Solaray | Solgar | Source Naturals | Sunny Green | Thompson Nutritional
Twinlab | Ultimate Nutrition | Veglife

## "View All Brands"

Web Site designed and and maintained by:
CRD Web Design
Click here to Email CRD Web Design



Click here to visit: CRD Web Design

# EXHIBIT "3"
# TO DECLARATION OF
# FRED AUZENNE

BEANO from Affordable Natural Supplements





**Natural Factors**
Vitamins, Minerals and Supplements 7000 products, Free Shipping Offer

**Royal BodyCare Wholesale**
All RBC Products Below Wholesale Prices. Low Price Guaranteed

Ads by Goooooogle

Welcome to
Affordable Natural
Supplements!

Your one stop source for all of your nutritional supplement needs.

September 14, 2006

**Affordable Natural Supplements**

FULL product lines! Discounted everyday!
Free shipping available!

383 Brick Blvd.
Brick, NJ 08723
(732) 477-3088
Email

Product Search:

Product Search

HUGE DISCOUNTS
EVERY ITEM!
EVERY DAY!

100% GUARANTEED
ON ALL U.S. ORDERS
OVER $100!

FREE SHIPPING

FREE SHIPPING on orders over $100!

ONLY $6.95 SHIPP
ON ALL OTHER
U.S. ORDERS!



beano
Food Enzyme Dietary Supplement

Secure

Shopping Cart

| Beano | | | | | |
|---|---|---|---|---|---|
| Product Number | Product Name | Count | Mfrs. Suggested Retail Price | Our Price | Select Quantity |
| 34183062002 | **Beano**<br>Product Information | 30 Tabs | ~~$7.20~~ | $5.83 | ☐ 0 |
| 34183064006 | **Beano**<br>Product Information | 60 Tabs | ~~$14.99~~ | $9.59 | ☐ 0 |
| 34183063009 | **Beano**<br>Product Information | 100 Tabs | ~~$18.40~~ | $14.79 | ☐ 0 |
| 34183095109 | **Beano Enzyme Liquid 75 Servings**<br>Product Information | .51 Oz. | ~~$12.40~~ | $9.75 | ☐ 0 |

BEANO from Affordable Natural Supplements

| |
|---|
| Natural Factors |
| Nature's Life |
| Nature's Plus |
| Nature's Way |
| Now Foods |
| Olympian Labs |
| Sedona Labs |
| Solaray |
| Solgar |
| Source Naturals |
| Twinlab |
| Ordering Information |
| Printable Order Form |
| Mailing List |
| Links |
| Supplement Information |



Add to Cart    View Cart



Secure

Shopping Cart

We ship all U.S.
Affordable Natural Supplements orders with
USPS Priority Mail


UNITED STATES
POSTAL SERVICE®

"It's no bargain if you pay too much for shipping"

**Beano Categories**
Beano

To help make your
**Affordable Natural Supplements.com**
shopping more convenient we accept
Visa, MasterCard, Discover, and American Express
as well as money orders and certified checks.


VISA
MasterCard
DISCOVER
NOVUS
AMERICAN EXPRESS
Cards

**Shipping:**
Orders ship within 1 - 5 business days.
Items that are not in stock typically ship within 5 business days.
Click here for additional shipping information.
Free shipping via USPS Priority Mail on all U.S. orders over $100.00.
$6.95 shipping on all other U.S. orders.

**We are not processing APO/FPO or international orders at this time.**

**Affordable Natural Supplements**

Home | Akkt | Action Labs | ActiPet | Aubrey | Barleans | Biochem | Botron | Carlson | Country Life
Doctors Best | Enzymedica | Gaia | Hyland | Jarrow | Kal | Living Harvest | MegaFood | Miztique
Montana Big Sky | Natrol | Natural Balance | Natural Factors | Natural Sport | NaturalMax | Nature's Answer
Nature's Life | Nature's Plus | Nature's Way | New Foods | Olympian Labs | Planetary | Premier
Sedona Labs | Solaray | Solgar | Source Naturals | Sunny Green | Thompson Nutritional
Twinlab | Ultimate Nutrition | Veglife

**"View All Brands"**

Web Site designed and maintained by:
CRD Web Design
Click here to Email CRD Web Design


CRD
Web Design

Click here to visit: CRD Web Design

BEANO from Affordable Natural Supplements

**Affordable Natural Supplements.com**

**Select below for entire list of available brands:**

| ALL BRANDS | ▼ |

Select

**Affordable Natural Supplements.com**

Secure Shopping Cart uses SSL (Secure Socket Layers) 128 encryption technology of Netscape® Comm. as verified by Thawte®.

