## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

Block Drug Company, Inc.,       :
                                      :

           Plaintiff,       :
                                        :

                                        :      CIVIL ACTION
      v.                       :      NO. 06-350-KAJ

                                        :
Sedona Laboratories, Inc. and       :
Nutri-Health Supplements, LLC       :
d/b/a Sedona Laboratories,       :

                                        :
           Defendants.       :
_____ :

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF NUTRI-HEALTH SUPPLEMENTS, LLC'S
## MOTION TO RECONSIDER

Dated: November 17, 2006                 KLEHR, HARRISON, HARVEY,
                                              BRANZBURG & ELLERS LLP

Of Counsel:                               David S. Eagle (DE Bar No. 3387)
                                              Patrick A. Costello (DE Bar No. 4535)
Roger L. Cohen                            919 Market Street, Suite 1000
Michelle C. Lombino                   Wilmington, DE 19801
Thomas A. Connelly                    (302) 426-1189 (phone)
JABURG & WILK, P.C.               (302) 426-9193 (fax)
3200 N. Central Avenue, Suite 2000    deagle@klehr.com
Phoenix, AZ 85018                   pcostello@klehr.com
Telephone (602) 248-1000            *Attorneys for Defendant Nutri-Health*
                                              *Supplements, LLC, d/b/a Sedona*
                                              *Laboratories*

## Table of Contents

I.      LEGAL STANDARD.................................................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND.........................................................2

        A.      Procedural History. .................................................................................2

        B.      The Parties Have No Connection With Delaware Outside This Lawsuit................4

III.    ARGUMENT ........................................................................................................5

        A.      The Weight Of The Private Interests Favor Transfer. .............................................8

                1.      The Connection Between this District and *either* Plaintiff *or* this Lawsuit are Very Weak, or Non-Existent.......................................................................... 8

                2.      Convenience of the Parties as Indicated by Their Relative Physical and Financial Condition..................................................................................... 10

                3.      Convenience of the Witnesses. ..................................................................... 12

                4.      Location of Books and Records. ................................................................... 13

        B.      The Weight Of The Public Interests Favor Transfer. ...........................................14

                1.      Enforceability of the Judgment.................................................................... 14

                2.      Practical Considerations that could make the Trial Easy, Expeditious, or Inexpensive. .............................................................................................. 15

                3.      The Relative Administrative Difficulty in the Two Fora Resulting from Court Congestion. .................................................................................... 15

                4.      The Local Interest in Deciding Local Controversies at Home. ...................... 16

                5.      The Public Policies of the Fora.................................................................... 17

                6.      Familiarity of the Trial Judge With Applicable State Law in Diversity Actions. ..................................................................................................... 17

IV.     CONCLUSION.....................................................................................................17

Pursuant to Rules 7(b), 54(b) and 59(e), Fed.R.Civ.P., Defendant Nutri-Health

Supplements, LLC d/b/a Sedona Laboratories ("NHS"), hereby respectfully requests that this

Court reconsider its Order of November 2, 2006 (D.I. 33) denying NHS's motion to dismiss, or,

alternatively, transfer venue of this action.[1]  Specifically, NHS's respectfully requests that this

Court reconsider it ruling that transfer of this action is not appropriate pursuant to 28 U.S.C. §

1404(a) for the convenience of the parties and witnesses and in the interests of justice.

This District has no recognizable connection to either Plaintiff or this lawsuit.  Plaintiff is

neither incorporated nor headquartered in Delaware; the allegedly infringing product was not

designed or manufactured in Delaware and the alleged sales in Delaware are not sufficient to

establish the significant connection to this forum necessary to justify venue here.  Consequently,

the deference granted to Plaintiff's choice of this venue is lessened, and the burden on NHS to

overcome that deference is less than it would be if this District had some sufficient connection to

Plaintiff or this lawsuit.  Weighing the "balance of conveniences," it is evident that the great

weight of the relevant factors favors transfer of this action to the District of Arizona.

## I.      LEGAL STANDARD

Since this Court has not yet entered final judgment in this action, NHS's motion to

reconsider is brought pursuant to Federal Rule of Civil Procedure 54(b), which provides that

"any order or other form of decision ... which adjudicates fewer than all the claims ... is subject

to revision at any time before the entry of judgment adjudicating all the claims . . . ."  Rule 59(e)

also applies to motions for reconsideration.  *See also* Local Rule 7.1.5.  NHS realizes that such

motions are granted sparingly, but believes that the unusual circumstances surrounding the

---

[1] NHS notes that this Court was closed on November 10, 2006 in honor of Veteran's Day, and the accompanying Motion To Reconsider has been timely filed within ten (10) business days from the date of entry of the Court's Order. See Fed. R. Civ. P. 6, 59(e); D. Del. Local Rule 7.1.5.

Court's decision warrant reconsideration. As this Court has explained, a district court "should grant a motion for reconsideration which alters, amends, or offers relief from a judgment when: (1) there has been an intervening change in the controlling law, (2) there is newly discovered evidence which was not available to the moving party at the time of the judgment; or (3) there is a need to correct a legal or factual error which has resulted in a manifest injustice." *Ryan v. Asbestos Workers Union Local 42 Pension Fund*, 2000 WL 1239958 at *1 (D.Del. Aug. 15, 2000) (Sleet, J.) (citations omitted). NHS relies on the third basis for reconsideration, namely, that both legal and factual errors made in connection with the Court's bench ruling of November 2, 2006 will work substantial injustice to NHS unless rectified.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Procedural History.

On or about May 25, 2006, Plaintiff Block Drug Company, Inc. ("Plaintiff" or "Block Drug"), filed a patent infringement action in the District of Delaware, Civil Action No. 06-350-KAJ (the "Delaware Action"), against one defendant, Sedona Laboratories, Inc. ("SLI"). (D.I. 1.) NHS was not a named defendant in that complaint. (*Id.*) In that complaint, Block Drug alleges that SLI is infringing upon its U.S. Patent No. 6,344,196 (the "'196 Patent") by manufacturing, distributing and selling a product that competes with its Beano® product. (*Id.*)

On June 30, 2006, NHS filed a declaratory action in the District of Arizona (the "Arizona Action") seeking a declaration that Block Drug's '196 Patent is invalid, void and unenforceable. At the time NHS filed the Arizona Action, it was not a party to the Delaware Action. (*See* D.I. 5, Exhibit "A".)

On July 11, 2006, Block Drug amended its complaint in the Delaware Action ("Block's First Amended Complaint" or "Block's FAC") to add NHS as a defendant. (D.I. 5.) Otherwise,

2

the complaint in the Delaware Action was essentially unchanged. On September 15, 2006, NHS filed a Motion to Dismiss, or, Alternatively, to Transfer Venue in the Delaware Action ("NHS's Motion to Dismiss"). (D.I. 12 and 13.) Plaintiff filed a response to that motion on October 4, 2006. (D.I. 17.) NHS replied on October 16, 2006. (D.I. 21.)

On October 19, 2006, Block Drug sent a letter to this Court seeking permission to file a sur-reply, or, alternatively, asking for oral argument. (D.I. 22.) On October 20, 2006, this Court's chambers contacted NHS's local counsel asking for NHS's preference on several possible hearing dates and times for oral arguments. On October 23, 2006, this Court set oral argument on NHS's Motion to Dismiss for November 2, 2006. (D.I. 24.)

As required by this Court, lead counsel for NHS traveled from Phoenix, Arizona to Wilmington, Delaware (by way of Philadelphia) to appear in person, rather than telephonically,[2] for oral arguments on November 2, 2006. NHS's counsel incurred significant expense in air travel, hotel, local transportation and meal expenses to appear at the hearing.

At the hearing, following oral arguments regarding personal jurisdiction, this Court denied the motion to dismiss, ruling that personal jurisdiction over NHS was proper under Delaware's long arm statute and federal due process under a stream of commerce theory. (D.I. 33.) Ruling that personal jurisdiction and venue are co-extensive, this Court also found that venue was proper in Delaware for this patent infringement action. (*Id*.) The Court then presumably denied NHS's request to transfer this action pursuant to 28 U.S.C. § 1406 since it found that jurisdiction is proper here.[3] The Court did, however, expressly rule that it would not transfer this action based on convenience even though the parties did not present oral argument

---

[2] Upon inquiry, this Court's staff informed counsel for NHS that appearing telephonically for the oral argument would not be allowed.

[3] Section 1406 transfers are available when an action is filed in an improper venue. 28 U.S.C. § 1406. In contrast, section 1404(a) transfers are available for the convenience of the parties and in the interests of justice when an action is initially filed in a proper venue. 28 U.S.C. § 1404(a).

3

on that issue. (*Id.*) The Court stated broadly, and without elaboration, that it had considered the convenience factors and found that the balance of convenience weighed in favor of keeping this action in Delaware. (*Id.*) It is that ruling that NHS respectfully requests this Court to reconsider.

**B.     The Parties Have No Connection With Delaware Outside This Lawsuit.**

Defendant NHS is an Arizona limited liability company with its principal place of business in Arizona. NHS employs 40 people in the manufacture and distribution of over-the-counter digestive products and nutritional supplements for consumer use, including the product at issue here, which NHS commonly refers to as GasAway+™. (Declaration of Thomas A. Connelly ("Connelly Decl.") ¶ 3.) For the fiscal year ending December 31, 2005, NHS realized slightly more than $900,000.00 in profit on $7.8 million in total revenue, based on sales of all of its products. (*Id.* ¶ 4.) NHS's only manufacturing plant is located in Cottonwood, Arizona. NHS distributes its products, including GasAway+™, from Arizona through a network of wholesalers, retailers, natural health stores, pharmacies, distributors and brokers, none of whom, to the best of NHS's knowledge, are residents of or located in Delaware. (*Id.* ¶ 5.) All sales of any NHS products are subject to review, approval and acceptance by NHS in Arizona. (*Id.* ¶ 6.) NHS has no salaried or commissioned employees or contractors in Delaware. None of NHS's potential witnesses are located in Delaware, and none of its relevant documents or records are located in Delaware. (*Id.* ¶ 7.) Rather, NHS's witnesses, documents and records are located in Arizona. (*Id.*)

Plaintiff here, Block Drug Company, Inc., is a New Jersey corporation, with its principal place of business in Pennsylvania. (D.I. 5, ¶ 4.) Defendant is wholly owned by GlaxoSmithKline ("GSK"), (*Id.*, ¶ 11), one of the world's largest pharmaceutical companies.[4]

---

[4] This information and the following financial results are found in GSK's quarterly reports for the 4th quarter, 2005, available at http://www.gsk.com/investors/quarterly_results_2005.htm, which include total numbers for the year

4

GSK is a British corporation based in London. For the year ended December 31, 2005, GSK reported gross profits of $30.75 Billion on total revenues of $33.963 Billion. (**Exhibit 1** at 2, 3 and 5.) Operating profits were $12.510 Billion and profits after taxes were $8.765 Billion. (*Id.* at 5.) Upon information and belief, none of Plaintiff's potential witnesses reside in Delaware, and none of the relevant documents or records are located in Delaware. Plaintiff, through its counsel, has expressed a willingness to subject itself to the jurisdiction of the Arizona courts and litigate this matter in Arizona. (Connelly Decl. ¶ 8.)

