IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| Block Drug Company, Inc., : | |
| : | |
| Plaintiff, : | |
| : | CIVIL ACTION |
| v. : | NO. 06-350-KAJ |
| : | |
| Sedona Laboratories, Inc. and : | |
| Nutri-Health Supplements, LLC : | |
| d/b/a Sedona Laboratories, : | |
| : | |
| Defendants. : | |

**SEPARATE ANSWER TO SECOND AMENDED COMPLAINT AND
COUNTERCLAIM AND DEMAND FOR JURY TRIAL
OF NUTRI-HEALTH SUPPLEMENTS, LLC**

For its Answer to the Second Amended Complaint, Defendant Nutri-Health Supplements, LLC ("NHS") admits, denies and alleges:

Nature of the Action

1. NHS admits the allegations of paragraph 1.

Jurisdiction and Venue

2. NHS admits the allegations of paragraph 2.

3. NHS denies the allegations of paragraph 3.

Parties

4. NHS admits the allegations of paragraph 4.

5. Answering paragraph 5, NHS denies that the principal place of business of defendant Sedona is at the address alleged. NHS admits the remaining allegations of paragraph 5.

6. Answering paragraph 6, NHS denies that the principal place of business of NHS is 211 Jennifer Lane, and admits the remaining allegations of paragraph 6.

7. NHS lacks sufficient information to form a belief as to the allegations of paragraph 7 pertaining to defendant Alan Lemisch and therefore denies same.

DEL1 66070-1

8. NHS lacks sufficient information to form a belief as to the allegations of paragraph 8 pertaining to defendant Kwan Sung Jin and therefore denies same.

9. Answering paragraph 9, NHS admits that Fred Auzenne is the Chief Executive Officer of NHS, and denies the remaining allegations of paragraph 9.

10. Answering paragraph 10, NHS admits that Tracy King is the President of NHS, and denies the remaining allegations of paragraph 10.

11. Answering paragraph 11, NHS admits that NHS has manufactured and distributed certain over-the-counter digestive products and nutritional supplements for consumer use and further admits that NHS has sold certain of its products to Eckard, and denies that defendants Auzenne and King manufactured and distributed certain over-the-counter digestive products and nutritional supplements for consumer use or sold products to Eckard. NHS lacks sufficient information to form a belief as to the allegations of paragraph 11 pertaining to defendants Sedona, Lemisch, and Jin, and Eckerd and therefore denies same. NHS denies the remaining allegations of paragraph 11.

12. NHS lacks sufficient information to form a belief as to the allegations of paragraph 12 pertaining to defendants Sedona, Lemisch, and Jin and therefore denies same. Further answering paragraph 12, NHS denies the allegations insofar as they pertain to Auzenne and King, and affirmatively alleges that NHS's right to approve the private label on its product was limited ensuring that the label did not misrepresent the product and that it complied with applicable federal and state labeling laws and regulations. Subject to the foregoing, NHS admits the allegations of paragraph 12 pertaining to NHS.

13. NHS lacks sufficient information to form a belief as to the allegations of paragraph 13 pertaining to defendants Sedona, Lemisch, and Jin, and therefore denies same. NHS denies that a copy of NHS's web site is attached to the Second Amended Complaint and denies each and every allegation of paragraph 13 pertaining to NHS, Auzenne, and King.

14. NHS lacks sufficient information to form a belief as to the allegations of paragraph 14 pertaining to defendants Sedona, Lemisch, and Jin, and therefore denies same. NHS denies each and every allegation of paragraph 14 pertaining to NHS, Auzenne, and King.

### Claim for Patent Infringement

15. Answering paragraph 15, NHS admits only that the '196 Patent is registered in the name of Block Drug and reserves all defenses to enforcement and claims to the invalidity thereof.

16. NHS lacks sufficient information to form a belief as to the allegations of paragraph 16 and therefore denies same.

17. NHS lacks sufficient information to form a belief as to the allegations of paragraph 17 pertaining to defendants Sedona, Lemisch, and Jin, and therefore denies same. Further answering paragraph 17, NHS admits that it has manufactured and sold a Product containing alpha-galactosidase and affirmatively alleges that NHS's marketing materials pertaining to the Product speak for themselves. Subject to the foregoing, NHS denies each and every allegation of paragraph 17 pertaining to NHS, Auzenne, and King.