THAWTE
AUTHENTIC SITE
CLICK TO VERIFY
Secured by SSL

You can shop with confidence and security online at **Affordable Natural Supplements.com**

**Affordable Natural Supplements.com**

**Our Privacy Commitment**

BEANO from Affordable Natural Supplements

**Affordable Natural
Supplements.com**
will never share, sell, or
distribute any personal
information from our
customers!

**Affordable Natural
Supplements.com**

ships with
USPS Priority Mail

**UNITED STATES
POSTAL SERVICE®**

"it's no bargain if you pay
too much for shipping!"

100%
Satisfaction
Guaranteed!

# EXHIBIT "4"
# TO DECLARATION OF
# FRED AUZENNE



**SINCE 1987**

211 Jennifer Lane
Cottonwood, AZ  86326
888-816-8804  Fax:  866-887-8489

# Fax

| | | | |
|---|---|---|---|
| **To:** | Attn: Thomas A. Conley | **From:** | Linda Schaeffer |
| **Fax:** | 1-480-609-0016 | **Pages:** | 13 |
| **Phone:** | | **Date:** | 9/6/06 |
| **Re:** | | **CC:** | |

☐ **Urgent**    ☐ **For Review**    ☐ **Please Comment**    ☐ **Please Reply**    ☐ **Please Recycle**

● **Comments:**   Here is a list of address for Eckerd, before Brooks purchase. I have never received any information from Brookes that these addresses had ever changed. I do have letters from Brookes showing a corp. address to be: 50 Service Ave, Warwick, RI.

Thank You

Linda Schaeffer
Sedona Labs
Administrative Assistant
Linda@sedonalabs.com
Phone 1-928-634-8807
Fax 1-928-634-8817

### X.    ECKERD ADDRESSES/PHONE CONTACTS

- **WAREHOUSE**

Please send warehouse merchandise invoices for payment, warehouse supplier relations correspondence, and open credit memos/deductions to the following address or fax number (fax only if 15 pages or less):

| Invoice Address: | Correspondence Address: | Overnight Address: |
| --- | --- | --- |
| Eckerd Accounts Payable | Eckerd Supplier Relations | Eckerd Accounts Payable |
| Mail Stop 7801 | Mail Stop 7814 | Mail Stop 7814 |
| PO Box 45057 | PO Box 45280 | 310 South Main |
| Salt Lake City, UT 84145-0057 | Salt Lake City, UT 84145-0280 | Salt Lake City, UT 84101 |

To contact your Warehouse Account Representative for past due invoices, erroneous payments, or open credit memos, call **Eckerd Accounts Payable Customer Service at 800-709-9090.**

- **WAREHOUSE RETURNS**

Please send warehouse returns correspondence to the following address or fax number (fax only if less than 15 pages):

| Regular Address: | Overnight Address: |
| --- | --- |
| Eckerd Accounts Payable | Eckerd Accounts Payable |
| Eckerd Warehouse Returns Mail Stop 7814 | Eckerd Warehouse Returns Mail Stop 7814 |
| PO Box 45280 | 310 South Main |
| Salt Lake City, UT 84145-0280 | Salt Lake City, UT 84101 |

To contact your Warehouse Returns Representative for returned merchandise issues, call the Eckerd Warehouse Returns department at (801) 325-3832. The fax number is 801-325-3941.

- **NEWSPAPERS**
  - There must be an individual invoice per store shipment. No statement or summary billings will be accepted.
  - Invoice numbers cannot exceed 22 digits and are not to start with zero.
  - Invoice numbers cannot be repeated within one year.
  - Do not include credit adjustments for prior transactions on current invoices. Credits must be submitted separately as a credit memo.
  - Balance forward amounts must not be included on invoices.
  - Billings should always be at cost, never at retail.
  - Total quantity must be shown on invoice.
  - One back up copy must be submitted to the store. Actual invoices/credits must be submitted to the address below for payment:

| Regular Address: | Overnight Address: |
| --- | --- |
| Eckerd Accounts Payable | Eckerd Accounts Payable |
| Mail Stop 7815 | Mail Stop 7815 |
| PO Box 45057 | 310 South Main |
| Salt Lake City, UT 84145-0057 | Salt Lake City, UT 84101 |

For inquiries on a Newspaper account, please contact Accounts Payable Customer Service at 800-709-9090.