The initial defendant in the Delaware Action, Sedona Laboratories, Inc. ("SLI"), is an Arizona corporation with its principal place of business in Arizona. (D.I. 5, ¶ 5.) Upon information and belief, SLI is neither registered as a foreign corporation, nor otherwise authorized to do business in Delaware. It is further believed that SLI owns no property in Delaware and does not employ any Delaware residents. SLI and NHS are not related entities. (Connelly Decl. ¶ 10.) Each is a separate legal entity, with separate management teams and no overlap between them. (*Id.*) Counsel for SLI has informed counsel for NHS that it has reached a settlement in principal with Plaintiff and will soon be dismissed as a defendant in this matter. (*Id.* ¶ 11.)

## III.    ARGUMENT

"By definition, a transfer analysis is a thoughtful weighing of interests." *Affymetrix, Inc. v. Synteni, Inc.*, 28 F.Supp.2d 192, 208 (D.Del. 1998)(Sleet, J.) Each request for transfer of an action to a more convenient forum is to be determined on an individual, case-by-case basis. *Id.* at 197. The inquiry undertaken is a broad one in which "[t]he Court should examine *all relevant*

---

ended December 31, 2005 (last visited on October 16, 2006). The "Convenience translation into US dollars" report is attached hereto as **Exhibit 1** and is the direct source for the financial numbers stated. All 301 pages of GSK's 2005 Annual Report is accessible at http://www.gsk.com/investors/annual-reports.htm (last visited on Oct. 16, 2006), but not attached as an exhibit here.

*factors* to determine whether, on balance, the litigation would more conveniently proceed and the interests of justice [would] be better served by a transfer to a different forum." *Id.* at 196-97 (emphasis added) (internal quotations and citations omitted). The Third Circuit, in *Jumara v. State Farm Ins. Co.*, 55 F.3d 873 (3d Cir. 1995), set out what has become the widely accepted test in this circuit for judging motions to transfer under § 1404(a). In *Jumara*, the Court identified a non-exclusive list of six private interests and six public interests that are to be balanced to decide transfers requested for the convenience of the parties and witnesses and in the interests of justice.

The private interests are: (1) plaintiff's forum preference as manifested in the original choice; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the location of books and records—but only to the extent that the files could not be produced in the alternative forum. *Id.* at 879. The public interests are: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases. *Id.* at 879-880.

In an extensive analysis of the *Jumara* private and public interests, Judge Sleet, of this District, distilled those interests to remove what he perceived to be double-counting so as to reach a more equitable "balance of conveniences" test. *See, generally, Affymetrix*, 28 F. Supp.2d

192. The *Affymetrix* balancing test, which has been widely applied in this District[5], recasts the focus of the first three *Jumara* private interests to avoid double-counting that might result by considering those interests as well as the three § 1404(a) interests—convenience of parties, convenience of witnesses and the interests of justice. *Affymetrix*, 28 F.Supp.2d at 197—202. Thus, rather than simply considering the plaintiff's choice of forum, the defendant's preferred forum and whether the claim arose elsewhere, the *Affymetrix* analysis directs the focus suggested by those three factors into a "balance of conveniences" analysis that "explores whether the plaintiff offers any substantive *reasons* … indicating that the convenience to it of litigating in this forum even approaches the inconvenience which trial in this forum will impose on the defendants and their witnesses." *Id.* at 200 (emphasis in original) (internal quotation marks and brackets omitted). Absent a legitimate, rational reason, if the plaintiff chooses to litigate away from its 'home turf'[6], the defendant's burden is lessened. *Id.*, *see also Waste Distillation Tech., Inc. v. Pan Am. Res., Inc.*, 775 F.Supp. 759, 764 (D.Del. 1991) (stating that "Courts will not blindly prefer the plaintiff's choice of forum. The forum must reflect the plaintiff's rational and legitimate concerns"); *General Instrument Corp. v. Mostek Corp.*, 417 F.Supp. 821, 823 (D.Del. 1976) ("It is simply easier for defendant to meet [its] burden" in situations where the plaintiff has not brought suit on its "home turf"). Consequently, "under the balancing test inherent in any transfer analysis, the weaker the connection between the forum and *either* the plaintiff *or* the lawsuit, the greater the ability of a defendant to show sufficient inconvenience to warrant transfer." *Affymetrix*, 28 F.Supp.2d at 199 (emphasis in original).

---

[5] The case has been cited no fewer than 26 times by courts of this District, as reported by a Westlaw keycite search performed on November 10, 2006.

[6] Under section 1404(a), "home turf" refers to a corporation's principal place of business or its place of incorporation. *Stratos Lightwave, Inc. v. E20 Communications, Inc.*, 2002 WL 500920 at *2 (D.Del. March 26, 2002).

Here, those connections are very weak, if they exist at all. When all the relevant factors are weighed, the "balance of conveniences" tips in favor of transferring this action to the District of Arizona.

**A.    The Weight Of The Private Interests Favor Transfer.**

      1.    The Connection Between this District and *either* Plaintiff *or* this Lawsuit are Very Weak, or Non-Existent.

          a)    Plaintiff has no connection to this District.

Plaintiff is a New Jersey corporation with its principal place of business in Pennsylvania. It is not incorporated in Delaware. It does not have a principal place of business in Delaware. It is not licensed to conduct business in Delaware. Delaware is not Plaintiff's "home turf." In short, Plaintiff has no connection to Delaware or this District.

          b)    This lawsuit's connection to Delaware is artificial.

The only connection between this lawsuit and Delaware is that Plaintiff purchased the allegedly infringing product at an Eckerd drug store in Delaware.[7] Plaintiff consummated that purchase simply to establish jurisdiction here so as to manufacture a reason to litigate in this district. NHS's product is presumably carried at the Eckerd stores in New Jersey—the state of Plaintiff's incorporation—and Pennsylvania—the state of Plaintiff's primary place of business—but Plaintiff chose to travel across state lines to create a connection between this lawsuit and this District where one otherwise would not exist. Such a connection is stilted and insufficient to maintain venue here. *Nilssen v. Osram Sylvania, Inc.*, 2001 WL 34368395 at 2, n.4 (D.Del. May 1, 2001) (Farnan, J.) (finding that "Delaware does not have any special 'connection' to the case that would weigh against transfer[,]" even though some of the accused products are sold in

---

[7] Eckerd is not a party to this lawsuit, and there are no issues to which the trial testimony of any Eckerd employees employed at the retail drug stores located in Delaware would be relevant. Eckerd Drug Company was formerly a Florida corporation, and is now owned by The Jean Coutu Group (PJC) Inc., a Canadian corporation.

8

Delaware); *see also Brunswick Corp. v. Precor Inc.*, 2000 WL 1876477 at 2 (D.Del. Dec. 12, 2000) (Sleet, J.) (where, even though both parties were incorporated in Delaware, neither party had a principal place of business in Delaware, the witnesses and documents were not located in Delaware and the design and manufacture of the offending product occurred outside Delaware therefore justifying the finding that the District of Washington was a more convenient forum for the litigation); *Amersham Pharmacia Biotech, Inc. v. Perkin-Elmer Corp.*, 11 F.Supp.2d 729, 730 (S.D.N.Y. 1998) (holding that the Southern District of New York's connection to the litigation was "tenuous" for purposes of venue transfer analysis even though the defendant was a New York corporation and over 100 of its allegedly infringing products were sold in New York and transferring case to California as a result).

In contrast, the design and manufacture of NHS's allegedly infringing product occurred in Arizona. The acceptance of orders for private labeled products that entered the stream of commerce occurred in Arizona. Plaintiff's patent-in-suit was created by activities that occurred outside of Delaware. Any contention by Plaintiff that this lawsuit is connected to Delaware because its "claim arose" here by reason of the offending product being sold in Delaware lacks merit. *Nilssen*, 2001 WL 34368395 at 2, n.4. In short, the truly meaningful events at issue in this matter all occurred outside of Delaware. *See Brunswick*, 2000 WL 1876477 at 2 (plaintiff's choice receives less deference when the operative events—design and manufacture of the allegedly infringing equipment—occurred outside of Delaware); *General Instrument Corp. v. Mostek Corp.*, 417 F.Supp. 821, 822-23 (D.Del. 1976) (same). As the *Brunswick* Court noted, "the plaintiff's preference for Delaware is not given as much deference because most of the events at issue, that is, the design and manufacture of the exercise equipment, occurred outside of Delaware." *Brunswick*, 2000 WL 1876477 at 2. The same holds true here. Given the absence of

9

any tangible connection between the issues raised by Plaintiff's claim and the State of Delaware, Plaintiff's choice of this District as the forum for its lawsuit does not withstand the countervailing weight of factors favoring transfer.

On balance, the connection between this district and *either* Plaintiff *or* this lawsuit are so disjointed or artificial that it would be unjust and inimical to the interests of justice to count this factor heavily in favor of maintaining venue of this action in this District. At best, Plaintiff's choice of this forum is due only minimal deference, and is easily overcome by the weight of factors favoring transfer.

>    2.    Convenience of the Parties as Indicated by Their Relative Physical and Financial Condition.

Physically, none of the parties is located in Delaware. Delaware is very inconvenient for NHS, which is incorporated and has its principal place of business in Arizona. Sedona Labs, Inc., the other defendant (who will shortly be dismissed and no longer a party), is also an Arizona corporation with its principal place of business in Arizona. Thus, in order to litigate this matter before this Court, both NHS and Sedona Labs must travel over four thousand miles round trip. Furthermore, this Court has already shown a propensity to require the parties' physical attendance at pre-trial hearings, thereby indicating that such inconvenience (with the attendant substantial expense of travel, lodging, meals and local transportation) will likely occur with some regularity going forward.

Financially, there is unnerving disparity between these parties. Plaintiff is a wholly owned subsidiary of GlaxoSmithKline ("GSK"), one of the world's largest pharmaceutical companies. *See Corixa Corp. v. IDEC Pharmaceutical Corp.*, 2002 WL 265094 at 3 (D.Del. Feb. 25, 2002) (Sleet, J.) (granting transfer of a patent infringement action and finding that "GSK is one of the world's largest pharmaceutical companies, and cannot complain about location.").

10

By its sheer size and global reach, Plaintiff "cannot complain about location." *Id*. With annual

profits of *more than $12 billion*, Plaintiff and GSK have the financial wherewithal to litigate in

every corner of the globe, including Arizona. *Id*. In stark contrast, NHS has annual profits of

less than one million dollars. In other words, Plaintiff is backed by a company with profits

*12,000 times greater* than those of NHS. If ever there was financial disparity between parties

tipping the balance in favor of transfer to a forum more convenient for a defendant, it surely

exists in this case.