18. NHS denies each and every allegation of paragraph 18.

19. NHS denies each and every allegation of paragraph 19.

20. NHS lacks sufficient information to form a belief as to the allegations of paragraph 20 pertaining to defendants Lemisch, and Jin, and therefore denies same. NHS denies each and every allegation of paragraph 20 pertaining to Auzenne, and King.

21. NHS lacks sufficient information to form a belief as to the allegations of paragraph 21 pertaining to defendants Lemisch, and Jin, and therefore denies same. NHS denies each and every allegation of paragraph 21 pertaining to Auzenne, and King.

22. NHS denies each and every allegation of paragraph 22.

23. NHS denies each and every allegation of paragraph 23.

24. NHS denies each and every allegation of paragraph 24.

Affirmative Defenses

25. As an affirmative defense, NHS alleges that this Court lacks *in personam* jurisdiction over NHS.

26. As an additional affirmative defense, NHS alleges that venue is improper in this District.

27. As an additional affirmative defense, NHS alleges that its Product does not infringe upon the '196 Patent in that, among other things, the formula of the Patent is outside of the scope of the Claims of the '196 Patent.

28. As an additional affirmative defense, NHS alleges that the '196 Patent is invalid for obviousness.

29. As an additional affirmative defense, NHS alleges that the '196 Patent is invalid for inequitable conduct on the part of the applicant.

30. As an additional affirmative defense, NHS alleges that the '196 Patent is invalid for having been procured by fraud on the U.S. Patent and Trademark Office, as more specifically set forth in the attached Counterclaim.

31. As additional affirmative defenses, NHS alleges waiver, estoppel, unclean hands, laches and all other matters constituting an avoidance or affirmative defense under Rule 8(c), Federal Rules of Civil Procedure.

32. NHS is entitled to recover its reasonable attorney fees incurred in this matter.

WHEREFORE, NHS requests that the Second Amended Complaint be dismissed and Plaintiff take nothing thereby and that NHS be awarded its costs and reasonable attorney fees incurred herein, and that the Court grant such other and further relief as is proper and just.

## COUNTERCLAIM

For its Counterclaim, NHS alleges as follows:

Nature of the Action

1. This is an action seeking declaratory judgment that: (a) a nutritional supplement containing the enzyme alpha-galactosidase manufactured and sold by NHS does not infringe

U.S. Patent No. 6,344,196 ("the '196 Patent"), entitled "Compositions and Method for Reducing Gastro-intestinal Distress Due to Alpha-D-Galactosidase-Linked/Containing Sugars," which issued on February 5, 2002, and (b) the '196 Patent is invalid, unenforceable, and void for failure to comply with the provisions of 35 U.S.C. §§ 101, et. seq.

### Jurisdiction and Venue

2. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§1331, 1338(a), and 2201 et. seq.

3. Pleading in the alternative to NHS's denials and affirmative defenses set forth above, venue is proper in this District pursuant to 28 U.S.C. §§1391 (b)(2), and (c).

### Parties

4. NHS is an Arizona limited liability company, with its principal place of business in Cottonwood, Arizona.

5. Upon information and belief, Defendant Block Drug Company, Inc. ("Block") is a corporation organized under the laws of the State of New Jersey, and wholly owned by GlaxoSmithKline plc, U.K. ("Glaxo").

6. Upon information and belief, Block is and was at all relevant times the owner of the '196 Patent, and either itself or through Glaxo, engaged in the manufacture, sale and distribution of over-the-counter drug products, including a dietary supplement containing the enzyme alpha-galactosidase. Block sells products throughout the United States, including Arizona, and regularly ships such products within the United States in interstate commerce.

7. NHS and Block Drug are competitors in the manufacture and sale of dietary supplements containing the enzyme alpha-galactosidase.

8. In January 2006, NHS acquired all rights and interest of Sedona Laboratories in a product (the "Sedona/NHS Product") containing the alpha-galactosidase enzyme, and since has manufactured and offered for sale the Sedona/NHS Product.

9. In the present action, Block Drug alleges that the Sedona/NHS Product infringes the '196 Patent.

10. There is a substantial and continuing justiciable controversy as to Block Drug's right to maintain suit for infringement of the '196 Patent, as to the validity, enforceability and scope of the '196 Patent, and as to whether the Sedona/NHS Product infringes any valid claim of the '196 Patent.