### IX.    ECKERD ADDRESSES/PHONE CONTACTS (CONTINUED)

- **DIRECT STORE DELIVERY (DSD)**

Please send all DSD Invoices directly to the store. Any DSD invoices sent to the Salt Lake Accounting Center will be sent back to the supplier for correct processing.

- All manual purchase orders (drop ship orders) must have an individual invoice for each store that receives merchandise. Summary billing for all stores on one invoice will not be accepted and will be returned to the vendor for correction.

- Invoices less than 60 days past due must be resubmitted to the store for payment.

For inquiries on invoices over 60 days old, please contact Accounts Payable Customer Service at 800-709-9090. All other inquiries must go to the store.

- **EXPENSE**

**Utility** invoices are processed by our Energy Management Department in Florida (with the exception of telephone bills.) Call (727) 395-7207 for all utility questions. Mail utility invoices and correspondence to the following address:

| **Regular Address:** | **Overnight Address:** |
| --- | --- |
| Eckerd Corporation | Eckerd Corporation |
| Energy Management Dept | Energy Management Dept |
| PO Box 9104 | 8333 Bryan Dairy Rd |
| Clearwater, FL  33758 | Largo, FL 33777 |

**Repair & Maintenance** invoices should be processed as follows:
- All HVAC, refrigeration, electrical, general contractor, and any other repair & maintenance invoices over $200.00 should be mailed to the following address:

| **Regular Address:** | **Overnight Address:** |
| --- | --- |
| Eckerd Corporation | Eckerd Corporation |
| Store Maintenance Dept | Store Maintenance Dept |
| PO Box 4689 | 8333 Bryan Dairy Rd |
| Clearwater, FL  33758 | Largo, FL  33777 |

- To contact your Store Maintenance Representative, call (727) 395-7549. You may fax invoices or correspondence to fax number (727) 395-7968.
- All HVAC, refrigeration, electrical, and general contractor invoices must have a completed Eckerd Service Requisition, an Eckerd issued work order number, a store stamp, and a store manager's signature to be processed.
- All other invoices under $200.00 should be sent directly to the Eckerd store to be processed.

All other expense items should be mailed to:

| **Regular Address:** | **Overnight Address:** |
| --- | --- |
| Eckerd Accounts Payable | Eckerd Accounts Payable |
| Mail Stop 7815 | Mail Stop 7815 |
| PO Box 45057 | 310 South Main |
| Salt Lake City, UT 84145-0057 | Salt Lake City, UT 84101 |

For inquiries on your expense account, please contact Accounts Payable Customer Service at 800-709-9090.

**IX. ECKERD ADDRESSES/PHONE CONTACTS (CONTINUED)**

- **ADVERTISING**

Send all promotional advertising and deduction issues to:

**Regular Address:**
Eckerd Corporation
Merchandise Ancillary Revenue
PO Box 4689
Clearwater, FL 33758

**Overnight Address:**
Eckerd Corporation
Merchandise Ancillary Revenue
8333 Bryan Dairy Rd
Largo, FL 33777

To contact your Merchandising Ancillary Revenue representative, please call (727) 395-6685.

Please send Corporate Advertising Expense invoices to:

**Regular Address:**
Eckerd Corporation
Advertising and Marketing Dept MS CW2C
PO Box 4689
Clearwater, FL 33758

**Overnight Address:**
Eckerd Corporation
Advertising and Marketing Dept MS CW2C
8333 Bryan Dairy Rd
Largo, FL 33777

To contact your Corporate Advertising Expense representative, please call (727) 395-7912.

- **SUPPLIER CONTROL**

Send information regarding **supplier information changes** to:

**Regular Address:**
Eckerd Supplier Control Dept
Mail Stop 7821
PO Box 596
Salt Lake City, UT 84145-0057

**Overnight Address:**
Eckerd Supplier Control Dept
Mail Stop 7821
310 South Main
Salt Lake City, UT 84101

To contact a supplier control representative, please call **(801) 350-2415** or fax number **(801) 325-3585.**

- **AUDITS**

Send all statements reflecting open debits and credits monthly to:

Eckerd Accounts Payable Audit
Mail Stop 7818
PO Box 45057
Salt Lake City, UT 84145-0057

09/12/2006  08:27    19286348817                SEDONA LABS                        PAGE  05

## IX.  ECKERD ADDRESSES/PHONE CONTACTS (CONTINUED)

- **DEBIT BALANCE**

Send all checks to:

**Regular Address:**
Eckerd Debit Balance Dept
Mail Stop 7843
PO Box 596
Salt Lake City, UT 84145-0057

**Overnight Address:**
Eckerd Debit Balance Dept
Mail Stop 7843
310 South Main
Salt Lake City, UT 84101

To contact your debit balance representative, refer to your debit balance letter notification or fax number (801) 325-3785.