Additionally, the relative cost for Plaintiff to litigate in this district, as compared to that

for NHS to litigate here, exacerbates this disparity. Plaintiff can take a short drive or train ride to

reach this Court, and not have to stay overnight, thereby incurring minimal expense. In contrast,

each trip to Delaware for NHS will reasonably require air travel and at least one night in a hotel,

along with the necessary attendant expenses, such as meals and ground transportation, thereby

making every visit to Delaware a costly proposition for NHS. Litigating in this District will

place a significant and onerous financial burden upon NHS. Conversely, since Plaintiff has

previously expressed a willingness to proceed in Arizona, any additional inconvenience that it

may suffer from having to travel to Phoenix, Arizona pales in comparison to the inconveniences

NHS will suffer by having to defend in Wilmington, Delaware. *See CES Publ'g Corp. v.*

*Dealerscope, Inc.*, 544 F.Supp. 656, 662 (E.D.Pa. 1982) (transferring case where plaintiff was

willing to litigate in alternative venue and existing venue had very little connection to plaintiff or

the lawsuit).

Moreover, an action involving the same patent-in-suit is currently pending in the District

of Arizona. Plaintiff has already agreed that litigating in that venue would not cause it

inconvenience. Transferring this case to the District of Arizona, therefore, would convenience

11

NHS—the party much less able to incur the expense associated with the inconvenience of litigating in Delaware, while not inconveniencing Plaintiff. On balance, this factor weighs heavily in favor of transfer.

    3.    Convenience of the Witnesses.

The location of potential witnesses and their ability to be subjected to compulsory process weighs heavily in the "balance of convenience" analysis. *Affymetrix*, 28 F.Supp.2d at 203; *see also Nilssen*, 2001 WL 34368395 at *2 ("[t]he convenience of witnesses is the most important factor in venue transfer analysis."). The existence of non-party fact witnesses who reside outside the Court's subpoena power is a factor that weighs heavily in favor of transfer. *Id.* at 204. Here, this Court would not have subpoena power over those fact witnesses discussed below who reside in Arizona, or others who reside outside a 100-mile radius of the Wilmington courthouse. *See* Fed.R.Civ.P. 45(b)(2) (2006). It is sufficient for purposes of transfer analysis if witnesses are not subject to a court's subpoena power. *Nilssen*, 2001 WL 34368395 at *2.

As an initial matter, it is relevant to the balancing analysis that NHS, being a small company, will experience significant disruption of its business if it is required to litigate this matter in Delaware. That disruption will occur because many of its executive and managerial personnel will be required to abandon their oversight and management of the company's day-to-day operations to be present in Delaware for the trial. Those persons may include, at the least, Fred Auzenne, CEO; Tracy King, President; Ellen Stewart, Sales Director; John Martinez, Finance Manager; Mike Howell, Operations Manager; and other NHS employees whose testimony will be relevant at trial. Although this District generally does not consider the inconvenience of party witnesses in the balance analysis, it is proper to do so when a defendant's business operations will be adversely affected by the absence of those witnesses.

12

Several material, non-party witnesses either reside in Arizona or would otherwise be inconvenienced by keeping this action in Delaware. Jim Angus is an independent contractor for NHS who currently resides in California. Mr. Angus has knowledge regarding the marketing and sales of the allegedly infringing product. As a self-employed individual, he would be more likely to appear for trial in Arizona since it would not be terribly inconvenient or expensive for him to do so, nor too disruptive to his business activities. However, he most likely would not voluntarily appear at trial in Delaware because of the significant inconvenience and expense of having to travel more than six thousand miles round trip to do so. Since he resides outside this Court's subpoena power, he could not be compelled to appear at trial. It is also possible that by the time this matter goes to trial, NHS will need the testimony of other current or former employees of NHS, who, to the extent they are no longer employed by NHS at that time, NHS would have no way to compel their attendance in Delaware. Finally, Kwan Jin and Alan Lemish are both employed at Sedona Labs, Inc. They will testify, among other things, about the manufacturing, marketing and sales of the GasAway+ product, and, most significantly, about the composition of the GasAway+ product and the genesis of the formulation of that product. Both Mr. Jin and Mr. Lemish reside in Arizona. Since Sedona Labs will not be a party at the time of trial, they will not be amenable to this Court's subpoena power and NHS will have no way to compel their attendance at trial in Delaware.

On balance, therefore, this factor weighs heavily in favor of transfer since the above witnesses will not be subject to this Court's subpoena power.

    4.    Location of Books and Records.

None of the documents or records relevant to this action are located in Delaware. Rather, they are primarily located in Arizona and either New Jersey or Pennsylvania. Due to

13

existing technological advances, however, this factor admittedly weighs only slightly in favor of transfer.

The private factors, on the whole, weigh heavily in favor of transfer. There is no rational connection between this District and either Plaintiff or this lawsuit; none of the parties are located in Delaware and there is significant financial disparity between Plaintiff and NHS thereby placing the significant and onerous burden of litigating in this District disproportionately upon NHS; the majority of witnesses are Arizona residents, while none of the witnesses are Delaware residents; and, none of the documents and records relevant to this action are located in Delaware, with many of them being found in Arizona. Since none of the private factors weigh in favor of keeping this action in Delaware, and several factors weigh heavily in favor of transfer, the balance of the private factors weigh heavily in favor of transfer.

**B.    The Weight Of The Public Interests Favor Transfer.**

1.    Enforceability of the Judgment.

The enforceability of a judgment is called into question when there has been a challenge to a court's exercise of *in personam* jurisdiction. *Cf. In re DVI, Inc.*, 2004 WL 1498593 at *3 (D.Del. June 23, 2004) (noting that, unlike here, this factor did not weigh in the balancing test "because there has been no dispute in either state over *in personam* jurisdiction."). Despite this Court's ruling that NHS is subject to the personal jurisdiction of this Court, NHS respectfully contends that this Court erred in that determination. Consequently, were Plaintiff to prevail on the merits in this District, it is nearly certain that NHS would appeal this Court's ruling on personal jurisdiction thereby challenging the enforceability of any judgment rendered by this Court for Plaintiff. On the other hand, Plaintiff has previously stated that it would freely litigate in Arizona if this action were transferred; and therefore, there would be no impediment to the

14

enforceability of any judgment rendered by that Court. Consequently, this factor weighs in favor of transfer.

<blockquote>
2.     Practical Considerations that could make the Trial Easy, Expeditious, or Inexpensive.
</blockquote>

By filing this lawsuit in Delaware, Plaintiff has forced all the parties to retain local counsel. *See* D. Del. L.R. 83.5(b) and (d) (making association with local counsel mandatory). Transferring this action to the District of Arizona would eliminate this expense for the party least able to afford this otherwise unnecessary expense—NHS—as well as for Plaintiff. *See* D. Ariz. L.R. 83.1(b)(3) and (c) (association with local counsel not mandatory). This factor weighs in favor of transfer.[8] *Affymetrix*, 28 F.Supp.2d at 205-06.

Moreover, an action is currently pending in the District of Arizona regarding the same patent-in-suit. "Where related lawsuits exists, it is in the interests of justice to permit suits involving the same parties and issues to proceed before one court." *Brunswick Corp. v. Precor Inc.*, 2000 WL 1876477 at *3 (D.Del. Dec. 12, 2000) (internal quotation marks and citations omitted). Consequently, this factor weighs in favor of transfer. *Id.*

<blockquote>
3.     The Relative Administrative Difficulty in the Two Fora Resulting from Court Congestion.
</blockquote>

Review of judicial caseload statistics for civil cases during the 12-month period ending March 31, 2005, show that the median time from filing to disposition in this District was 11.2 months, compared to 10.4 months in the District of Arizona. (**Exhibit 2.**) In this district, civil matters are resolved before trial in 12.3 months, compared to 10.2 months in the District of

---

[8] The huge disparity in financial resources between those of NHS versus Plaintiff would comport with this Court assigning great weight to this factor in the "balance of conveniences" analysis. *Affymetrix*, 28 F.Supp.2d at 206 n.13.

15

Arizona. (*Id.*) Matters that proceed to trial here are resolved in 34 months, compared to 28 months in the District of Arizona. (*Id.*) Thus, this factor weighs in favor of transfer.

Moreover, as noted earlier, a declaratory action involving the same patent-in-suit and the same parties (Plaintiff and NHS) is currently pending in the District of Arizona. It would be a waste of judicial resources to require two different courts to construe the same patent and to render *Markman* rulings on that patent. *Nilssen*, 2001 WL 34368395 at *4 (ruling that such a situation "is a factor that weighs strongly in favor of transfer.") Transferring this action to the District of Arizona would benefit the interests of judicial economy, and avoid the risk of "inconsistent judgments virtually guaranteeing that one of the judgments will get reversed on appeal." *See id.* at *4 and n.10. Consequently, this factor weighs heavily in favor of transfer.

4.      The Local Interest in Deciding Local Controversies at Home.

There are no local Delaware interests involved in this patent infringement action. *Affymetrix*, 28 F.Supp.2d at 207. Moreover, since none of the parties are incorporated in Delaware and do not have principal places of business in Delaware, this Court is not protecting any rights of a Delaware business or its employees.

In contrast, Arizona does have an interest in the outcome of this action since NHS is incorporated in Arizona. *Omnicom Group, Inc. v. Employers Reinsurance Corp.*, 2002 WL 109346 at *4 (D.Del. Jan. 28, 2002) (Sleet, J.). Furthermore, the design, manufacture and acceptance of contracts that placed the allegedly infringing product into the stream of commerce all occurred in Arizona. *See id.* (holding that New York has a "great interest" in the outcome of that action since the parties were either incorporated there or licensed to do business there, and the allegedly wrongful acts at issue there occurred in New York); *see also Chase Manhatten Bank, USA, N.A. v. Freedom Card, Inc.*, 265 F.Supp.2d 445, 451 (D.Del. 2003) (Jordan, J.) (the

16

place of incorporation and location of the company's operations were persuasive factors in transfer analysis). Consequently, this factor weighs heavily in favor of transferring this matter to Arizona.

> 5. The Public Policies of the Fora.

There are no public policies unique to Delaware implicated by this action. However, both NHS and Sedona Labs are Arizona residents, thereby implicating that state's public policy interests in protecting the businesses and employment of its residents. "Clearly, the [Arizona] forum's interest extends to those corporate citizens that have sought the protections of [Arizona's] laws." *Chase Manhatten Bank*, 265 F.Supp.2d at 451. Consequently, this factor weighs in favor of transfer.

> 6. Familiarity of the Trial Judge With Applicable State Law in Diversity Actions.

This factor is not applicable to this action. Therefore, it plays no role in the "balance of conveniences" analysis.

All of the public factors relevant to the transfer analysis here weigh in favor of transfer, some heavily so. Therefore, it is rightly concluded that the "balance of conveniences" weighs heavily in favor of transfer.