## General Allegations

### The Sedona/NHS Product.

11. The Sedona/NHS Product is a proprietary enzyme blend, containing alpha-galactosidase, for the aiding of digestion. The Sedona/NHS Product is sold in a two-piece capsule form. Each capsule contains 150 GAlU of alpha-galactosidase, 140 SU of invertase, and trace amounts of hemicellulase, beta-glucanase, and phytase. The two-piece capsule is made from gelatin and rice starch.

12. The instructions printed on the packaging for the Sedona/NHS Product provide: "One capsule per serving of gassy food at the beginning of the meal. A typical meal consists of 2 to 3 servings of food. For best results you may have to adjust the number of capsules according to the number of servings of problem food that you eat."

### Prosecution History of the '196 Patent.

13. The '196 Patent claims priority to an application filed with the United States Patent Office ("USPTO") on May 16, 1989, which is the parent application for a string of six applications that ultimately resulted in the issuance of the '196 Patent over 12 years later. The six applications are as follows: (i) U.S. Patent Application 07/352,441 filed May, 16, 1989 (the "1989 Application"), (ii) U.S. Patent Application 07/780,563 filed on October 21, 1991, (iii) U.S. Patent Application 08/183,639, filed January 18, 1994, (iv) U.S. Patent Application 08/487,871, filed June 7, 1995 (the "1995 Application"), (v) U.S. Patent Application 09/444,855, filed on November 22, 1999, and (vi) U.S. Patent Application 09/634,088, filed August 8, 2000 (the "2000 Application").

14. On November 23, 1999, the USPTO issued U.S. Patent No. 5,989,544 (the '544 Patent") based on the 1995 Application.

DEL1 66070-1

15. The 1995 Application is the only other of the six applications to result in the issuance of a patent.

16. The 2000 Application adds four new independent claims, each of which focuses on a claimed new form of delivery of alpha-galactosidase "in tablet, capsule, similarly shaped pill, or solid ingestible form."

17. On October 11, 2000, in connection with its 2000 Application, the applicant ("Applicant") filed with the USPTO a petition to make special (the "Petition to Make Special") under 37 C.F.R. § 1.102, requesting that the 2000 Application be advanced out of turn for examination because of alleged actual infringement of the claimed invention. The Petition to Make Special included a declaration that a careful and thorough search of the prior art had been made, and all references to the prior art were submitted with the 2000 Application on August 8, 2000. As evidenced by Applicant's subsequent actions, its statements concerning the prior art are false.

18. On April 2, 2001, Applicant filed a second preliminary amendment (the "Second Preliminary Amendment") with the USPTO.

19. In the Second Preliminary Amendment, Applicant first discloses the existence of U.S. Patent No. 5,179,023 (the "'023 Patent"). The Second Preliminary Amendment also contains four additional references which were not included in the 2000 Application.

20. The '023 Patent discloses the use of alpha-galactosidase A formulated into a conventional dosage form, including tablets and capsules, for oral administration for the purpose of replacement enzyme therapy in the treatment of Fabry disease.

21. Applicant acknowledges in the Second Preliminary Amendment that the application for the '023 Patent was filed before the earliest effective filing date of the 1989 Application, and admits that the application for the '023 Patent was cited in a May 6, 1992, European search report related to Applicant's prosecution of the European application that corresponds to the 1989 Application. Applicant therefore was aware of the application for the

'023 Patent for ten years before it filed the 2000 Application and yet failed to include it in the 2000 Application.

22.    The USPTO granted the Petition to Make Special on April 12, 2001, just ten days after the Second Preliminary Amendment was filed.

23.    The USPTO did not consider Applicant's belated citation of the '023 Patent, and the other four references in the Second Preliminary Amendment prior to granting the Petition to Make Special, but instead first considered these citations on June 29, 2001, ten weeks after the Petition to Make Special was granted.

24.    The Applicant associated with the filing or prosecution of the 2000 Application, including the inventor named in the Application, each attorney or agent who prepared or prosecuted the Application, every person involved in the preparation or prosecution of the Application and who was associated with the inventor, with the assignee, or with anyone to whom there is an obligation to assign the Application, breached their duty of good faith and candor to the USPTO, in violation of 37 C.F.R. §1.56, by among other things, affirmatively misrepresenting, and failing to disclose material facts to the USPTO, and submitting to the USPTO false material information including, but not limited to, Applicant's failure to provide evidence of commercial success with respect to a capsule or similarly shaped pill for containing the alpha-galactosidase, and failing to timely disclose the '023 Patent to the USPTO at the time of filing the Petition to Make Special while simultaneously representing in the Make Special Petition that a careful and thorough search of the prior art was made and that the prior art references were submitted to the USPTO simultaneously with the 2000 Application.