*Before Sale To Eckods*

II.    **INFORMATION REQUIRED ON ALL INVOICES (CONTINUED)**

- **ECKERD UNIT/STORE NUMBER (UP TO 5 DIGITS)**
  Include PO Box, City, State, Zip Code of the Eckerd Unit in the following format:

  DSD:

  > Eckerd Corporation Store #XXXXX
  > Store Address
  > City, State Zip Code

  Warehouse

  > Eckerd Corporation Unit #XXXXX
  > PO Box XXXX
  > City, State Zip Code

Warehouse Unit Numbers:

| Warehouse | Address | Unit Number | PO# (First Digit) |
|---|---|---|---|
| Bohemia, NY | 100 Orville Dr<br>Bohemia, NY 11716 | #05500 | 1 |
| Clearwater, FL | 8285 Bryan Dairy Rd<br>Clearwater, FL  33758 | #00995 | 1 |
| Orlando, FL | 2100 Directors Row<br>Orlando, FL  32809 | #00013 | 2 |
| Langhorne/Morrisville, PA | 8 Queen Anne Court<br>Langhorne, PA  19047 | #06302 | 3 |
| Houston/Conroe, TX | 2061 Interstate 45 S<br>Conroe, TX  77385 | #00300 | 4 |
| Liverpool/Buffalo, NY | 7245 Henry Clay Blvd<br>Liverpool, NY  13088 | #05900 | 5 |
| Dallas/Garland, TX | PO Box 469004<br>Garland, TX  75046-0094 | #00800 | 6 |
| Pittsburgh, PA | 615 Alpha Dr<br>Pittsburgh, PA  15238 | #06301 | 7 |
| Atlanta/Shenandoah, GA | 36 Herring Rd<br>Shenandoah, GA  30265 | #00299 | 8 |
| Charlotte, NC | PO Box 31243<br>Charlotte, NC  28231 | #01999 | 9 |

- **INVOICE DATE**
  - The invoice date must be the same date the merchandise was shipped or service performed. No future dated invoices will be accepted.
  - Format dates in MM/DD/YYYY format.

- **ECKERD PURCHASE ORDER NUMBER**
  - Eckerd purchase order numbers are required on invoices for Eckerd merchandise and expense related shipments to the warehouse.
  - Eckerd merchandise purchase orders are six numerical digits.
  - Supplier should ship a purchase order complete and only use one invoice per order per shipment.
  - The first digit of the purchase order number corresponds to the warehouse that the merchandise is shipped to.  (See the table above.)
  - Invoices must cover only one purchase order per invoice.

09/12/2006  08:27   19286348817                SEDONA LABS                      PAGE  07

# EDI Version 4030

**Warehouse Number**
**and**
**Physical Address**

---

Eckerd Corporation
Genovese Distribution Center
100 Orville Drive
Bohemia  NY    11716
Receiving  631-567-8360  x304

Eckerd Corporation
C/O E.L.M. Freight Handlers
10 Grand Blvd.
Deer Park  NY    11729
Receiving  631-243-1771

Eckerd Corporation
10400 Rocket Blvd.
Orlando  FL   32824
Receiving  407-858-4145

Eckerd Corporation
8525 Exchange Drive
Orlando  FL    32809
Receiving  407-858-4145

Eckerd Corporation
8285 Bryan Dairy Road
Largo, FL  34647
Receiving  727-395-6143

Eckerd Corporation
8201 Chancellor Drive
Orlando  FL   32809
Receiving  407-858-4145

Eckerd Corporation
8 Queen Ann Court
Langhorne  PA  19047
Receiving  251-949-4917 or 4918

# EDI Version 4030

**Warehouse Number**
**and**
**Physical Address**

---

Eckerd Corporation
USX Industrial Park
1101 New Ford Mill Road
Morrisville  PA  19067
Receiving  215-736-2642  x228


Eckerd Corporation
2151 Cabot Blvd
Langhorne · PA  19047
Receiving  215-750-1460


Eckerd Corporation
100 Trade Center Blvd
Conroe  TX  77385
Receiving  281-364-2835


Eckerd Corporation
301 South Trade Center Pkwy
Conroe  TX  77385
Receiving  281-364-2842