## IV.    CONCLUSION

Delaware has no rational connection to this case. Plaintiff is neither incorporated here, nor does it maintain a principal place of business here. The only connection Delaware has to this lawsuit is the one manufactured by Plaintiff's purchase of the allegedly infringing product in Delaware in order to create a connection for venue purposes. However, the mere sales of a widely distributed product in a certain forum do not create a connection with that forum

sufficient enough for maintaining venue in that forum in the absence of any other significant connections. On the other hand, the truly relevant activities at issue here—for instance, the design and manufacture of the allegedly infringing product—all took place outside of Delaware, and largely, if not exclusively, occurred in Arizona.

In addition, the "balance of conveniences" analysis, on the whole, weighs heavily in favor of transfer. The private factors weigh heavily in favor of transfer: there is no rational connection between this District and either Plaintiff or this lawsuit; none of the parties are located in Delaware and there is significant financial disparity between Plaintiff and NHS thereby placing the significant and onerous burden of litigating in this District disproportionately upon NHS; the majority of witnesses are Arizona residents, while none of the witnesses are Delaware residents; and, none of the documents and records relevant to this action are located in Delaware, with many of them being found in Arizona. Since none of the private factors weigh in favor of keeping this action in Delaware, and several factors weigh heavily in favor of transfer, the balance of the private factors weigh heavily in favor of transfer.

The relevant public factors also weigh heavily in favor of transfer: there are questions regarding the enforceability of any Plaintiff's judgment rendered by this Court based on its arguably erroneous ruling finding personal jurisdiction over NHS; transfer will eliminate the need for the parties to employ local counsel and there is an action pending in the District of Arizona regarding the same patent-in-suit and involving Plaintiff and NHS; Delaware has no local interests in deciding this dispute, whereas Arizona does have such an interest by virtue of the facts that NHS is an Arizona entity, and the design and manufacture of the allegedly infringing product occurred in Arizona; and there are no Delaware public policy interests

18

implicated by the lawsuit, while Arizona has an interest in the continuing vitality of its corporations and the preservation of jobs in the State.

Consequently, the great weight of the "balance of conveniences" analysis is in favor of transfer. Therefore, NHS respectfully requests that this Court reconsider its ruling and order this action transferred to the District of Arizona for the convenience of the parties and witnesses and in the interests of justice.

Dated: November 17, 2006

KLEHR, HARRISON, HARVEY,
BRANZBURG & ELLERS LLP

*/s/ Patrick A. Costello*
David S. Eagle (DE Bar No. 3387)
Patrick A. Costello (DE Bar No. 4535)
919 Market Street, Suite 1000
Wilmington, DE 19801
(302) 426-1189 (phone)
(302) 426-9193 (fax)
deagle@klehr.com
pcostello@klehr.com
*Attorneys for Defendant Nutri-Health*
*Supplements, LLC, d/b/a Sedona*
*Laboratories*

Of Counsel:

Roger L. Cohen
Michelle C. Lombino
Thomas A. Connelly
JABURG & WILK, P.C.
3200 N. Central Avenue, Suite 2000
Phoenix, AZ 85018
Telephone (602) 248-1000

19

# EXHIBIT 1

## PHARMACEUTICAL TURNOVER
### Three months ended 31st December 2005

| | Total £m | USA £m | Europe £m | ROW £m | Total US$ | USA US$ | Europe US$ | ROW US$ |
|---|---|---|---|---|---|---|---|---|
| **RESPIRATORY** | **1,407** | **733** | **436** | **238** | **2,452** | **1,280** | **757** | **415** |
| *Seretide/Advair* | 851 | 493 | 277 | 81 | 1,484 | 862 | 481 | 141 |
| *Flixotide/Flovent* | 174 | 72 | 49 | 53 | 303 | 126 | 85 | 92 |
| *Serevent* | 87 | 29 | 39 | 19 | 151 | 50 | 68 | 33 |
| *Flixonase/Flonase* | 171 | 134 | 13 | 24 | 297 | 233 | 22 | 42 |
| | | | | | | | | |
| **CENTRAL NERVOUS SYSTEM** | **886** | **585** | **168** | **133** | **1,543** | **1,022** | **289** | **232** |
| *Seroxat/Paxil* | 158 | 32 | 40 | 86 | 274 | 55 | 68 | 151 |
| *Paxil IR* | 122 | - | 40 | 82 | 211 | - | 68 | 143 |
| *Paxil CR* | 36 | 32 | - | 4 | 63 | 55 | - | 8 |
| *Wellbutrin* | 217 | 212 | 1 | 4 | 380 | 371 | 2 | 7 |
| *Wellbutrin IR, SR* | 24 | 20 | 1 | 3 | 42 | 35 | 2 | 5 |
| *Wellbutrin XL* | 193 | 192 | - | 1 | 338 | 336 | - | 2 |
| *Imigran/Imitrex* | 188 | 138 | 38 | 12 | 327 | 240 | 66 | 21 |
| *Lamictal* | 228 | 163 | 51 | 14 | 396 | 285 | 87 | 24 |
| *Requip* | 50 | 29 | 19 | 2 | 89 | 52 | 33 | 4 |
| | | | | | | | | |
| **ANTI-VIRALS** | **697** | **346** | **194** | **157** | **1,211** | **601** | **336** | **274** |
| **HIV** | **406** | **203** | **152** | **51** | **704** | **352** | **263** | **89** |
| *Combivir* | 148 | 74 | 53 | 21 | 256 | 128 | 91 | 37 |
| *Trizivir* | 77 | 44 | 30 | 3 | 133 | 76 | 52 | 5 |
| *Epivir* | 62 | 22 | 29 | 11 | 107 | 38 | 50 | 19 |
| *Ziagen* | 34 | 14 | 11 | 9 | 59 | 25 | 18 | 16 |
| *Retrovir* | 8 | 1 | 4 | 3 | 14 | 1 | 8 | 5 |
| *Agenerase, Lexiva* | 33 | 20 | 11 | 2 | 58 | 34 | 20 | 4 |
| *Epzicom/Kivexa* | 44 | 28 | 14 | 2 | 78 | 50 | 25 | 3 |
| | | | | | | | | |
| **Herpes** | **224** | **132** | **34** | **58** | **389** | **229** | **59** | **101** |
| *Valtrex* | 190 | 131 | 24 | 35 | 331 | 229 | 41 | 61 |
| *Zovirax* | 34 | 1 | 10 | 23 | 59 | 2 | 18 | 39 |
| | | | | | | | | |
| *Zeffix* | 42 | 3 | 6 | 33 | 73 | 5 | 10 | 58 |
| | | | | | | | | |
| **ANTI-BACTERIALS** | **405** | **74** | **184** | **147** | **704** | **129** | **319** | **256** |
| *Augmentin* | 170 | 35 | 80 | 55 | 294 | 61 | 138 | 95 |
| *Augmentin IR* | 142 | 12 | 77 | 53 | 246 | 21 | 133 | 92 |
| *Augmentin ES, XR* | 28 | 23 | 3 | 2 | 48 | 40 | 5 | 3 |
| *Zinnat/Ceftin* | 54 | 4 | 29 | 21 | 94 | 7 | 50 | 37 |
| | | | | | | | | |
| **METABOLIC** | **387** | **245** | **56** | **86** | **672** | **424** | **98** | **150** |
| *Avandia* | 289 | 209 | 30 | 50 | 500 | 361 | 52 | 87 |
| *Avandamet* | 46 | 25 | 16 | 5 | 80 | 43 | 28 | 9 |
| *Boniva* | 11 | 10 | 1 | - | 20 | 18 | 2 | - |
| | | | | | | | | |
| **VACCINES** | **420** | **95** | **169** | **156** | **733** | **165** | **294** | **274** |
| Hepatitis | 113 | 35 | 54 | 24 | 196 | 60 | 94 | 42 |
| *Infanrix/Pediarix* | 121 | 37 | 54 | 30 | 211 | 64 | 94 | 53 |
| | | | | | | | | |
| **ONCOLOGY AND EMESIS** | **271** | **207** | **39** | **25** | **471** | **360** | **67** | **44** |
| *Zofran* | 229 | 179 | 30 | 20 | 398 | 311 | 52 | 35 |
| *Hycamtin* | 25 | 17 | 6 | 2 | 43 | 29 | 10 | 4 |
| | | | | | | | | |
| **CARDIOVASCULAR AND UROGENITAL** | **366** | **217** | **105** | **44** | **637** | **378** | **182** | **77** |
| *Coreg* | 159 | 158 | - | 1 | 277 | 275 | - | 2 |
| *Levitra* | 10 | 9 | 1 | - | 18 | 17 | 1 | - |
| *Avodart* | 39 | 21 | 15 | 3 | 69 | 38 | 26 | 5 |
| *Arixtra* | 8 | 6 | 2 | - | 14 | 10 | 4 | - |
| *Fraxiparine* | 55 | - | 46 | 9 | 95 | - | 80 | 15 |
| *Vesicare* | 5 | 5 | - | - | 9 | 9 | - | - |
| | | | | | | | | |
| **OTHER** | **269** | **19** | **85** | **165** | **467** | **34** | **147** | **286** |
| *Zantac* | 64 | 17 | 17 | 30 | 111 | 30 | 29 | 52 |
| | | | | | | | | |
| | **5,108** | **2,521** | **1,436** | **1,151** | **8,890** | **4,393** | **2,489** | **2,008** |

Pharmaceutical turnover includes co-promotion income.  US dollar amounts shown above are a convenience translation of the sterling amounts.