COUNT ONE<br>(Non-Infringement)

25.    NHS repeats and realleges all of the prior allegations as if set forth at length.

26.    The '196 Patent is directed to reducing gastric distress in mammals due to ingestion of solid food containing alpha-D-galactoside-linked sugars and includes 26 claims, four of which are independent, i.e., claims 1, 12, 13 and 16. The independent claims either relate to a

method, composition, or kit that includes a capsule or similarly shaped pill in ingestible form and containing an amount of alpha-galactosidase effective to hydrolyze the sugars in vivo to their simplest absorbable constituents.

27. The specifications for the '196 Patent indicate that an effective amount of alpha-galactosidase to perform the function of hydrolyzing the alpha-D-galactoside-linked sugars to their simplest form is between 675 and 2,250 GalU of alpha-galactosidase.

28. Each of the independent claims clearly indicates that the effective amount of alpha-galactosidase (i.e., between 675 GalU and 2,250 GalU) is contained in a single capsule or similarly shaped pill. The specification and prosecution history of the '196 Patent do not provide any contrary interpretation of this portion of the independent claims. Hence, independent claims 1, 12, 13 and 16 are limited to a single capsule or similarly shaped pill containing between 675 GalU and 2,250 GalU of alpha-galactosidase to hydrolyze the sugars in vivo to their simplest absorbable constituents.

29. The Sedona/NHS Product does not include a single capsule containing between 675 GalU and 2,250 GalU of alpha-galactosidase. Instead, a single capsule of the Sedona/NHS Product includes only 150 GalU, which is outside the range of the effective amount of 675 GalU to 2,250 GalU set forth in the independent claims of the '196 Patent. The result of ingesting a single capsule of the Sedona/NHS Product containing 150 GalU will not produce substantially the same result as ingestion of a single capsule of alpha-galactosidase containing 675 GalU, as is required in the claims of the '196 Patent.

30. Based on the foregoing, the '196 Patent is not infringed by the Sedona/NHS Product, entitling NHS to entry of declaratory judgment that the Sedona/NHS Product does not infringe the '196 Patent.

### COUNT TWO
(Invalidity and Unenforceability Based on Obviousness)

31. NHS repeats and realleges all of the prior allegations as if set forth at length.

32. In establishing non-obviousness of its claimed invention based on commercial success, Applicant was required to provide evidence that commercial success is attributed specifically to the feature that is the subject of the patent claim.

33. In allowing the claims of the '196 Patent, the examiner (the "Examiner") of the 2000 Application declared that the claims of the 2000 Application are the same as the claims in the '544 Patent, "with the exception of the change in the description of the ingestible form as being a 'capsule or similarly shaped pill.'" The Examiner also noted that the evidence presented for the '544 Patent was drawn to the commercial success and unexpected result of a solid, shaped formulation such as capsule or tablet, and was deemed by the examiner of the 1995 Application to be sufficient indicia of non-obviousness to overcome a prima facie finding of obviousness, and deemed the language of the claims of the 2000 Application to be commensurate with the showing in the 1995 Application, and therefore allowable over the prior art.

34. In fact, Applicant failed to provide sufficient evidence of non-obviousness.

35. Neither the 2000 Application nor any of its parent cases include any evidence whatsoever of commercial success directed to either a capsule (much less a two-piece capsule) or a similarly shaped pill containing alpha-galactosidase, which are the claimed features of the 2000 Application and '196 Patent.

36. During the prosecution of the parent cases of the '196 Patent, the only evidence of commercial success was limited to that pertaining to liquid drops and capsules. Hence, all of the presented commercial success evidence was directed to features unclaimed by the 2000 Application, and the '196 Patent.

37. Based on the foregoing, the alleged invention that is the subject of the '196 Patent is not new, novel or original, and the '196 Patent is invalid as a result of Applicant's failure to provide sufficient evidence of non-obviousness.

COUNT THREE
(Invalidity and Unenforceability Based on Inequitable Conduct)

38. NHS repeats and realleges all of the prior allegations as if set forth at length.

39. Applicant, with intent to mislead or deceive the Examiner, failed to disclose material information, and submitted materially false information to the USPTO during prosecution of the '196 Patent.