Eckerd Corporation
7245 Henry Clay Blvd
Liverpool  NY  13088
Receiving  315-451-8000  x 2274


Eckerd Corporation
4409 Action Street
Garland  TX  75042
Receiving  972-494-7642


Eckerd Corporation
North Gate Dist. Center II
902 International Road  Suite 200
Garland  TX  75042
Receiving  972-494-7699

09/12/2006  08:27    19286348817              SEDONA LABS                    PAGE  10

# EDI Version 4030

**Warehouse Number**
**and**
**Physical Address**

---

Eckerd Corporation
1755 Statesville Avenue
Charlotte  NC  28206
Receiving  704-371-3756


****** **NEW** ******

**Eckerd Corporation**
**4017 Chesapeake Drive**
**Charlotte  NC  28216(31)**
**Receiving  704-395-1525**

**Eckerd Drug**
**One Geoffrey Drive**
**Fairless Hills PA 19030**

# EXHIBIT "D"
# TO MOTION TO DISMISS

## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

Block Drug Company, Inc.,                     :
                                              :
                    Plaintiff,                :
                                              :          CIVIL ACTION
         v.                                   :          NO. 06-350-KAJ
                                              :
Sedona Laboratories, Inc. and                 :
Nutri-Health Supplements, LLC                 :
d/b/a Sedona Laboratories,                    :
                                              :
                    Defendants.               :
                                              :

## DECLARATION OF JIM ANGUS

I, Jim Angus, as a fact witness, declare as follows:

1.      I am an adult over the age of eighteen (18) years old and I make this declaration of my own personal knowledge of each of the matters stated herein and would so testify to the contents hereof.

2.      I am currently a resident of California. During most of my association with Sedona Labs, Inc. ("SLI") and Nutri-Health Supplements, LLC d/b/a Sedona Labs ("NHS"), I was a resident of Arizona.

3.      I am an independent contractor in the business of representing manufacturers of dietary and natural health supplements and other retail products for the purpose of generating sales of their products. I have other clients in addition to NHS.

4.      I am, and at all relevant times to this action was, an independent contractor for NHS, paid on a retainer and/or commission basis. As an independent contractor for NHS, it is and was my job to generate sales of NHS products to national and regional food and drug store chains. I have had no involvement in the design, development, manufacture, patent and/or production of any SLI or NHS products. I represent NHS only in relation to the sale of its products.

5.      To the best of my knowledge and recollection, in or about the fall of 2003, I had made a sales presentation to Eckerd Corporation ("Eckerd") in Largo, Florida regarding the "Sedona Labs" brand of over-the-counter dietary and nutritional health supplements.

6.      To the best of my knowledge and recollection, sometime in late 2003, the buying staff for Eckerd contacted me in Arizona through our broker representatives in Florida to discuss the possibility of providing Eckerd with a private-labeled version of the food-enzyme dietary supplement, known under the Sedona Labs brand as GasAway+™.

7.      To the best of my knowledge and recollection, Eckerd and SLI entered into a private-labeling agreement, which was executed by Eckerd in Florida and by NHS in Arizona, to produce an Eckerd branded version of GasAway+™.

8.      I never accepted any product orders from Eckerd on behalf of SLI or NHS. Product orders could only be approved and accepted by NHS in Arizona.

9.      To the best of my knowledge and recollection, I never traveled to Delaware on any sales calls or trade shows for SLI or NHS. I never had any meetings or discussions with Eckerd in Delaware on behalf of SLI or NHS.

I declare (or certify, verify or state) under penalty of perjury that the foregoing is true and correct.


DATED this ___15___ day of September 2006.

                                                    /s/ Jim Angus
                                                    Jim Angus

12751-1/TAC/TAC/546557_v1

## CERTIFICATE OF SERVICE

I, Patrick A. Costello, hereby certify that on September 15, 2006, I caused a copy of the foregoing Opening Brief Of Defendant Nutri-Health Supplements, LLC In Support Of Its Motion To Dismiss Or, Alternatively, To Transfer Venue and the accompanying Exhibits A through D to be served on the following counsel of record and in the manner indicated:

### ELECTRONIC FILING

Steven J. Balick, Esq.
Tiffany Geyer-Lydon, Esq.
Ashby & Geddes, P.A.
222 Delaware Ave., 17th Floor
P.O. Box 1150
Wilmington, DE 19899

John W. Shaw, Esq.
Young, Conaway, Stargatt & Taylor
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391


Patrick A. Costello (Bar No. 4535)

DEL1 64602-1