## PHARMACEUTICAL TURNOVER
### Year ended 31st December 2005

| | Total £m | USA £m | Europe £m | ROW £m | Total US$ | USA US$ | Europe US$ | ROW US$ |
|---|---|---|---|---|---|---|---|---|
| **RESPIRATORY** | **5,054** | **2,580** | **1,660** | **814** | **9,198** | **4,696** | **3,021** | **1,481** |
| *Seretide/Advair* | 3,003 | 1,687 | 1,033 | 283 | 5,465 | 3,070 | 1,880 | 515 |
| *Flixotide/Flovent* | 638 | 262 | 188 | 188 | 1,161 | 477 | 342 | 342 |
| *Serevent* | 330 | 104 | 160 | 66 | 601 | 189 | 292 | 120 |
| *Flixonase/Flonase* | 656 | 506 | 60 | 90 | 1,194 | 921 | 109 | 164 |
| **CENTRAL NERVOUS SYSTEM** | **3,219** | **2,051** | **704** | **464** | **5,859** | **3,734** | **1,281** | **844** |
| *Seroxat/Paxil* | 615 | 133 | 187 | 295 | 1,119 | 242 | 340 | 537 |
| *Paxil IR* | 488 | 18 | 187 | 283 | 888 | 33 | 340 | 515 |
| *Paxil CR* | 127 | 115 | - | 12 | 231 | 209 | - | 22 |
| *Wellbutrin* | 739 | 723 | 2 | 14 | 1,345 | 1,316 | 4 | 25 |
| *Wellbutrin IR, SR* | 92 | 80 | 2 | 10 | 167 | 145 | 4 | 18 |
| *Wellbutrin XL* | 647 | 643 | - | 4 | 1,178 | 1,171 | - | 7 |
| *Imigran/Imitrex* | 697 | 504 | 144 | 49 | 1,269 | 918 | 262 | 89 |
| *Lamictal* | 849 | 568 | 226 | 55 | 1,545 | 1,034 | 411 | 100 |
| *Requip* | 156 | 80 | 68 | 8 | 285 | 146 | 124 | 15 |
| **ANTI-VIRALS** | **2,598** | **1,285** | **773** | **540** | **4,728** | **2,338** | **1,407** | **983** |
| HIV | 1,554 | 766 | 607 | 181 | 2,828 | 1,394 | 1,105 | 329 |
| *Combivir* | 583 | 283 | 227 | 73 | 1,061 | 515 | 413 | 133 |
| *Trizivir* | 303 | 166 | 123 | 14 | 551 | 302 | 224 | 25 |
| *Epivir* | 261 | 93 | 122 | 46 | 475 | 169 | 222 | 84 |
| *Ziagen* | 136 | 55 | 54 | 27 | 248 | 101 | 98 | 49 |
| *Retrovir* | 41 | 14 | 16 | 11 | 75 | 25 | 29 | 21 |
| *Agenerase, Lexiva* | 112 | 70 | 36 | 6 | 204 | 127 | 66 | 11 |
| *Epzicom/Kivexa* | 118 | 85 | 29 | 4 | 215 | 155 | 53 | 7 |
| Herpes | 826 | 476 | 139 | 211 | 1,503 | 866 | 253 | 384 |
| *Valtrex* | 695 | 470 | 98 | 127 | 1,265 | 856 | 178 | 231 |
| *Zovirax* | 131 | 6 | 41 | 84 | 238 | 11 | 75 | 152 |
| *Zeffix* | 145 | 12 | 21 | 112 | 264 | 22 | 38 | 204 |
| **ANTI-BACTERIALS** | **1,519** | **261** | **718** | **540** | **2,765** | **475** | **1,307** | **983** |
| *Augmentin* | 666 | 139 | 316 | 211 | 1,212 | 253 | 575 | 384 |
| *Augmentin IR* | 552 | 40 | 305 | 207 | 1,005 | 73 | 555 | 377 |
| *Augmentin ES, XR* | 114 | 99 | 11 | 4 | 207 | 180 | 20 | 7 |
| *Zinnat/Ceftin* | 197 | 10 | 112 | 75 | 359 | 18 | 204 | 137 |
| **METABOLIC** | **1,495** | **995** | **190** | **310** | **2,721** | **1,811** | **346** | **564** |
| *Avandia* | 1,154 | 864 | 112 | 178 | 2,100 | 1,572 | 204 | 324 |
| *Avandamet* | 175 | 113 | 45 | 17 | 319 | 206 | 82 | 31 |
| *Boniva* | 18 | 17 | 1 | - | 33 | 31 | 2 | - |
| **VACCINES** | **1,389** | **338** | **592** | **459** | **2,528** | **615** | **1,078** | **835** |
| Hepatitis | 444 | 137 | 224 | 83 | 808 | 249 | 408 | 151 |
| *Infanrix/Pediarix* | 431 | 145 | 202 | 84 | 784 | 264 | 367 | 153 |
| **ONCOLOGY AND EMESIS** | **1,016** | **761** | **164** | **91** | **1,849** | **1,385** | **298** | **166** |
| *Zofran* | 837 | 639 | 124 | 74 | 1,523 | 1,162 | 226 | 135 |
| *Hycamtin* | 99 | 66 | 27 | 6 | 180 | 120 | 49 | 11 |
| **CARDIOVASCULAR AND UROGENITAL** | **1,331** | **766** | **415** | **150** | **2,422** | **1,394** | **755** | **273** |
| *Coreg* | 573 | 568 | - | 5 | 1,043 | 1,034 | - | 9 |
| *Levitra* | 40 | 35 | 4 | 1 | 73 | 64 | 7 | 2 |
| *Avodart* | 129 | 65 | 55 | 9 | 235 | 119 | 100 | 16 |
| *Arixtra* | 24 | 15 | 8 | 1 | 44 | 27 | 15 | 2 |
| *Fraxiparine* | 211 | - | 179 | 32 | 384 | - | 326 | 58 |
| *Vesicare* | 13 | 13 | - | - | 24 | 24 | - | - |
| **OTHER** | **1,040** | **69** | **321** | **650** | **1,893** | **126** | **584** | **1,183** |
| *Zantac* | 244 | 58 | 64 | 122 | 444 | 106 | 116 | 222 |
| | **18,661** | **9,106** | **5,537** | **4,018** | **33,963** | **16,574** | **10,077** | **7,312** |

Pharmaceutical turnover includes co-promotion income.  US dollar amounts shown above are a convenience translation of the sterling amounts.

**BALANCE SHEET**
**At 31st December 2005**

| | 31st December 2005 £m | 31st December 2005 $m |
|---|---:|---:|
| **ASSETS** | | |
| **Non-current assets** | | |
| Property, plant and equipment | 6,652 | 11,441 |
| Goodwill | 696 | 1,197 |
| Other intangible assets | 3,383 | 5,819 |
| Investments in associates and joint ventures | 276 | 475 |
| Other investments | 362 | 623 |
| Deferred tax assets | 2,214 | 3,808 |
| Other non-current assets | 438 | 753 |
| **Total non-current assets** | 14,021 | 24,116 |
| **Current assets** | | |
| Inventories | 2,177 | 3,744 |
| Current tax recoverable | 416 | 716 |
| Trade and other receivables | 5,348 | 9,199 |
| Liquid investments | 1,025 | 1,763 |
| Cash and cash equivalents | 4,209 | 7,239 |
| Assets held for sale | 2 | 3 |
| **Total current assets** | 13,177 | 22,664 |
| **TOTAL ASSETS** | 27,198 | 46,780 |
| **LIABILITIES** | | |
| **Current liabilities** | | |
| Short-term borrowings | (1,200) | (2,064) |
| Trade and other payables | (5,147) | (8,853) |
| Current tax payable | (2,269) | (3,903) |
| Short-term provisions | (895) | (1,539) |
| **Total current liabilities** | (9,511) | (16,359) |
| **Non-current liabilities** | | |
| Long-term borrowings | (5,271) | (9,066) |
| Deferred tax provision | (569) | (979) |
| Pensions and other post-employment benefits | (3,069) | (5,279) |
| Other provisions | (741) | (1,275) |
| Other non-current liabilities | (467) | (803) |
| **Total non-current liabilities** | (10,117) | (17,402) |
| **TOTAL LIABILITIES** | (19,628) | (33,761) |
| **NET ASSETS** | 7,570 | 13,019 |
| **EQUITY** | | |
| Share capital | 1,491 | 2,565 |
| Share premium account | 549 | 944 |
| Other reserves | (308) | (530) |
| Retained earnings | 5,579 | 9,596 |
| | 7,311 | 12,575 |
| Minority interests | 259 | 444 |
| **TOTAL EQUITY** | 7,570 | 13,019 |

US dollar amounts shown above are a convenience transaction of the sterling amounts using the period end rate of £1/$1.72.

**INCOME STATEMENT**
**Three months ended 31st December 2005**

|  | Q4 2005 £m | Q4 2005 $m |
|---|---|---|
| Turnover: |  |  |
| Pharmaceuticals | 5,108 | 8,890 |
| Consumer Healthcare | 799 | 1,388 |
| **TURNOVER** | **5,907** | **10,278** |
| Cost of sales | (1,298) | (2,258) |
| Gross profit | 4,609 | 8,020 |
| Selling, general and administration | (2,040) | (3,556) |
| Research and development | (968) | (1,697) |
| Other operating income | 32 | 48 |
| Operating profit: |  |  |
| Pharmaceuticals | 1,440 | 2,479 |
| Consumer Healthcare | 193 | 336 |
| **OPERATING PROFIT** | **1,633** | **2,815** |
| Finance income | 85 | 150 |
| Finance expense | (125) | (218) |
| Share of after tax profits of joint ventures and associates | 13 | 23 |
| **PROFIT BEFORE TAXATION** | **1,606** | **2,770** |
| Taxation | (455) | (784) |
| **PROFIT AFTER TAXATION FOR THE PERIOD** | **1,151** | **1,986** |
| Profit attributable to minority interests | 29 | 50 |
| Profit attributable to shareholders | 1,122 | 1,936 |
| **EARNINGS PER SHARE** | **19.8p** | **34.1** |
| Diluted earnings per share | 19.6p | 33.9 |

US dollar amounts shown above are a convenience translation of the sterling amounts.

**INCOME STATEMENT**
**Year ended 31st December 2005**

| | 2005<br>£m | 2005<br>$m |
|---|---:|---:|
| Turnover: | | |
| Pharmaceuticals | 18,661 | 33,963 |
| Consumer Healthcare | 2,999 | 5,458 |
| **TURNOVER** | **21,660** | **39,421** |
| Cost of sales | (4,764) | (8,670) |
| Gross profit | 16,896 | 30,751 |
| Selling, general and administration | (7,250) | (13,195) |
| Research and development | (3,136) | (5,708) |
| Other operating income | 364 | 662 |
| Operating profit: | | |
| Pharmaceuticals | 6,159 | 11,209 |
| Consumer Healthcare | 715 | 1,301 |
| **OPERATING PROFIT** | **6,874** | **12,510** |
| Finance income | 257 | 468 |
| Finance expense | (451) | (821) |
| Share of after tax profits of joint ventures and associates | 52 | 95 |
| **PROFIT BEFORE TAXATION** | **6,732** | **12,252** |
| Taxation | (1,916) | (3,487) |
| **PROFIT AFTER TAXATION FOR THE PERIOD** | **4,816** | **8,765** |
| Profit attributable to minority interests | 127 | 231 |
| Profit attributable to shareholders | 4,689 | 8,534 |
| **EARNINGS PER SHARE** | **82.6p** | **150.3** |
| Diluted earnings per share | 82.0p | 149.2 |

US dollar amounts shown above are a convenience translation of the sterling amounts.