40. The Petition to Make Special succeeded in expediting the USPTO's examination of the 2000 Application, and so, all statements made by Applicant in the Petition to Make Special are material as a matter of law.

41. In the Petition to Make Special, Applicant declared that a "careful and thorough search of the prior art has been made, and the references were submitted with the application on the filing date of August 8, 2000."

42. The '023 Patent discloses an enzyme called alpha-galactosidase A, which can be administered in hard or soft shell gelatin capsules or tablets, or incorporated directly with food for treating Fabry disease. The disclosure of hard and soft gelatin capsules or tablets as delivery methods of alpha-galactosidase is relevant to Applicant's claims of patentability of a capsule or similarly shaped pill as a delivery method of alpha-galactosidase.

43. The '023 Patent is material to the patentability of the '196 Patent.

44. Applicant failed to disclose the '023 Patent and four other references in its Petition to Make Special.

45. As set forth above, Applicant acknowledges in the Second Preliminary Amendment that the application for the '023 Patent was filed before the earliest effective filing date of the 1989 Application, and admits that the application for the '023 Patent was of record in the prosecution of the European application that corresponds to the 1989 Application. Applicant therefore was aware of the application for the '023 Patent for ten years before it filed the 2000 Application, and yet failed to disclose it in the 2000 Application.

46. Based on the foregoing, Applicant intentionally failed to disclose to the USPTO the '023 Patent and four additional references.

DEL1 66070-1

47.  Applicant engaged in inequitable conduct by intentionally misleading the Examiner by failing to disclose material information (i.e., the '023 Patent and the four additional references) upon filing of the Petition to Make Special.

48.  Applicant intentionally misled the USPTO by affirmatively misrepresenting in the Petition to Make Special that all of the relevant references were submitted upon the filing of the 2000 Application, when in fact the '023 Patent was withheld.

49.  The balance of the levels of materiality and intent weigh in favor of the '196 Patent being rendered unenforceable.

50.  The USPTO relied upon Applicant's misrepresentations, and concealment, and non-disclosure of the foregoing material facts and was thereby induced to approve the '196 Patent.

51.  Applicant's acts and omissions were intentional, deliberate, wrongful, and willful.

52.  As a result of the foregoing, the '196 Patent is unenforceable due to obviousness and the inequitable conduct of Applicant before the USPTO in violation of 37 C.F.R. § 1.56, entitling NHS to entry of declaratory judgment that the '196 Patent is invalid, void, and unenforceable.

WHEREFORE, NHS respectfully seeks judgment as follows:

A.  declaring that the Sedona/NHS Product does not infringe the '196 Patent;

B.  declaring the '196 Patent invalid, void and unenforceable;

C.  awarding NHS costs and reasonable attorney fees pursuant to 35 U.S.C. § 285; and

D.  granting such other relief to NHS as is proper and just.

## JURY DEMAND

NHS demands trial by jury on all issues so triable.

Dated:  April 16, 2007

Of Counsel:

Roger L. Cohen
Michelle C. Lombino
Thomas A. Connelly
JABURG & WILK, P.C.
3200 N. Central Avenue, Suite 2000
Phoenix, AZ 85018
Telephone (602) 248-1000

KLEHR, HARRISON, HARVEY,
BRANZBURG & ELLERS LLP

/s/ Kelly A. Green
---
David S. Eagle (DE Bar No. 3387)
Kelly A. Green (DE Bar No. 4095)
919 Market Street, Suite 1000
Wilmington, DE  19801
(302) 552-5508 (phone)
(302) 426-9193 (fax)
deagle@klehr.com
kgreen@klehr.com
*Attorneys for Defendant Nutri-Health Supplements, LLC, d/b/a Sedona Laboratories*

DEL1 66070-1

## CERTIFICATE OF SERVICE

I, Kelly A. Green, hereby certify that on April 16, 2007, I caused copies of the foregoing Separate Answer to Second Amended Complaint and Counterclaim and Demand for Jury Trial of Nutri-Health Supplements, LLC to be served on the following counsel of record and in the manner indicated:

**BY ELECTRONIC FILING & U.S. MAIL**

Steven J. Balick, Esq.
John G. Day, Esq.
Tiffany Geyer Lydon, Esq.
Ashby & Geddes
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899

John W. Shaw, Esq.
Karen E. Keller, Esq.
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
P. O. Box 391
Wilmington, DE 19899-0391

/s/ Kelly A. Green
Kelly A. Green (DE Bar No. 4095)