# EXHIBIT 2

Table C-5.
U.S. District Courts—Median Time Intervals From Filing to Disposition of Civil Cases Terminated, by District and Method of Disposition, During the 12-Month Period Ending March 31, 2005

| | Total Cases | | No Court Action | | Court Action: Before Pretrial | | Court Action: During or After Pretrial | | Court Action: Trial | |
|---|---|---|---|---|---|---|---|---|---|---|
| Circuit and District | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months |
| TOTAL | 200,451 | 8.3 | 49,977 | 7.3 | 126,864 | 8.2 | 19,983 | 13.5 | 3,627 | 21.1 |
| DC | 1,966 | 10.0 | 879 | 9.9 | 1,019 | 10.4 | 37 | 18.0 | 31 | 30.0 |
| 1ST | 5,840 | 10.3 | 2,066 | 7.1 | 2,639 | 8.3 | 958 | 14.4 | 177 | 24.9 |
| ME | 411 | 7.1 | 176 | 5.0 | 197 | 7.5 | 24 | 13.5 | 14 | 12.5 |
| MA | 3,022 | 9.2 | 1,311 | 8.2 | 1,266 | 7.4 | 357 | 15.7 | 88 | 27.0 |
| NH | 426 | 9.8 | 71 | 4.7 | 144 | 6.9 | 203 | 14.9 | 8 | - |
| RI | 567 | 9.3 | 89 | 4.2 | 238 | 7.4 | 220 | 11.0 | 20 | 21.0 |
| PR | 1,414 | 12.6 | 419 | 10.2 | 794 | 11.1 | 154 | 16.0 | 47 | 25.0 |
| 2ND | 18,485 | 10.7 | 6,407 | 8.8 | 9,300 | 9.5 | 2,414 | 15.4 | 364 | 28.6 |
| CT | 2,103 | 11.6 | 1,411 | 9.5 | 579 | 14.0 | 41 | 25.4 | 72 | 32.6 |
| NY,N | 1,083 | 13.5 | 231 | 8.2 | 570 | 11.4 | 251 | 16.8 | 31 | 27.0 |
| NY,E | 5,419 | 11.9 | 865 | 7.4 | 3,729 | 11.1 | 728 | 18.6 | 97 | 21.8 |
| NY,S | 8,253 | 9.0 | 3,454 | 8.6 | 3,430 | 7.0 | 1,232 | 12.0 | 137 | 36.0 |
| NY,W | 1,299 | 10.1 | 396 | 6.7 | 729 | 10.9 | 157 | 18.6 | 17 | 32.0 |
| VT | 328 | 8.7 | 50 | 4.0 | 263 | 8.7 | 5 | - | 10 | |
| 3RD | 23,479 | 4.8 | 4,385 | 6.0 | 16,464 | 2.5 | 2,279 | 12.7 | 351 | 21.9 |
| DE | 1,204 | 11.2 | 123 | 5.1 | 1,040 | 12.3 | 7 | - | 34 | 34.0 |
| NJ | 5,442 | 7.5 | 1,737 | 6.1 | 2,185 | 5.9 | 1,456 | 12.8 | 64 | 27.0 |
| PA,E | 12,657 | 1.0 | 1,087 | 5.0 | 10,777 | 1.0 | 646 | 10.6 | 147 | 17.9 |
| PA,M | 1,694 | 7.4 | 575 | 4.1 | 967 | 7.4 | 97 | 16.3 | 55 | 22.0 |
| PA,W | 2,269 | 9.5 | 806 | 8.1 | 1,346 | 9.8 | 66 | 25.0 | 51 | 25.8 |
| VI | 213 | 20.7 | 57 | 15.0 | 149 | 21.7 | 7 | - | | |
| 4TH | 16,872 | 9.2 | 3,861 | 6.3 | 10,559 | 10.1 | 2,223 | 19.3 | 229 | 18.6 |
| MD | 3,485 | 8.0 | 1,339 | 8.4 | 1,897 | 8.3 | 203 | 13.3 | 46 | 23.0 |
| NC,E | 926 | 10.5 | 274 | 8.9 | 635 | 11.0 | 2 | - | 15 | 20.8 |
| NC,M | 734 | 11.9 | 215 | 7.9 | 323 | 12.3 | 186 | 12.0 | 10 | 20.0 |
| NC,W | 882 | 10.3 | 261 | 8.6 | 526 | 11.9 | 84 | 14.0 | 11 | 27.0 |
| SC | 3,911 | 12.3 | 316 | 6.0 | 2,374 | 9.4 | 1,168 | 46.6 | 53 | 24.8 |
| VA,E | 3,203 | 5.3 | 1,098 | 4.9 | 1,498 | 5.3 | 540 | 7.2 | 67 | 11.8 |
| VA,W | 997 | 9.4 | 210 | 8.0 | 749 | 9.7 | 23 | 11.7 | 15 | 14.0 |
| WV,N | 513 | 12.2 | 83 | 8.2 | 419 | 12.9 | 8 | - | 3 | - |
| WV,S | 2,221 | 19.1 | 65 | 6.7 | 2,138 | 19.1 | 9 | - | 9 | - |

54

## Table C-5. (March 31, 2005—Continued)

| Circuit and District | Total Cases | | No Court Action | | Court Action | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | | | | Before Pretrial | | During or After Pretrial | | Trial | |
| | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months |
| **5TH** | **21,968** | **9.5** | **5,146** | **9.6** | **14,362** | **8.8** | **1,978** | **13.8** | **482** | **19.2** |
| LA,E | 2,593 | 9.4 | 25 | 3.0 | 1,530 | 6.2 | 927 | 13.8 | 111 | 19.0 |
| LA,M | 716 | 10.5 | 24 | 3.2 | 681 | 10.3 | 2 | - | 9 | - |
| LA,W | 1,820 | 12.0 | 669 | 9.0 | 1,062 | 12.5 | 42 | 19.0 | 47 | 25.0 |
| MS,N | 1,013 | 9.1 | 195 | 5.9 | 667 | 9.3 | 131 | 15.8 | 20 | 19.5 |
| MS,S | 3,500 | 14.7 | 2,133 | 14.9 | 1,313 | 14.7 | 6 | - | 48 | 21.0 |
| TX,N | 3,565 | 7.1 | 183 | 6.2 | 3,307 | 7.1 | 6 | - | 69 | 18.3 |
| TX,E | 1,834 | 10.3 | 378 | 7.5 | 1,268 | 10.5 | 132 | 13.8 | 56 | 16.1 |
| TX,S | 4,735 | 8.7 | 966 | 6.3 | 2,990 | 7.3 | 709 | 12.4 | 70 | 17.4 |
| TX,W | 2,192 | 9.4 | 573 | 8.7 | 1,544 | 9.7 | 23 | 12.7 | 52 | 18.7 |
| **6TH** | **22,027** | **9.5** | **3,784** | **6.9** | **14,845** | **9.1** | **3,130** | **13.8** | **268** | **22.3** |
| KY,E | 1,890 | 10.4 | 119 | 5.3 | 1,731 | 10.7 | 26 | 20.0 | 14 | 21.0 |
| KY,W | 1,291 | 10.5 | 232 | 7.5 | 908 | 10.3 | 134 | 15.0 | 17 | 20.0 |
| MI,E | 3,733 | 10.4 | 429 | 4.4 | 1,622 | 7.4 | 1,618 | 13.3 | 64 | 14.0 |
| MI,W | 1,040 | 9.7 | 173 | 6.9 | 833 | 10.6 | 18 | 16.8 | 16 | 14.0 |
| OH,N | 8,071 | 9.8 | 1,005 | 4.4 | 6,360 | 9.1 | 664 | 9.7 | 42 | 19.8 |
| OH,S | 2,303 | 11.6 | 961 | 8.5 | 1,014 | 12.9 | 300 | 14.6 | 28 | 28.0 |
| TN,E | 1,395 | 11.9 | 331 | 9.6 | 682 | 9.7 | 349 | 16.2 | 33 | 25.0 |
| TN,M | 1,367 | 11.7 | 166 | 11.7 | 1,168 | 11.7 | 4 | - | 29 | 23.0 |
| TN,W | 937 | 10.0 | 368 | 8.9 | 527 | 10.3 | 17 | 23.0 | 25 | 20.7 |
| **7TH** | **15,335** | **7.5** | **3,817** | **6.0** | **9,680** | **7.8** | **1,590** | **12.6** | **248** | **23.7** |
| IL,N | 8,144 | 6.5 | 2,232 | 6.3 | 5,206 | 5.6 | 596 | 12.4 | 110 | 24.0 |
| IL,C | 768 | 8.5 | 293 | 7.1 | 453 | 8.5 | 5 | - | 17 | 26.0 |
| IL,S | 939 | 9.0 | 299 | 6.9 | 592 | 9.0 | 27 | 17.4 | 21 | 20.5 |
| IN,N | 1,467 | 10.0 | 314 | 5.8 | 653 | 9.5 | 469 | 14.9 | 31 | 28.0 |
| IN,S | 2,436 | 11.0 | 424 | 5.4 | 1,754 | 11.4 | 229 | 14.6 | 29 | 24.0 |
| WI,E | 1,102 | 8.4 | 209 | 5.2 | 817 | 9.5 | 58 | 12.7 | 18 | 21.5 |
| WI,W | 479 | 5.3 | 46 | 1.0 | 205 | 4.3 | 206 | 7.2 | 22 | 11.0 |
| **8TH** | **13,212** | **9.7** | **5,076** | **7.8** | **6,715** | **9.1** | **1,079** | **12.5** | **342** | **20.7** |
| AR,E | 1,705 | 11.9 | 389 | 11.3 | 1,226 | 10.2 | 16 | 16.0 | 74 | 20.0 |
| AR,W | 999 | 11.2 | 16 | 6.5 | 940 | 11.3 | 11 | 12.3 | 32 | 13.0 |
| IA,N | 459 | 10.4 | 77 | 6.5 | 349 | 10.4 | 11 | 19.0 | 22 | 25.0 |
| IA,S | 708 | 11.9 | 86 | 8.8 | 451 | 9.9 | 148 | 15.2 | 23 | 20.0 |
| MN | 4,513 | 7.3 | 2,847 | 6.6 | 844 | 7.6 | 783 | 9.3 | 39 | 22.7 |
| MO,E | 1,749 | 9.9 | 576 | 8.4 | 1,115 | 9.8 | 7 | - | 51 | 20.5 |
| MO,W | 1,708 | 9.3 | 778 | 9.0 | 857 | 9.9 | 40 | 15.4 | 33 | 22.7 |
| NE | 809 | 7.8 | 25 | 1.0 | 691 | 6.8 | 50 | 19.2 | 43 | 21.0 |
| ND | 263 | 6.5 | 95 | 3.4 | 156 | 9.0 | 2 | - | 10 | 18.0 |
| SD | 299 | 11.1 | 187 | 10.4 | 86 | 10.0 | 11 | 20.0 | 15 | 21.0 |

## Table C-5. (March 31, 2005—Continued)

| Circuit and District | Total Cases | | No Court Action | | Court Action | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | | | | Before Pretrial | | During or After Pretrial | | Trial | |
| | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months |
| **9TH** | **31,311** | **8.4** | **10,437** | **6.1** | **18,505** | **8.0** | **1,862** | **13.1** | **507** | **23.4** |
| AK | 321 | 9.0 | 16 | 7.0 | 298 | 9.5 | - | - | 7 | - |
| AZ | 2,057 | 10.4 | 608 | 9.1 | 1,397 | 10.2 | 6 | - | 46 | 28.0 |
| CA,N | 4,291 | 9.4 | 1,670 | 5.1 | 1,094 | 8.0 | 1,464 | 12.7 | 63 | 23.0 |
| CA,E | 2,479 | 8.2 | 692 | 7.0 | 1,749 | 9.7 | 5 | - | 33 | 27.0 |
| CA,C | 10,470 | 7.7 | 4,847 | 6.6 | 5,538 | 7.1 | 135 | 17.8 | 150 | 20.9 |
| CA,S | 2,125 | 6.3 | 137 | 3.2 | 1,969 | 7.7 | - | - | 19 | 30.0 |
| HI | 686 | 10.3 | 305 | 8.4 | 276 | 9.8 | 82 | 14.0 | 23 | 26.0 |
| ID | 477 | 11.4 | 61 | 4.0 | 371 | 10.4 | 30 | 16.7 | 15 | 26.0 |
| MT | 511 | 11.7 | 114 | 9.2 | 281 | 9.2 | 93 | 18.7 | 23 | 26.0 |
| NV | 1,925 | 8.7 | 301 | 4.7 | 1,600 | 8.2 | - | - | 24 | 26.0 |
| OR | 1,854 | 10.3 | 545 | 8.1 | 1,247 | 11.5 | 13 | 18.0 | 49 | 23.2 |
| WA,E | 762 | 8.1 | 224 | 7.0 | 507 | 8.1 | 20 | 16.0 | 11 | 20.0 |
| WA,W | 3,268 | 8.1 | 1,102 | 7.6 | 2,116 | 9.5 | 12 | 19.0 | 38 | 18.8 |
| GUAM | 53 | 14.5 | 15 | 9.0 | 31 | 18.0 | 2 | - | 5 | - |
| NMI | 32 | 10.0 | - | - | 31 | 10.0 | - | - | 1 | - |
| **10TH** | **9,028** | **9.0** | **1,283** | **6.5** | **6,203** | **8.2** | **1,257** | **13.9** | **285** | **19.5** |
| CO | 2,201 | 8.4 | 28 | 2.2 | 1,857 | 7.8 | 224 | 20.1 | 92 | 26.0 |
| KS | 1,318 | 9.0 | 397 | 7.1 | 785 | 9.2 | 93 | 17.0 | 43 | 19.5 |
| NM | 1,334 | 10.7 | 77 | 6.8 | 773 | 9.0 | 435 | 12.4 | 49 | 18.0 |
| OK,N | 826 | 9.6 | 48 | 3.4 | 740 | 9.8 | 10 | 19.0 | 28 | 21.5 |
| OK,E | 490 | 8.0 | 95 | 5.6 | 350 | 8.9 | 26 | 10.4 | 19 | 13.7 |
| OK,W | 1,347 | 8.1 | 498 | 5.4 | 493 | 8.4 | 331 | 10.1 | 25 | 15.0 |
| UT | 1,215 | 11.4 | 24 | 7.0 | 1,158 | 11.5 | 18 | 17.0 | 15 | 25.0 |
| WY | 297 | 9.0 | 116 | 6.3 | 47 | 8.0 | 120 | 11.3 | 14 | 13.5 |
| **11TH** | **20,928** | **8.2** | **2,836** | **7.7** | **16,573** | **8.1** | **1,176** | **13.6** | **343** | **18.8** |
| AL,N | 3,168 | 7.5 | 658 | 10.7 | 2,444 | 6.9 | 36 | 20.0 | 30 | 17.0 |
| AL,M | 902 | 9.9 | 254 | 6.0 | 600 | 10.0 | 25 | 13.5 | 23 | 17.0 |
| AL,S | 720 | 8.9 | 153 | 6.8 | 532 | 8.7 | 21 | 16.0 | 14 | 15.5 |
| FL,N | 847 | 8.1 | 174 | 6.4 | 652 | 8.0 | 15 | 13.0 | 6 | - |
| FL,M | 5,468 | 8.9 | 622 | 6.6 | 4,685 | 8.1 | 63 | 16.6 | 98 | 19.2 |
| FL,S | 4,995 | 6.0 | 108 | 3.6 | 4,446 | 6.9 | 347 | 11.8 | 94 | 17.8 |
| GA,N | 3,565 | 9.0 | 701 | 6.3 | 2,163 | 9.0 | 651 | 13.4 | 50 | 25.0 |
| GA,M | 753 | 11.6 | 128 | 7.2 | 601 | 11.4 | 6 | - | 18 | 22.5 |
| GA,S | 510 | 9.5 | 38 | 9.3 | 450 | 9.1 | 12 | 11.0 | 10 | 15.0 |

NOTE: MEDIAN TIME INTERVALS NOT COMPUTED WHEN FEWER THAN 10 CASES REPORTED. THIS TABLE EXCLUDES LAND CONDEMNATIONS, PRISONER PETITIONS, DEPORTATION REVIEWS, RECOVERY OF OVERPAYMENTS, AND ENFORCEMENT OF JUDGMENTS. FOR FISCAL YEARS PRIOR TO 2001, THIS TABLE INCLUDED DATA ON RECOVERY OF OVERPAYMENTS AND ENFORCEMENT OF JUDGMENTS.

## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| Block Drug Company, Inc., | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | NO. 06-350-KAJ |
| | : | |
| Sedona Laboratories, Inc. and | : | |
| Nutri-Health Supplements, LLC | : | |
| d/b/a Sedona Laboratories, | : | |
| | : | |
| Defendants. | : | |

## DECLARATION OF THOMAS A. CONNELLY

I, Thomas A. Connelly, declare as follows:

1.        I am an attorney with the law firm Jaburg & Wilk, P.C., and am licensed to practice in the State of Arizona and am a member of the bar of that Court.  I am an attorney for Defendant Nutri-Health Supplements, LLC d/b/a Sedona Labs ("NHS").  I am competent to and would testify to the facts stated in this Declaration, all of which facts are known by me to be true.

2.        Ms. Tracy King is the President of NHS, and has provided this firm with certain business records of NHS.

3.        NHS employs forty (40) people in the in manufacture and distribution of over-the-counter digestive products and nutritional supplements for consumer use, including the product at issue here, which NHS commonly refers to as GasAway+™.

4.        For the fiscal year ending December 31, 2005, NHS realized slightly more than $900,000.00 in profit on $7.8 million in total revenue, based on sales of all of its products.

5.        NHS's only manufacturing plant is located in Cottonwood, Arizona.  NHS distributes its products, including GasAway+™, from Arizona through a network of wholesalers, retailers, natural health stores, pharmacies, distributors and brokers, none of whom, to the best of NHS's knowledge, are residents of or located in Delaware.

6.      All sales of any NHS products are subject to review, approval and acceptance by NHS in Arizona.

7.      NHS has no salaried or commissioned employees or contractors in Delaware. The majority of NHS's potential trial witnesses are Arizona residents.  None are Delaware residents.  All of the relevant documents and records in NHS's possession are located in Arizona.

8.      Plaintiff, through its counsel, has expressed a willingness to subject itself to the jurisdiction of the Arizona courts and litigate this matter in Arizona.  *See* **Exhibit A**.

9.      None of the witnesses identified by Plaintiff in its initial Rule 26 disclosure statement are identified as Delaware residents.  *See* **Exhibit B**.

10.      Sedona Labs, Inc. is not related to NHS.  They are separate and distinct legal entities, with no overlap in management or directors.

11.      Counsel for Sedona Labs, Inc. has informed Roger Cohen, counsel for NHS and a member of Jaburg & Wilk, P.C., that Sedona Labs, Inc. and Plaintiff have reached a settlement whereby the claims against Sedona Labs, Inc. will be dismissed and Sedona Labs, Inc. will be dismissed as a party to this lawsuit.

I declare (or certify, verify or state) under penalty of perjury that the foregoing is true and correct.

Executed this 17<u>th</u> day of November 2006 in Phoenix, Arizona.

_____
Thomas A. Connelly

# EXHIBIT A

**Thomas A. Connelly**

| | |
|---|---|
| **From:** | Michelle C. Lombino |
| **Sent:** | Friday, November 17, 2006 12:56 PM |
| **To:** | Thomas A. Connelly |
| **Subject:** | FW: Arizona Reply Brief |

**Importance:** High


-----Original Message-----
From: David.Greenbaum@weil.com [mailto:David.Greenbaum@weil.com]
Sent: Friday, October 27, 2006 2:08 PM
To: Michelle C. Lombino; Roger L. Cohen
Cc: Sid Leach
Subject: Arizona Reply Brief

Hi Michelle:

Please let us know if Sid Leach has your permission to sign your (or
Roger's) name to the attached stipulation extending the deadline for Block Drug to file
its Reply by one week to Friday, Nov. 3.

Our plan is to file before next Friday a stipulation reflecting the parties' agreement
that we stay the briefing in Arizona and consent to litigate in Arizona if the Delaware
Court dismisses our complaint.

However that stipulation is longer to draft; a stipulation extending the Reply deadline is
easiest for now. (I had mistakenly thought the Reply was due on Monday, but it seems that
the deadline is today and we need to get a stipulation on file today.)

Thank you,
David


-----------------------------------------
The information contained in this email message is intended only for use of the individual
or entity named above. If the reader of this message is not the intended recipient, or the
employee or agent responsible to deliver it to the intended recipient, you are hereby
notified that any dissemination, distribution or copying of this communication is strictly
prohibited. If you have received this communication in error, please immediately notify us
by email (postmaster@weil.com), and destroy the original message. Thank you

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

BLOCK DRUG COMPANY, INC.,           )
                                     )
                Plaintiff,           )
                                     )
        v.                           )       C.A. No. 06-350-KAJ
                                     )
SEDONA LABORATORIES, INC., and       )
NUTRI-HEALTH SUPPLEMENTS, LLC        )
d/b/a SEDONA LABORATORIES,           )
                                     )
                Defendants.          )
                                     )

## PLAINTIFF'S INITIAL DISCLOSURES PURSUANT TO FED. R. CIV. P. 26(a)(1)

Pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure, plaintiff Block

Drug Company, Inc. ("Block Drug"), by and through its undersigned attorneys, hereby provides

the following initial disclosures. Block Drug expressly reserves all rights to modify, amend or

otherwise supplement the initial disclosures set forth below in light of additional investigation,

information and developments in this case. By making these initial disclosures, Block Drug does

not represent that it is identifying every document, tangible thing, or witness possibly relevant to

this lawsuit. Rather, Block Drug's initial disclosures represent a good faith effort to identify

information it reasonably believes is required by Fed. Civ. P. 26(a)(1).

Block Drug's initial disclosures are made without waiving the right to object to

production of any document or tangible thing disclosed on the grounds of competency, privilege,

relevancy and materiality, hearsay, undue burden, or any other proper ground; the right to object

to the use of any such information, for any purpose, in whole or in part, in any subsequent

proceeding in this action or any other action; or the right to object on any and all grounds, at any

time, to any other discovery request or proceeding involving or relating to the subject matter of these disclosures.

### A.     Identification of Witnesses

Pursuant to Fed. R. Civ. P. 26(a)(1)(A), and based upon its investigations to date, Block Drug identifies the following individuals and the subjects of information as to which each individual is likely to have discoverable information.

Block Drug does not consent to or authorize any communications with Block Drug's current and former employees or agents, which are prohibited by applicable rules of professional conduct, invade areas of privilege, or are outside the discovery methods provided for in the Federal Rules of Civil Procedure.

| **Person** | **Subject of Information** |
| --- | --- |
| **Fred Auzenne** | Infringement of U.S. Patent No. 6,344,196 ("the '196 patent") and damages |
| **Tracy King** | Infringement of the '196 patent and damages |
| **Ellen Stewart** | Infringement of the '196 patent and damages |
| **Mairi Ross** | Infringement of the '196 patent and damages |
| **Tad Stewart** | Infringement of the '196 patent and damages |
| **Mike Howell** | Infringement of the '196 patent |
| **Sharon Cogan** | Damages |
| **Jim Angus** | Infringement of the '196 patent and damages |
| **Alan Lemisch** | Infringement of the '196 patent and damages |
| **Kwan Jin** | Infringement of the '196 patent and damages |
| **Darren Singer** GlaxoSmithKline 1500 Littleton Road - PS1000 Parsippany, NJ 07054 | Commercial success of the patented invention and Block Drug's damages |

| Person | Subject of Information |
|--------|------------------------|
| **Alan E. Kligerman** (represented by counsel for Block Drug)<br>AKPharma Inc.<br>6840 Old Egg Harbor Road<br>Pleasantville, NJ 08232<br>609-645-5100 | The invention of the '196 patent |

### B.    Identification of Documents

Pursuant to Fed. R. Civ. P. 26(a)(1)(B), and based upon its investigations to date, Block Drug has identified the following categories of documents that tend to support Block Drug's positions in this case:

1.    Documents relating to the development of the patented invention;

2.    Documents relating to the prosecution of the '196 patent;

3.    Documents relating to the commercial success of the patented invention and Block Drug's damages.

These documents are located at GlaxoSmithKline, 1500 Littleton Road, Parsippany, NJ 07054 and the offices of its attorneys, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, NY 10153.  Block Drug will provide copies of such documents located to date once the parties have reached agreement on suitable confidentiality provisions, and a stipulated protective order has been entered in this case.

### C.    Damages

Pursuant to Fed. R. Civ. P. 26(a)(1)(C), and based upon its investigations to date, Block Drug claims damages measured by the lost profits it would have made but for the defendants' infringement of the '196 patent.  Information relevant to the computation of these damages is in the possession, control and custody of the defendants, and Block Drug is unable to quantify its damages with particularity until such time as it is provided with complete and

3

accurate information as to the revenues, costs, expenses, and net profits associated with the sale

of the infringing products. Additionally, Block Drug demands that the defendants be

permanently enjoined from infringing the '196 patent.

### D. Insurance Agreements

Block Drug is not aware of any insurance agreement under which any person

carrying on an insurance business may be liable to satisfy part or all of a judgment which may be

entered in this action or to indemnify or reimburse for payments made to satisfy any such

judgment.

ASHBY & GEDDES

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888

*Attorneys for Plaintiff*

*Of Counsel:*

Steven D. Glazer
David Greenbaum
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
(212) 310-8000

Dated: November 16, 2006
175260.1

## CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of November, 2006, the attached **PLAINTIFF'S**

**INITIAL DISCLOSURES PURSUANT TO FED. CIV. P. 26(a)(1)** was served upon the

below-named counsel of record at the addresses and in the manner indicated:

| | |
|---|---|
| John W. Shaw, Esquire<br>Young Conaway Stargatt & Taylor<br>The Brandywine Building<br>1000 West Street, 17th Floor<br>Wilmington, DE 19801 | HAND DELIVERY |
| David B. Goldstein, Esquire<br>Hymson Goldstein & Pantiliat, P.C.<br>14646 N. Kierland Boulevard<br>Suite 255<br>Scottsdale, AZ 85254 | VIA FEDERAL EXPRESS |
| David S. Eagle, Esquire<br>Klehr, Harrison, Harvey, Branzburg & Ellers<br>919 Market Street, Suite 1000<br>Wilmington, DE 19801 | HAND DELIVERY |
| Roger L. Cohen, Esquire<br>Jaburg & Wilk, P.C.<br>3200 N. Central Ave., Ste. 2000<br>Phoenix, AZ 85012 | VIA FEDERAL EXPRESS |

Tiffany Geyer Lydon

173515.1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

BLOCK DRUG COMPANY, INC.,                    )
                                             )
                    Plaintiff,               )
                                             )
          v.                                 )        C.A. No. 06-350-KAJ
                                             )
SEDONA LABORATORIES, INC., and               )
NUTRI-HEALTH SUPPLEMENTS, LLC                 )
d/b/a SEDONA LABORATORIES,                    )
                                             )
                    Defendants.               )
                                             )

## NOTICE OF SERVICE

The undersigned hereby certifies that on the 16th day of November, 2006, copies of

**PLAINTIFF'S INITIAL DISCLOSURES PURSUANT TO FED. R. CIV. P. 26(a)(1)** were

served upon the following counsel of record at the address and in the manner indicated:

John W. Shaw, Esquire                              HAND DELIVERY
Young Conaway Stargatt & Taylor
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE  19801

David B. Goldstein, Esquire                        VIA FEDERAL EXPRESS
Hymson Goldstein & Pantiliat, P.C.
14646 N. Kierland Boulevard
Suite 255
Scottsdale, AZ  85254

David S. Eagle, Esquire                            HAND DELIVERY
Klehr, Harrison, Harvey, Branzburg & Ellers
919 Market Street
Suite 1000
Wilmington, DE  19801

Roger L. Cohen, Esquire
Jaburg & Wilk, P.C.
3200 N. Central Ave., Ste. 2000
Phoenix, AZ  85012

<u>VIA FEDERAL EXPRESS</u>

ASHBY & GEDDES

*/s/ Tiffany Geyer Lydon*
_____

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for Plaintiff*

*Of Counsel:*

Steven D. Glazer
David Greenbaum
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
(212) 310-8000

Dated:  November 16, 2006

173516.1

## CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of November, 2006, the attached **NOTICE OF**

**SERVICE** was served upon the below-named counsel of record at the addresses and in the

manner indicated:

John W. Shaw, Esquire                                        <u>HAND DELIVERY</u>
Young Conaway Stargatt & Taylor
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE  19801

David B. Goldstein, Esquire                                 <u>VIA FEDERAL EXPRESS</u>
Hymson Goldstein & Pantiliat, P.C.
14646 N. Kierland Boulevard
Suite 255
Scottsdale, AZ  85254

David S. Eagle, Esquire                                      <u>HAND DELIVERY</u>
Klehr, Harrison, Harvey, Branzburg & Ellers
919 Market Street
Suite 1000
Wilmington, DE  19801

Roger L. Cohen, Esquire                                      <u>VIA FEDERAL EXPRESS</u>
Jaburg & Wilk, P.C.
3200 N. Central Ave., Ste. 2000
Phoenix, AZ  85012

*/s/ Tiffany Geyer Lydon*
_____
Tiffany Geyer Lydon

**Discovery Documents**

1:06-cv-00350-KAJ Block Drug Company, Inc. v. Sedona Laboratories Inc.

MEDIATION, PATENT, PaperDocuments

**U.S. District Court**

**District of Delaware**

## Notice of Electronic Filing

The following transaction was entered by Lydon, Tiffany on 11/16/2006 at 3:18 PM EST and filed on 11/16/2006

**Case Name:**    Block Drug Company, Inc. v. Sedona Laboratories Inc.

**Case Number:**    1:06-cv-350

**Filer:**    Block Drug Company, Inc.

**Document Number:** 36

**Docket Text:**

NOTICE OF SERVICE of Plaintiff's Initial Disclosures Pursuant to Fed. R. Civ. P. 26(a)(1) by Block Drug Company, Inc..(Lydon, Tiffany)

**1:06-cv-350 Notice has been electronically mailed to:**

Steven J. Balick    sbalick@ashby-geddes.com, dfioravanti@ashby-geddes.com, dharker@ashby-geddes.com, jday@ashby-geddes.com, lmaguire@ashby-geddes.com, mkipp@ashby-geddes.com, nlopez@ashby-geddes.com, tlydon@ashby-geddes.com

Chad H. Conelly    chc@legalcounselors.com

Patrick Andrew Costello    pcostell@klehr.com

John G. Day    jday@ashby-geddes.com, dfioravanti@ashby-geddes.com, dharker@ashby-geddes.com, lmaguire@ashby-geddes.com, mkipp@ashby-geddes.com, nlopez@ashby-geddes.com, sbalick@ashby-geddes.com, tlydon@ashby-geddes.com

David S. Eagle    deagle@klehr.com

David B. Goldstein    dbg@legalcounselors.com

Karen Elizabeth Keller    kkeller@ycst.com, corpcal@ycst.com, corporate@ycst.com

John W. Shaw    jshaw@ycst.com, corpcal@ycst.com, corporate@ycst.com, ptorterotot@ycst.com

**1:06-cv-350 Notice has been delivered by other means to:**

The following document(s) are associated with this transaction:

https://ecf.ded.uscourts.gov/cgi-bin/Dispatch.pl?380430895751103    11/16/2006

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=11/16/2006] [FileNumber=303412-0
] [096ea052d8674651f8aab7e5ae843094a276795d7d6ab01a25daafa91423574d6e4
59b3e263aa82e8d1550cab3de798c10e17bea40ee67615b928f7ec3164ada]]

## CERTIFICATE OF SERVICE

I, Patrick A. Costello, hereby certify that on November 17, 2006, I caused a copy of the foregoing *Motion to Reconsider, Memorandum of Points and Authorities in Support of Nutri-Health Supplements LLC's Motion to Reconsider, the Exhibits to the Memorandum in Support, and the Declaration of Thomas A. Connelly* to be served on the following counsel of record in the manner indicated:

### VIA ELECTRONIC FILING and HAND DELIVERY

Steven J. Balick, Esq.
John G. Day, Esq.
Tiffany Geyer Lydon, Esq.
ASHBY & GEDDES
222 Delaware Ave., 17th Floor
P.O. Box 1150
Wilmington, DE  19899

John W. Shaw, Esquire
Karen E. Keller, Esquire
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
P. O. Box 391
Wilmington, DE   19899-0391

*/s/ Patrick A. Costello*
Patrick A. Costello, Esquire (DE Bar No. 4535)
919 Market Street, Suite 1000
Wilmington, DE  19801-3062
Telephone (302) 426-1189
Fax: (302) 426-9193
*pcostello@klehr.com*